# EXHIBIT A

State Court Documents

Electronically Issued
5/8/2024 10:49 AM

1  **SUMM**
   Sean K. Claggett, Esq.
2  Nevada Bar No. 8407
   Brian Blankenship, Esq.
3  Nevada Bar No. 11522
   Scott E. Lundy, Esq.
4  Nevada Bar No. 14235
   CLAGGETT & SYKES LAW FIRM
5  4101 Meadows Lane, Ste. 100
   Las Vegas, Nevada 89107
6  (702) 655-2346 – Telephone
   (702) 655-3763 – Facsimile
7  sclaggett@claggettlaw.com
   brian@claggettlaw.com
8  scott@claggettlaw.com

9  Kimberly L. Adams, Esq., (*pro hac* forthcoming)
   Matthew D. Schultz, Esq. (*pro hac* forthcoming)
10 LEVIN PAPANTONIO RAFFERTY
   316 South Baylen Street
11 Pensacola, Florida 32502
   (850) 435-7000 – Telephone
12 kadams@levinlaw.com
   mschultz@levinlaw.com
13 *Attorneys for Plaintiff*

14        **EIGHTH JUDICIAL DISTRICT COURT**

15            **CLARK COUNTY, NEVADA**

16

17 | A.H., an Individual, | Case No. A-24-888768-C |

              Plaintiff,          | Dept. No. V
18
   v.                             | **SUMMONS - VENETIAN CASINO
19                                | RESORT, LLC, D/B/A THE
   WYNN LAS VEGAS, LLC, a Nevada   | VENETIAN LAS VEGAS**
20 Limited Liability Company; WYNN
   LAS VEGAS HOLDINGS, LLC, a
21 Nevada Limited Liability Company;
   WYNN AMERICA GROUP, LLC, a
22 Nevada Limited Liability Company;
   WYNN RESORTS FINANCE, LLC, a
23 Nevada Limited Liability Company;
   WYNN RESORTS HOLDINGS, LLC, a

24                                  - 1 -

1   Nevada Limited Liability Company;
    WYNN RESORTS, LIMITED, a Nevada
2   Corporation; ARIA RESORT &
    CASINO, LLC, a Nevada Limited
3   Liability Company; ARIA RESORT &
    CASINO HOLDINGS, LLC, a Nevada
4   Limited Liability Company; MGM
    RESORTS INTERNATIONAL, a
5   Delaware Corporation; VENETIAN
    CASINO RESORT, LLC, d/b/a THE
6   VENETIAN LAS VEGAS, a Nevada
    Limited Liability Company; LAS
7   VEGAS SANDS, LLC d/b/a THE
    VENETIAN LAS VEGAS, a Nevada
8   Limited Liability Company; NEW
    YORK-NEW YORK HOTEL &
9   CASINO, LLC d/b/a NEW YORK NEW
    YORK HOTEL AND CASINO, a
10  Nevada Limited Liability Company;
    CITYCENTER LAND, LLC, a Nevada
11  Limited Liability Company; ACE A
    PROPCO LLC, a Delaware Limited
12  Liability Company; DOES I-X; ROE
    BUSINESS ENTITIES XI-XX,
13  inclusive,

14              Defendants.

15  **NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE
    AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU
16  RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

17  **TO THE DEFENDANT(S): -- VENETIAN CASINO RESORT, LLC, D/B/A
    THE VENETIAN LAS VEGAS**

18          A civil Amended Complaint has been filed by the Plaintiff(s) against you

19  for the relief set forth in the Amended Complaint.

20          1.      If you intend to defend this lawsuit, within 20 days after this

21  Summons is served on you, exclusive of the day of service, you must do the

22  following:

23

24                                          - 2 -

1         (a) File with the Clerk of this lawsuit, whose address is shown

2    below, a formal written response to the Amended Complaint in accordance with

3    the rules of the Court, with the appropriate filing fee.

4         (b) Serve a copy of your response upon the attorney whose name

5    address is shown below.

6        2.    Unless you respond, your default will be entered upon application

7    of the Plaintiff(s) and failure to so respond will result in a judgment of default

8    against you for the relief demanded in the Amended Complaint, which could

9    result in the taking of money or property or other relief requested in the

10   Amended Complaint.

11       3.    If you intend to seek the advise of an attorney in this matter, you

12   should do so promptly so that your response may be filed on time.

13       4.    The State of Nevada, its political subdivisions, agencies, officers,

14   employees, board members, commission members and legislators each have 45

15   days after service of this Summons within which to file an Answer or other

16   responsive pleading to the Amended Complaint.

17                         STEVEN D. GRIERSON,

18                         CLERK OF THE COURT
                                           5/14/2024

19           By:_____
                      Deputy Clerk           Date

Submitted by:                  Clark County Courthouse

20                         200 Lewis Avenue

CLAGGETT & SYKES LAW FIRM     Las Vegas, NV 89155

21

/s/ Brian Blankenship

22   _____        Demond Palmer

Brian Blankenship, Esq.

23   Nevada Bar No. 11522
Attorneys for Plaintiff

24                         - 3 -

*CLAGGETT & SYKES LAW FIRM*

Electronically Filed
5/8/2024 10:47 AM
Steven D. Grierson
CLERK OF THE COURT

1  **ACOM**
Sean K. Claggett, Esq.
2  Nevada Bar No. 8407
Brian Blankenship, Esq.
3  Nevada Bar No. 11522
Scott E. Lundy, Esq.
4  Nevada Bar No. 14235
**CLAGGETT & SYKES LAW FIRM**
5  4101 Meadows Lane, Ste. 100
Las Vegas, Nevada 89107
6  (702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
7  sclaggett@claggettlaw.com
brian@claggettlaw.com
8  scott@claggettlaw.com

9  Kimberly L. Adams, Esq., (*pro hac* forthcoming)
Matthew D. Schultz, Esq. (*pro hac* forthcoming)
10  **LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street
11  Pensacola, Florida 32502
(850) 435-7000 – Telephone
12  kadams@levinlaw.com
mschultz@levinlaw.com
13  *Attorneys for Plaintiff*

14  

**EIGHTH JUDICIAL DISTRICT COURT**

15  **CLARK COUNTY, NEVADA**

16  A.H., an Individual,                          Case No. A-24-888768-C

17        Plaintiff,                              Dept. No. V

18  v.                                            **AMENDED COMPLAINT**

19  WYNN LAS VEGAS, LLC, a Nevada        **Jury Demand**
Limited Liability Company; WYNN
20  LAS VEGAS HOLDINGS, LLC, a
Nevada Limited Liability Company;
21  WYNN AMERICA GROUP, LLC, a
Nevada Limited Liability Company;
22  WYNN RESORTS FINANCE, LLC, a
Nevada Limited Liability Company;
23  WYNN RESORTS HOLDINGS, LLC, a
Nevada Limited Liability Company;

24

- 1 -

1  WYNN RESORTS, LIMITED, a Nevada
   Corporation; ARIA RESORT &
2  CASINO, LLC, a Nevada Limited
   Liability Company; ARIA RESORT &
3  CASINO HOLDINGS, LLC, a Nevada
   Limited Liability Company; MGM
4  RESORTS INTERNATIONAL, a
   Delaware Corporation; VENETIAN
5  CASINO RESORT, LLC, d/b/a THE
   VENETIAN LAS VEGAS, a Nevada
6  Limited Liability Company; LAS
   VEGAS SANDS, LLC d/b/a THE
7  VENETIAN LAS VEGAS, a Nevada
   Limited Liability Company; NEW
8  YORK-NEW YORK HOTEL &
   CASINO, LLC d/b/a NEW YORK-NEW
9  YORK HOTEL AND CASINO, a
   Nevada Limited Liability Company;
10 CITYCENTER LAND, LLC, a Nevada
   Limited Liability Company; ACE A
11 PROPCO LLC, a Delaware Limited
   Liability Company; DOES I-X; ROE
12 BUSINESS ENTITIES XI-XX,
   inclusive,
13
            Defendants.
14

15     Plaintiff, A.H., by and though her counsel of record, CLAGGETT &

16 SYKES LAW FIRM, brings her causes of action against Defendants, WYNN

17 LAS VEGAS, LLC, a Nevada Limited Liability Company; WYNN LAS VEGAS

18 HOLDINGS, LLC, a Nevada Limited Liability Company; WYNN AMERICA

19 GROUP, LLC, a Nevada Limited Liability Company; WYNN RESORTS

20 FINANCE, LLC, a Nevada Limited Liability Company; WYNN RESORTS

21 HOLDINGS, LLC, a Nevada Limited Liability Company; WYNN RESORTS,

22 LIMITED, a Nevada Corporation; ARIA RESORT & CASINO, LLC, a Nevada

23 Limited Liability Company; ARIA RESORT & CASINO HOLDINGS, LLC, a

24

                                   - 2 -

1  Nevada Limited Liability Company; MGM RESORTS INTERNATIONAL, a

2  Delaware Corporation; VENETIAN CASINO RESORT, LLC d/b/a THE

3  VENETIAN LAS VEGAS, a Nevada Limited Liability Company; LAS VEGAS

4  SANDS, LLC d/b/a THE VENETIAN LAS VEGAS, a Nevada Limited Liability

5  Company; NEW YORK-NEW YORK HOTEL & CASINO, LLC d/b/a NEW

6  YORK-NEW YORK HOTEL AND CASINO, a Nevada Limited Liability

7  Company; CITYCENTER LAND, LLC, a Nevada Limited Liability Company;

8  ACE A PROPCO LLC, a Delaware Limited Liability Company; DOES I-X; ROE

9  BUSINESS ENTITIES XI-XX, inclusive, and each of them, and alleges as

10  follows:

## INTRODUCTION

12      1.    For years, hotel business ventures have benefited from sex

13  trafficking. Sex traffickers exploit their victims and parade their misconduct

14  openly in hotel properties – including those found here in Las Vegas, Nevada –

15  as hotels benefit by facilitating the crime in violation of state and federal laws.

16      2.    While hotel business operations neglect taking reasonable steps to

17  prevent such criminal misconduct, they are also benefitting from it at the

18  expense of human life, human rights, and human dignity and in violation of the

19  law. Despite claims by major hotel brands that they are combatting human

20  trafficking known to be occurring on their properties, Defendants' business

21  venture benefitted from Plaintiff's harm because they actually failed to

22  implement any effective policies or trainings.

- 3 -

3.    All Defendants know and have known for more than a decade that sex trafficking repeatedly occurs on their watch. Rather than taking timely and effective measures to thwart this epidemic, the Defendants in this case have instead chosen to ignore the open and obvious presence of sex trafficking on their properties while enjoying the profit from rooms rented for this explicit and apparent purpose.

4.    During the times that Plaintiff was harmed, all Defendants were aware of or should have been aware of the financial benefits that they gained through the sex trafficking of Plaintiff.

5.    This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials A.H.

6.    A.H. was trafficked for commercial sex at the age of 18 from March 2014 to June 2014. During that time, A.H. was preyed upon by traffickers, buyers, and profiteers who benefited each time A.H. was bought, sold, and required to comply with sexually abusive strangers. A.H. endured brutal physical assaults, psychological torment, verbal abuse, kidnapping, false imprisonment, and torture at the hands of her traffickers.

7.    A.H. was regularly trafficked at Wynn Las Vegas, located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, which at all relevant times herein was owned, operated, managed, maintained, inspected, secured, supervised, and/or controlled by: (1) Defendant Wynn Las Vegas, LLC; (2) Wynn Las Vegas Holdings, LLC; (3) Wynn America Group, LLC; (4) Wynn Resorts

- 4 -

Finance, LLC; (5) Wynn Resorts Holdings, LLC; and (6) Wynn Resorts Limited

(hereinafter collectively referred to as "Wynn Defendants").

8.    A.H. was also regularly trafficked at Aria Resort & Casino, located

at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158, which at all

relevant times herein was owned, operated, managed, maintained, inspected,

secured, supervised, and/or controlled by: (1) Aria Resort & Casino, LLC; (2)

Aria Resort & Casino Holdings, LLC; (3) MGM Resorts International; (4)

CityCenter Land, LLC; and (5) Ace A Propco LLC (hereinafter collectively

referred to as "Aria Defendants").

9.    A.H. was also regularly trafficked at The Venetian Las Vegas,

located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, which at all

relevant times herein was owned, operated, managed, maintained, inspected,

secured, supervised, and/or controlled by: (1) Venetian Casino Resort, LLC; and

(2) Las Vegas Sands, LLC (hereinafter collectively referred to as "Venetian

Defendants").

10.    A.H. was also regularly trafficked at New York-New York Hotel

and Casino, located at 3790 S. Las Vegas Boulevard, Las Vegas, Nevada 89109,

which at all relevant times herein was owned, operated, managed, maintained,

inspected, secured, supervised, and/or controlled by: (1) New York-New York

Hotel & Casino, LLC and (2) MGM Resorts International (hereinafter

collectively referred to as "New York-New York Defendants").

11.    During the relevant time period, A.H. was repeatedly trafficked at

Wynn Las Vegas, Aria Resort & Casino, The Venetian Las Vegas, and New

1   York-New York with the actual and/or constructive knowledge of all

2   Defendants. Nevertheless, Defendants continued to participate in their

3   respective commercial ventures whereby they derived profits from A.H.'s

4   ongoing trafficking.

5          12.    A.H. now brings this action for damages pursuant to the

6   Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18

7   U.S.C. § 1595, against the Defendants who enabled, harbored, facilitated, and/or

8   otherwise financially benefited, or any combination of the foregoing, from a

9   venture in which A.H. was trafficked for sex, sexually exploited, and victimized

10  in violation of the TVPRA.

### JURISDICTION, VENUE, AND PARTIES

12         13.    This Court has jurisdiction over this matter under NRS 14.065 and

13  NRS 4.370(1), as the facts alleged occurred in Clark County, Nevada, and

14  involve an amount in controversy in excess of $15,000.00. Venue is proper

15  pursuant to NRS 13.040, as Defendants, or any one of them, resided in Clark

16  County, Nevada, at the commencement of this action.

17         14.    At all times relevant herein, Plaintiff A.H. (hereinafter "Plaintiff"

18  or "A.H.") was and is a resident of Clark County, Nevada.

19         15.    Due to the sensitive and intimate nature of the issues in this case,

20  Plaintiff asks the Court to enter a protective order under Nevada Rule of Civil

21  Procedure 26(c): (1) permitting her to proceed under a pseudonym, A.H.; and (2)

22  forbidding the parties from disclosing her identity to third-parties without

23  either her consent or the prior approval of the Court.

24

CLAGGETT SYKES LAW FIRM

16. Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a. Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b. As a hotel operator, Defendant Wynn Las Vegas, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Las Vegas, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c. Defendant Wynn Las Vegas, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d. Upon information and belief, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at

- 7 -

Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Las Vegas, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Las Vegas, LLC, requires the hotels in its portfolio to comply with Wynn Las Vegas, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///
///
///
///

17.    Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas Holdings, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

a.    Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas Holdings, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

b.    As a hotel operator, Defendant Wynn Las Vegas Holdings, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Las Vegas Holdings, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

c.    Defendant Wynn Las Vegas Holdings, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

d.    Upon information and belief, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants are single and joint

- 9 -

employers with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Las Vegas Holdings, LLC, requires the hotels in its portfolio to comply with Wynn Las Vegas Holdings, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

- 10 -

18.    Upon information and belief, at all times relevant herein, Defendant Wynn America Group, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

a. Upon information and belief, at all times relevant herein, Defendant Wynn America Group, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

b. As a hotel operator, Defendant Wynn America Group, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn America Group, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

c. Defendant Wynn America Group, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

d. Upon information and belief, Defendant Wynn America Group, LLC, and the Wynn Defendants are single and joint employers

with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn America Group, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn America Group, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn America Group, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn America Group, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn America Group, LLC, requires the hotels in its portfolio to comply with Wynn America Group, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

- 12 -

19.    Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Finance, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

a.    Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Finance, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

b.    As a hotel operator, Defendant Wynn Resorts Finance, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Resorts Finance, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

c.    Defendant Wynn Resorts Finance, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

d.    Upon information and belief, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants are single and joint employers

- 13 -

with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Resorts Finance, LLC, requires the hotels in its portfolio to comply with Wynn Resorts Finance, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

20.    Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Holdings, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Holdings, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b.  As a hotel operator, Defendant Wynn Resorts Holdings, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Resorts Holdings, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Wynn Resorts Holdings, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Wynn Resorts Holdings, LLC, and the Wynn Defendants are single and joint employers

- 15 -

1  with a high degree of interrelated, intermingled, and unified

2  operations at Wynn Las Vegas where A.H. was sex trafficked.

3  Defendant Wynn Resorts Holdings, LLC, and the Wynn

4  Defendants each share the common policies and practices

5  complained of herein.

6  e. Upon information and belief, Defendant Wynn Resorts Holdings,

7  LLC, and the Wynn Defendants jointly employed or ratified the

8  employment of individuals through horizontal joint employment

9  and/or vertical joint employment.

10  f. Upon information and belief, as an integrated enterprise and/or

11  joint employer, Defendant Wynn Resorts Holdings, LLC, and the

12  Wynn Defendants are separately and jointly responsible for

13  compliance with all applicable laws.

14  g. Upon information and belief, as an integrated enterprise and/or

15  joint employer, Defendant Wynn Resorts Holdings, LLC, and the

16  Wynn Defendants are jointly and severally liable for any damages

17  caused by employees at Wynn Las Vegas.

18  h. Upon information and belief, Defendant Wynn Resorts Holdings,

19  LLC, requires the hotels in its portfolio to comply with Wynn

20  Resorts Holdings, LLC, brand standards, policies, practices,

21  procedures, training protocols, and all local, state, and federal

22  laws.

23

24

- 16 -

21.    Upon information and belief, at all times relevant herein, Defendant Wynn Resorts, Limited, was and is a Nevada corporation doing business in Clark County, Nevada.

    a. Upon information and belief, at all times relevant herein, Defendant Wynn Resorts, Limited, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b. As a hotel operator, Defendant Wynn Resorts, Limited, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Resorts, Limited, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c. Defendant Wynn Resorts, Limited, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d. Upon information and belief, Defendant Wynn Resorts, Limited, and the Wynn Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at

- 17 -

Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn
Resorts, Limited, and the Wynn Defendants each share the
common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Resorts, Limited,
and the Wynn Defendants jointly employed or ratified the
employment of individuals through horizontal joint employment
and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or
joint employer, Defendant Wynn Resorts, Limited, and the Wynn
Defendants are separately and jointly responsible for compliance
with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or
joint employer, Defendant Wynn Resorts, Limited, and the Wynn
Defendants are jointly and severally liable for any damages caused
by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Resorts, Limited,
requires the hotels in its portfolio to comply with Wynn Resorts,
Limited, brand standards, policies, practices, procedures, training
protocols, and all local, state, and federal laws.

///
///
///
///

- 18 -

22.    Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

    b.  As a hotel operator, Defendant Aria Resort & Casino, LLC, controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant Aria Resort & Casino, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Aria Resort & Casino, LLC, received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Aria Resort & Casino, LLC, and the Aria Defendants are single and joint employers with

- 19 -

a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant Aria Resort & Casino, LLC, and the Aria Defendants each share the common policies and practices complained of herein.

e. Upon information and belief, Defendant Aria Resort & Casino, LLC, and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino, LLC, and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino, LLC, and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h. Upon information and belief, Defendant Aria Resort & Casino, LLC, requires the hotels in its portfolio to comply with Aria Resort & Casino, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///

///

///

- 20 -

23.    Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino Holdings, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino Holdings, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

    b.  As a hotel operator, Defendant Aria Resort & Casino Holdings, LLC, controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant Aria Resort & Casino Holdings, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Aria Resort & Casino Holdings, LLC, received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants are single and joint

- 21 -

employers with a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h.  Upon information and belief, Defendant Aria Resort & Casino Holdings, LLC, requires the hotels in its portfolio to comply with Aria Resort & Casino, LLC Holdings, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

- 22 -

24. Upon information and belief, at all times relevant herein, Defendant MGM Resorts International was and is a Delaware corporation doing business in Clark County, Nevada.

   a. Upon information and belief, at all times relevant herein, Defendant MGM Resorts International owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

   b. As a hotel operator, Defendant MGM Resorts International controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant MGM Resorts International knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

   c. Defendant MGM Resorts International received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

   d. Upon information and belief, Defendant MGM Resorts International and the Aria Defendants are single and joint

- 23 -

employers with a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant MGM Resorts International and the Aria Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant MGM Resorts International and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant MGM Resorts International and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant MGM Resorts International and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h.  Upon information and belief, Defendant MGM Resorts International requires the hotels in its portfolio to comply with MGM Resorts International brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

25.    Upon information and belief, at all times relevant herein, Defendant Venetian Casino Resort, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Venetian Casino Resort, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at The Venetian Las Vegas resort hotel and casino located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b.  As a hotel operator, Defendant Venetian Casino Resort, LLC, controlled the training and policies for The Venetian Las Vegas. Through its relationship with the staff at The Venetian Las Vegas and the individuals who trafficked A.H. at The Venetian Las Vegas, Defendant Venetian Casino Resort, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Venetian Casino Resort, LLC, received a percentage of the gross room revenue from the money generated by the operations of The Venetian Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants are single and joint employers

- 25 -

with a high degree of interrelated, intermingled, and unified operations at The Venetian Las Vegas where A.H. was sex trafficked. Defendant Venetian Casino Resort, LLC, and the Venetian Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants are jointly and severally liable for any damages caused by employees at The Venetian Las Vegas.

h.  Upon information and belief, Defendant Venetian Casino Resort, LLC, requires the hotels in its portfolio to comply with Venetian Las Vegas, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

26. Upon information and belief, at all times relevant herein, Defendant Las Vegas Sands, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a. Upon information and belief, at all times relevant herein, Defendant Las Vegas Sands, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at The Venetian Las Vegas resort hotel and casino located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b. As a hotel operator, Defendant Las Vegas Sands, LLC, controlled the training and policies for The Venetian Las Vegas. Through its relationship with the staff at The Venetian Las Vegas and the individuals who trafficked A.H. at The Venetian Las Vegas, Defendant Las Vegas Sands, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c. Defendant Las Vegas Sands, LLC, received a percentage of the gross room revenue from the money generated by the operations of The Venetian Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d. Upon information and belief, Defendant Las Vegas Sands, LLC, and the Venetian Defendants are single and joint employers with a

- 27 -

CLAGGETT (C) SYKES
LAW FIRM

high degree of interrelated, intermingled, and unified operations at The Venetian Las Vegas where A.H. was sex trafficked. Defendant Las Vegas Sands, LLC, and the Venetian Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Las Vegas Sands, LLC, and the Venetian Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Las Vegas Sands, LLC, and the Venetian Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Las Vegas Sands, LLC, and the Venetian Defendants are jointly and severally liable for any damages caused by employees at The Venetian Las Vegas.

h.  Upon information and belief, Defendant Las Vegas Sands, LLC, requires the hotels in its portfolio to comply with Venetian Las Vegas, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///

///

///

- 28 -

27.     Upon information and belief, at all times relevant herein, Defendant New York-New York Hotel & Casino, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant New York-New York Hotel & Casino, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at New York-New York Hotel and Casino ("New York-New York"), located at 3790 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b.  As a hotel operator, Defendant New York-New York Hotel & Casino, LLC, controlled the training and policies for New York-New York. Through its relationship with the staff at New York-New York and the individuals who trafficked A.H. at New York-New York, Defendant New York-New York Hotel & Casino, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant New York-New York Hotel & Casino, LLC, received a percentage of the gross room revenue from the money generated by the operations of New York-New York, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

- 29 -

d. Upon information and belief, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at New York-New York where A.H. was sex trafficked. Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants each share the common policies and practices complained of herein.

e. Upon information and belief, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants are separately and jointly responsible for compliance with all applicable laws.

g. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants are jointly and severally liable for any damages caused by employees at New York-New York.

h. Upon information and belief, Defendant New York-New York Hotel & Casino, LLC, requires the hotels in its portfolio to comply with New York-New York Hotel & Casino, LLC, brand standards,

- 30 -

1    policies, practices, procedures, training protocols, and all local,

2    state, and federal laws.

3        28.   Upon information and belief, at all times relevant herein,

4    Defendant MGM Resorts International was, and is a Delaware corporation doing

5    business in Clark County, Nevada.

6        a.  Upon information and belief, at all times relevant herein,

7        Defendant MGM Resorts International owned, managed,

8        maintained, inspected, secured, supervised, and/or controlled the

9        premises at New York New York Hotel and Casino ("New York-

10       New York"), located at 3790 S. Las Vegas Boulevard, Las Vegas,

11       Nevada 89109.

12       b.  As a hotel operator, Defendant MGM Resorts International

13       controlled the training and policies for New York-New York.

14       Through its relationship with the staff at New York-New York and

15       the individuals who trafficked A.H. at New York-New York,

16       Defendant MGM Resorts International knowingly benefited or

17       received something of value from its facilitation of or participation

18       in a venture which it knew or should have known had engaged in

19       sex trafficking.

20       c.  Defendant MGM Resorts International received a percentage of the

21       gross room revenue from the money generated by the operations of

22       New York-New York, including a percentage of the revenue

23

24             - 31 -

CLAGGETT SYKES LAW FIRM

1 generated for the rate charged on the hotel guest rooms in which

2 A.H. was sex trafficked.

3 d. Upon information and belief, Defendant MGM Resorts

4 International and the New York-New York Defendants are single

5 and joint employers with a high degree of interrelated,

6 intermingled, and unified operations at New York-New York where

7 A.H. was sex trafficked. Defendant MGM Resorts International

8 and the New York-New York Defendants each share the common

9 policies and practices complained of herein.

10 e. Upon information and belief, Defendant MGM Resorts

11 International and the New York-New York Defendants jointly

12 employed or ratified the employment of individuals through

13 horizontal joint employment and/or vertical joint employment.

14 f. Upon information and belief, as an integrated enterprise and/or

15 joint employer, Defendant MGM Resorts International and the

16 New York-New York Defendants are separately and jointly

17 responsible for compliance with all applicable laws.

18 g. Upon information and belief, as an integrated enterprise and/or

19 joint employer, Defendant MGM Resorts International and the

20 New York-New York Defendants are jointly and severally liable for

21 any damages caused by employees at New York-New York.

22 h. Upon information and belief, Defendant MGM Resorts

23 International requires the hotels in its portfolio to comply with

- 32 -

MGM Resorts International brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

29.    Upon information and belief, at all times relevant herein, Defendant CityCenter Land, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

a.    Upon information and belief, at all times relevant herein, Defendant CityCenter Land, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

b.    As a hotel operator, Defendant CityCenter Land, LLC, controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant CityCenter Land, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

c.    Defendant CityCenter Land, LLC, received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue

- 33 -

generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

d.  Upon information and belief, Defendant CityCenter Land, LLC, and the Aria Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant CityCenter Land, LLC, and the Aria Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant CityCenter Land, LLC, and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant CityCenter Land, LLC, and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant CityCenter Land, LLC, and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h.  Upon information and belief, Defendant CityCenter Land, LLC, requires the hotels in its portfolio to comply with CityCenter Land,

LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

30.    Upon information and belief, at all times relevant herein, Defendant Ace A Propco LLC was and is a Delaware limited liability company doing business in Clark County, Nevada.

   a.  Upon information and belief, at all times relevant herein, Defendant Ace A Propco LLC owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

   b.  As a hotel operator, Defendant Ace A Propco LLC controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant Ace A Propco LLC knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

   c.  Defendant Ace A Propco LLC received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

d.  Upon information and belief, Defendant Ace A Propco LLC and the
    Aria Defendants are single and joint employers with a high degree
    of interrelated, intermingled, and unified operations at Aria Resort
    & Casino where A.H. was sex trafficked. Defendant Ace A Propco
    LLC and the Aria Defendants each share the common policies and
    practices complained of herein.

e.  Upon information and belief, Defendant Ace A Propco LLC and the
    Aria Defendants jointly employed or ratified the employment of
    individuals through horizontal joint employment and/or vertical
    joint employment.

f.  Upon information and belief, as an integrated enterprise and/or
    joint employer, Defendant Ace A Propco LLC and the Aria
    Defendants are separately and jointly responsible for compliance
    with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or
    joint employer, Defendant Ace A Propco LLC and the Aria
    Defendants are jointly and severally liable for any damages caused
    by employees at Aria Resort & Casino.

h.  Upon information and belief, Defendant Ace A Propco LLC
    requires the hotels in its portfolio to comply with Ace A Propco
    LLC brand standards, policies, practices, procedures, training
    protocols, and all local, state, and federal laws.

- 36 -

31.    Plaintiff does not know the true names of Defendants Does I through X and sues said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe is legally responsible in some manner for the events alleged in this Complaint and actually, proximately, and/or legally caused injury and damages to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

32.    Plaintiff does not know the true names of Defendants Roe Business Entities XI through XX and sues said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiff. Plaintiff will seek leave of the Court

to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

33.    Upon information and belief, at all times relevant herein, Defendants, and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible employees, employees, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their Co-Defendants and were acting as such within the course, scope, and authority of said agency and employment, and that each of the Defendants, as aforesaid, when acting as a principal, was negligent, including, but not limited to, in the hiring, training, retention, and supervision of each and every other Defendant as an agent, servant, employee, assistant, and consultant.

34.    Upon information and belief, every act or omission of the Defendants and their apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible employees, employees, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their Co-Defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

## SEX TRAFFICKING UNDER FEDERAL LAW

35.    Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

- 38 -

36.     The requirement for liability under TVPRA § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value"; (2) from participating in a venture"; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

37.     'Sex trafficking' is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

38.     The term 'severe forms of trafficking in persons' includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

39.     Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion, or "cause [a] person to engage in a commercial sex act" are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

40.     18 U.S.C. § 1595 provides for a beneficiary liability claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person

- 39 -

1   knew or should have known has engaged in an act in violation" of the TVPRA.

2   *See* 18 U.S.C. § 1595(a).

3   **SEX TRAFFICKING UNDER NEVADA STATE LAW**

4   41.   Plaintiff repeats and realleges the allegations as contained in the

5   preceding paragraphs herein and incorporates the same herein by reference.

6   42.   Plaintiff also brings this action pursuant to Nevada's anti-human

7   trafficking law, found at NRS 41.1399, which provides that "[a]ny person who is

8   a victim of human trafficking may bring a civil action against any person who

9   caused, was responsible for or profited from the human trafficking." NRS

10   41.1399(1).

11   43.   For purposes of the statute, the term "victim of human trafficking"

12   means "a person against whom a violation of any provision of NRS 200.463 to

13   200.468, inclusive, 201.300 or 201.320 or 201.395, or 18 U.S.C. § 1589, 1590 or

14   1591 has been committed." NRS 41.1399(10)(a).

15   **GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

16   **A.    A.H.'s Story**

17   44.   Plaintiff repeats and realleges the allegations as contained in the

18   preceding paragraphs herein and incorporates the same herein by reference.

19   45.   In the fall of 2013, A.H. moved to Las Vegas, Nevada, to live with

20   her father.

21   46.   On January 26, 2014, A.H. turned 18 years old and soon thereafter

22   decided she wanted to move to Ohio to live with a friend.

23

24                                     - 40 -

47.     In early March 2014, A.H. purchased a bus ticket to Ohio and was set to leave on March 10, 2014, to begin the next chapter in her life.

48.     Unfortunately, A.H. never made it on that bus.

49.     Instead, on March 9, 2014, A.H. was sitting at a bus stop near the intersection of Tropicana Avenue and Paradise Road in Las Vegas, Nevada, when a car pulled up next to her. Inside were two people, one who would become her trafficker and another who would be identified as a recruiter and enforcer.

50.     The trafficker thereafter coerced and forced A.H. into prostitution.

51.     On the night of March 10, 2024, A.H. was trafficked for the first time.

52.     On that occasion, A.H.'s trafficker drove A.H. and the recruiter to Aria Resort & Casino and dropped off.

53.     Inside Aria Resort & Casino, A.H. and her recruiter encountered two "Johns" who paid them for sex inside a hotel room rented at the Aria Resort & Casino.

54.     Afterwards, A.H.'s trafficker picked them up outside Aria Resort & Casino and demanded that they give him all of the money they had been paid.

55.     A.H.'s trafficker demanded strict compliance on how to dress, what to charge, what to wear, and when and how all money should be turned over to him.

56.     In order to ensure compliance, A.H. was required to text her trafficker once she got to a "John's" room with the room number and agreed upon price. Then, A.H. was told to text again as soon as the "John" had paid.

- 41 -

57.     Initially, A.H. was trafficked approximately 2-3 times per week. Eventually, this increased to approximately every other day.

58.     On each occasion, the recruiter acted as an enforcer and remained near A.H. at all times.

59.     A.H. was trafficked most consistently at the Aria Resort & Casino, Wynn Las Vegas, The Venetian Las Vegas, and New York-New York.

60.     Each time A.H. visited Aria Resort & Casino, Wynn Las Vegas, The Venetian Las Vegas, and New York-New York, A.H. and the enforcer entered through the front entrances, often in full view of security cameras, while her trafficker stalked her from nearby or remained in the car.

61.     Aria Resort & Casino, Wynn Las Vegas, The Venetian Las Vegas, and New York-New York staff, employees, and security routinely saw A.H. and her recruiter/enforcer arrive without luggage or bags, loiter in common areas such as bars, interact with guests, depart with guests for their room, and then leave together at the end of the night.

62.     As is typical of sex traffickers, A.H.'s trafficker became increasingly violent and controlling and coercive.

63.     Specifically, in late March or early April, after being trafficked at The Venetian Las Vegas, A.H.'s trafficker accused her of sending a text message to him at the incorrect time, i.e., prior to having the "John's" cash in hand. The trafficker took A.H. into the bathroom at his house, bent her over the bathtub, and savagely beat her with a leather belt.

64.     The violence against A.H. continued with increasing frequency.

- 42 -

65.     Throughout April 2014, A.H.'s trafficker beat her about once per week, mostly with his fists and belt. The violent attacks on A.H. continued to escalate to about once per day. By June 2014, A.H.'s trafficker was beating her approximately 3-4 times per day.

66.     During this time, A.H. continued to be trafficked, bruised, and beaten at Defendants' properties.

67.     In or around March 2014 – April 2014, A.H. was again trafficked at The Venetian Las Vegas. On that occasion, a "John" physically and sexually assaulted A.H. inside one of The Venetian Las Vegas hotel rooms.

68.     A.H. screamed during the assault and, afterwards, ran from the room and went downstairs where she waited inside a restroom hunched over in pain.

69.     Although A.H. fled from the assault in plain view of The Venetian Las Vegas' employees, no action was taken and A.H. continued to be trafficked at The Venetian Las Vegas.

70.     Over the course of several beatings in late April 2014 – early May 2014, A.H.'s trafficker fractured A.H.'s jaw, causing her face to bruise and puff up.

71.     Thereafter, during that same time period, A.H. was trafficked at Wynn Las Vegas.

72.     At Wynn Las Vegas, A.H. had a fractured jaw, showed clear signs of physical abuse, and was in a malnourished state.

73.     Also, A.H.'s enforcer remained near A.H. at all times.

- 43 -

74. A.H. made contact with a Wynn Las Vegas cocktail waitress, who notified Wynn Las Vegas security officers.

75. Rather than intervene or otherwise attempt to assist A.H., the Wynn Las Vegas security officers simply followed behind A.H. and her enforcer until they exited the Wynn Las Vegas property.

76. Following this incident, A.H. continued to enter and be trafficked at Wynn Las Vegas.

77. A.H.'s trafficker began beating A.H. with a sock full of oranges causing severe injury and bruising.

78. A.H. was also forced to stand in stress positions for long periods of time and would be assaulted if she moved.

79. On or about May 10, 2014, A.H. pleaded with her trafficker to let her go home to her family. Her trafficker continued to refuse to release her and instead verbally and physically abused A.H., punching her, kicking her, and striking her with a metal chair.

80. A.H. was threatened by her trafficker and his enforcer that they would kill her family if she attempted to leave or went to the police.

81. Sometime after May 15, 2014, A.H. was visibly "out of it" while her and her enforcer were walking around New York-New York. While there, a New York-New York security guard approached A.H., asked if she was ok, and offered her water. A.H. did not ask for help because her enforcer was right beside her and on the phone with their trafficker, who was close by.

- 44 -

82.     The New York-New York security guard did not intervene, assist, or take steps to protect A.H., even though A.H. exhibited multiple signs of being trafficked.

83.     In mid- to late-May 2014, the beatings escalated in frequency and intensity all while A.H. was still being trafficked openly at Defendants' properties.

84.     On several occasions, A.H.'s trafficker assaulted A.H. with a whip made out of multiple metal hangers. During these whippings, A.H. was not allowed to move or else the beating would last longer.

85.     On another occasion, A.H.'s trafficker beat A.H. with a metal pole. During the beating, A.H.'s trafficker struck A.H.'s left middle finger, breaking it.

86.     On another occasion, A.H.'s trafficker burned A.H.'s foot with a hot iron. A.H.'s burn went untreated, and her foot became infected. As a result, A.H. was forced to wear boots when she left the house to hide the smell of her infected skin.

87.     On another occasion, A.H.'s trafficker used a kitchen knife to slice A.H.'s tongue in multiple spots and then forced her to drink hot sauce.

88.     On another occasion, A.H.'s trafficker forced A.H. to play Russian Roulette with a loaded firearm.

89.     On another occasion, A.H.'s trafficker pistol whipped A.H. in the back of the head, fracturing her skull and causing her to bleed all over the house.

- 45 -

90.     On another occasion, A.H.'s trafficker tied A.H.'s wrists and feet together with duct tape, placed duct tape over her mouth, and then repeatedly put plastic bags over her head and suffocated her until she passed out. Then A.H.'s trafficker dragged A.H. to the bathroom where he covered her mouth with a shirt and poured water over her face to simulate drowning.

91.     On another occasion, A.H.'s trafficker filled the bathtub with ice and forced A.H. to lay in it for hours. Then, A.H.'s trafficker forced A.H. to take a hot shower, at one point turning the water all the way up as hot as it would go.

92.     During these assaults and many others, A.H.'s trafficker would turn on music and crank the volume to drown out A.H.'s screams.

93.     By late May 2014, A.H.'s trafficker was only feeding A.H. approximately twice per week. A.H. was severely malnourished, had lost a significant amount of weight, and was constantly feeling faint, tired, weak, and in pain.

94.     On or about May 28, 2014, A.H., having been continuously trafficked at the Aria Resort & Casino, was taken there again. At the time, A.H. was severely malnourished, displayed signs of physical abuse, and did not look anything like her ID photo.

95.     At Aria Resort & Casino, A.H. and the enforcer were stopped by an Aria security officer as part of an undercover sting.

96.     A.H. and the enforcer were taken into a back room together, photographed, and questioned.

- 46 -

97.    While the Aria Resort & Casino security officer questioned A.H. and the enforcer, the trafficker repeatedly called and texted the enforcer's phone asking for updates. The Aria Resort & Casino security officer made a joke about the ringing phone and told her she could answer it.

98.    Aria Resort & Casino's security officer did not call the police or offer any assistance to A.H. Instead, he told A.H. and her enforcer that they were being trespassed from the property.

99.    The Aria Resort & Casino security officer then directed them to an exit–delivering A.H. straight to her trafficker who was waiting to pick them up.

100.    Following the Aria incident, A.H. was again beaten by her trafficker with the metal whip, resulting in deep wounds to A.H.'s rear.

101.    Within days, A.H.'s physical condition deteriorated, and her wounds became infected.

102.    In early June 2014, A.H.'s trafficker began forcing A.H. to sleep in the garage because he said her infected wounds smelled. A.H. was not allowed to use the shower inside the house, and instead was taken out in the backyard and hosed down.

103.    In mid-June 2014, A.H.'s trafficker took a kitchen knife and used it to cut off A.H.'s hair. While he slashed at A.H.'s hair, he also cut off chunks of skin from her scalp.

104.    On or about June 26, 2014, A.H.'s trafficker told A.H. that due to her deteriorating condition, he was giving her to another pimp.

- 47 -

105.   A.H.'s trafficker drove A.H. to the other pimp's house where she remained for approximately 4 days.

106.   After 4 days, the other pimp called A.H.'s trafficker to come and pick up A.H. and take her to the hospital for emergency care.

107.   A.H.'s trafficker dropped her off near a Wendy's across the street from University Medical Center.

108.   A.H. struggled across the busy thoroughfare to UMC where she received lifesaving care.

109.   As a result of being sex trafficked, kidnapped, beaten, assaulted, and tortured, A.H. suffered severe injuries including, but not limited to: (1) bruising; (2) multiple acute and subacute rib fractures; (3) fractured sternum; (4) gangrene in her left middle finger; (5) grade 3 liver laceration; (6) grade 4 spleen laceration; (7) grade 1 kidney laceration; (8) lumbar vertebra transverse fractures; (9) occipital fracture; and (10) left mandible fracture.

110.   The gangrene was so bad in A.H.'s left middle finger that the finger had to be amputated.

111.   Additionally, the wounds on A.H.'s rear had turned necrotic.

112.   In all, A.H. was forced to undergo 12 different medical procedures as a result of the abuse she suffered.

B.     **The Hospitality Industry's Participation in the Sex Trafficking Industry**

113.   Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

- 48 -

114.    Human trafficking is the world's fastest growing crime. *See* Ewelina Ochab, *The World's Fastest Growing Crime*, FORBES, July 29, 2017, at https://www.forbes.com/sites/ewelinaochab/2017/07/29/the-worlds-fastest-growing-crime/?sh=1a0fe94b3aae (last visited March 3, 2024). While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone generates an estimated $99 billion each year, making it the second largest illicit crime industry behind only the illegal drug industry. *See* International Labor Organization, *Profits and Poverty: The Economics of Forced Labor* (2014), at https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf (last visited March 3, 2024).

115.    Sex traffickers, or 'pimps,' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

116.    The hospitality industry plays a crucial role in the sex trade. The trope of the "no-tell motel" is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

117.    According to National Human Trafficking Hotline statistics, hotels are one of the top-reported venues where sex trafficking acts occur. *See* National Human Trafficking Hotline, *National Human Trafficking Hotline Data Report* (2021), at https://humantraffickinghotline.org/sites/default/files/2023-

01/National%20Report%20For%202021.docx%20%283%29.pdf (last visited

March 3, 2024).

118.    The problem is industry wide. In the United States, as much as

63% of all trafficking incidents happen in hotels ranging from luxury to

economy. *See* Michele Sarkisian, *Adopting the Code: Human Trafficking and the*

*Hospitality Industry*, CORNELL HOSPITALITY REPORT, Vol. 15 (2015), at 6.

119.    Due to the overall complacency of the hospitality industry on

addressing the issue, hotels are the venue of choice for sex trafficking. *See*

Polaris Project, *On-Ramps, Intersections, and Exit Routes: A Roadmap for*

*Systems and Industries to Prevent and Disrupt Human Trafficking – Hotels &*

*Motels* (2018), at https://polarisproject.org/wp-content/uploads/2018/08/A-

Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-

Trafficking-Hotels-and-Motels.pdf (last visited March 3, 2024) (explaining that

75% of trafficking victims "reported coming into contact with hotels at some

point during their trafficking situation"). Traffickers and buyers capitalize on

the hotel industry's general refusal to adopt and enforce companywide anti-

trafficking policies from the corporate to the property level, train staff on what

to look for and how to respond, and/or establish safe and secure reporting

mechanisms for those at the point of contact.

120.    Every day, thousands of hotel employees witness manifestations of

sex trafficking and commercial exploitation. Thus, the hospitality industry has

the greatest reach to prevent, identify, and thwart sexual exploitation where it

is most likely to occur.

121.    Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, it ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs of sex trafficking. *See Human Trafficking Response Guide for the Hospitality Industry*, BLUE CAMPAIGN, https://www.dhs.gov/sites/default/files/2022-10/Hospitality%20Toolkit%20508c%2009_29_2022.pdf (last visited March 4, 2024).

122.    From check-in to check-out there are a number of indicators that traffickers and their victims exhibit while at a hotel. *See id.* With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking and extensive injuries to victims under their watch. Most victims of sex trafficking don't report it, so it is especially important to keep an eye out for signs of human trafficking.

123.    Obvious signs of sex trafficking at a hotel may include: (1) appearing to be deprived of food, water, sleep, basic hygiene, or other necessities; (2) acting fearful, anxious, depressed, submissive, tense, nervous, or paranoid; (3) bruises or other signs of physical trauma; (4) deferring to another to speak for them; (5) appearing to be coached on what to say; (6) appearing to travel with few or no personal items, such as luggage; (7) appearing to have no

- 51 -

1  control over their money and/or ID;  (8) loitering or soliciting patrons or staff,

2  and (9) when inside a casino, avoiding the center of the casino and walking

3  around the edges. *Id.*; Las Vegas Metropolitan Police Department Vice & Sex

4  Trafficking Investigations Section & Arizona State University Office of Sex

5  Trafficking Intervention Research, *2014 Las Vegas Sex Trafficking Case Study*,

6  ASU SCHOOL OF SOCIAL WORK, https://www.amber-ic.org/wp-

7  content/uploads/2017/02/2014-Las-Vegas-Sex-Trafficking-Case-Study.pdf (last

8  visited on March 8, 2024).

9      124.   Hotel staff who are properly trained regarding the signs of sex

10  trafficking are more aware of sex trafficking when it occurs and are more

11  willing to report it than hotel staff who have not been trained. *See* Giavanna L.

12  C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and*

13  *Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL MANAGEMENT (2017), at

14  https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-

15  a6aa-899c35f39ab4/content. Thus, hospitality companies are obligated to adopt

16  policies and procedures related to sex trafficking and to enforce these policies

17  and procedures as brand standards through to the property level.

18      125.   Hospitality companies can and should mandate that all staff

19  working at all hotel properties across their brand complete sex trafficking

20  training. *See* Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal*

21  *and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS

22  CRIMINAL SEXUAL EXPLOITATION, VILLANOVA UNIVERSITY SCHOOL OF LAW (2015),

23  at https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper.pdf.

24

- 52 -

126. Yet, despite efforts by governmental and non-governmental organizations to combat human trafficking, the hospitality industry as a whole continues to lag behind in its efforts to prevent human trafficking.

127. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, encouraging traffickers to use untrained hotels as a place to exploit their victims. Sex traffickers want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with hotels where they know it is unlikely that they will be disturbed.

128. Due to the hospitality industry's failure to embrace anti-trafficking policies and practices, vulnerable persons are trafficked for sex in hotels throughout the United States and here in Las Vegas, Nevada.

129. Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly fail to execute their own policies, practices, and procedures. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

C. **The Defendants' Actual and/or Constructive Knowledge of the Sex Trafficking of A.H.**

130. Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

131. Defendants own and operate nationally known resort hotels on the Las Vegas Strip and have been on notice of repeated incidents of sex trafficking

1   occurring at their hotels, yet the Defendants failed to take adequate steps to

2   train staff to prevent and report sex trafficking at their locations.

3       132.   Longstanding jurisprudence holds that failure to implement

4   policies sufficient to combat a known problem in one's operations can rise to the

5   level of willful blindness, conscious disregard, and/or negligence.

6           **(i)   Facts Specific to Wynn Defendants**

7       133.   Plaintiff repeats and realleges the allegations as contained in the

8   preceding paragraphs herein and incorporates the same herein by reference.

9       134.   Defendants Wynn Las Vegas, LLC, Wynn Las Vegas Holdings,

10  LLC, Wynn America Group, LLC, Wynn Resorts Finance, LLC, Wynn Resorts

11  Holdings, LLC, and Wynn Resorts Limited:

12          a.  Wynn Defendants owned, managed, maintained, inspected,

13              secured, supervised, and/or controlled the brand and policies for

14              booking, rates, and operations at Wynn Las Vegas resort hotel

15              and casino located at 3131 S. Las Vegas Boulevard, Las Vegas,

16              Nevada 89109, where A.H. was consistently commercially sex

17              trafficked from March 2014 through June 2014. A.H. was

18              transported to this location and forced to remain at this location

19              while commercial sex acts with her were sold and purchased.

20              Wynn Defendants owned and operated Wynn Las Vegas while

21              buyers took A.H. to rooms that were rented out for the purpose

22              of trafficking A.H.

23

24

b.  Wynn Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

c.  Wynn Defendants failed to implement and enforce any of their own policies or protect A.H. from being commercially sex trafficked multiple times at Wynn Las Vegas.

d.  Wynn Defendants had actual knowledge of sex trafficking occurring at Wynn Las Vegas because Wynn Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

e.  Wynn Defendants had constructive knowledge of sex trafficking occurring at Wynn Las Vegas because Wynn Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

f.  Wynn Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including A.H., for sex at Wynn Las Vegas. Wynn Defendants facilitated the trafficking through their practices, policies, and procedures.

- 55 -

Wynn Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that Wynn Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g.  Wynn Defendants knew or should have known that Wynn Las Vegas where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when A.H. was trafficked.

h.  Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, Wynn Defendants have repeatedly failed to stop these actions.

i.  Upon information and belief, Wynn Defendants exercised control over Wynn Las Vegas by:

 i.  Distributing information to assist employees in identifying human trafficking;

 ii.  Providing a process for escalating human trafficking concerns within the organization;

 iii.  Requiring employees to attend training related to human trafficking;

 iv.  Providing new hire orientation on human rights and corporate responsibility;

v.  Providing training and education to Wynn Las Vegas employees through webinars, seminars, conferences, trainings, and online portals;

vi.  Developing and holding ongoing training sessions on human trafficking; and/or

vii.  Providing checklists, escalation protocols and information to Wynn Las Vegas staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  Defendants Wynn Las Vegas Holdings, LLC, Wynn America Group, LLC, Wynn Resorts Finance, LLC, Wynn Resorts Holdings, LLC, and Wynn Resorts Limited were in an agency relationship with Defendant Wynn Las Vegas, LLC, and the Wynn Las Vegas property. Upon information and belief, this agency relationship was created through Wynn Defendants' exercise of an ongoing and systemic right of control over Wynn Las Vegas by Wynn Defendants' operations, including the means and methods of how Wynn Las Vegas conducted daily business through one or more of the following actions:

i.  Requiring Wynn Las Vegas to use Wynn Defendants' customer rewards program;

ii.  Sharing profits;

iii.  Hosting online bookings on Wynn Defendants' developed, owned, and operated domain;

- 57 -

iv.   Requiring Wynn Las Vegas to use Wynn Defendants'
      customer resource management program;

v.    Regulating internet access for guests;

vi.   Setting employee wages;

vii.  Making decisions about employment and budgets, including
      for security and management;

viii. Advertising for management and local positions;

ix.   Standardized training methods for Wynn Las Vegas
      employees;

x.    Standardized or strict rules of operation;

xi.   Oversight in hiring and/or terminating employees and
      managers;

xii.  Building and maintaining the Wynn Las Vegas property;

xiii. Regular inspection of the Wynn Las Vegas property;

xiv.  Fixing prices; and/or

xv.   Creating advertising campaigns and unrealistic expectations
      of safety for guests.

k.   Apparent agency also existed between Defendants Wynn Las
     Vegas Holdings, LLC, Wynn America Group, LLC, Wynn
     Resorts Finance, LLC, Wynn Resorts Holdings, LLC, and Wynn
     Resorts Limited and Defendant Wynn Las Vegas, LLC, and the
     Wynn Las Vegas property.

l.  Wynn Defendants held out Defendant Wynn Las Vegas, LLC, and the Wynn Las Vegas property to the public as possessing authority to act on their behalf.

m.  Given Wynn Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the Wynn Las Vegas, Wynn Defendants breached their duties in the following ways:

   i.   Inadequate distribution of information to assist employees in identifying human trafficking;

   ii.  Failure to provide a process for escalating human trafficking concerns within the organization;

   iii. Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

   iv.  Failure to provide new hire orientation on human rights and corporate responsibility;

   v.   Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

   vi.  Failure to develop and hold or require ongoing training sessions on human trafficking;

   vii. Failure to provide checklists, escalation protocols, and information to Wynn Las Vegas employees and staff or track

- 59 -

performance indicators and key metrics on human

trafficking prevention; and/or

    viii.  Failure to hold Wynn Las Vegas employees accountable to

stop and prevent human trafficking at the hotel.

  n.  For years, Wynn Defendants have demonstrated actual and/or

constructive knowledge of the rampant culture of sex trafficking

which tragically occurs at Wynn Las Vegas and at other Wynn

properties throughout the United States. This same entrenched,

pervasive actual and/or constructive knowledge of sex

trafficking facilitated the sex trafficking of A.H. at Wynn Las

Vegas that forms the basis of this complaint.

135.    From March 2014 to June 2014, A.H. was consistently trafficked

for sex by sex traffickers at Wynn Las Vegas located at 3131 S. Las Vegas

Boulevard, Las Vegas, Nevada 89109.

136.    As detailed above, on each occasion that A.H. was trafficked at

Wynn Las Vegas:

  a.  A.H., accompanied by the enforcer, would enter through the front

entrance in full view of security cameras;

  b.  A.H., and the accompanying enforcer, did not carry any luggage,

bags, or room cards or anything else that would indicate that they

were paying guests at the hotel;

  c.  The enforcer would remain near A.H. at all times and not allow

A.H. out of her sight;

- 60 -

d. A.H. and the enforcer would loiter near common areas, such as reception, bars or lounges, and talk to random hotel guests;

e. A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

f. A.H. and the enforcer would return to the Wynn Las Vegas common areas before departing at the end of the night.

137. Wynn Las Vegas staff, employees, and security routinely interacted with A.H. and saw A.H. and her enforcer arrive without luggage or bags, loiter in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

138. Also, sometime in late April 2014 – early May 2014, A.H. was trafficked at Wynn Las Vegas and, in a desperate plea for help, made eye contact with a cocktail waitress, who notified Wynn Las Vegas security officers.

139. At the time, A.H. had a fractured jaw, showed clear signs of physical abuse, and was in a malnourished state.

140. However, rather than intervene or otherwise attempt to assist A.H., the Wynn Las Vegas security officers simply followed behind A.H. and the enforcer until they exited the Wynn Las Vegas property.

141. During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

142. A.H. would be sexually abused and raped by multiple buyers per day while trafficked at Wynn Las Vegas.

- 61 -

143.  A.H.'s traffickers would routinely receive thousands of dollars each day and the Wynn Defendants, through their hotel business venture, would share financial benefits from her abuse.

144.  On each occasion that A.H. was trafficked at Wynn Las Vegas, buyers were provided a harbor by Wynn Defendants to assault and sexually abuse A.H.

145.  The indicia of sex trafficking were open and apparent to the Wynn Defendants. Specifically, Wynn Defendants and their employees and/or agents should have recognized the following:

   a.  A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

   b.  A.H. displayed signs of physical abuse;

   c.  A.H. was forced to remain near the enforcer at all times;

   d.  A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

   e.  A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

   f.  A.H. the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

   g.  A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

- 62 -

h.  A.H. and the enforcer left together at the end of every night and were met by the trafficker.

146.  Wynn Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

147.  Wynn Defendants thereby knowingly benefited from what they knew or should have known to be sex trafficking.

**(ii)    Facts Specific to Aria Defendants**

148.  Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

149.  Aria Resort & Casino, LLC, Aria Resort & Casino Holdings, LLC, MGM Resorts International, CityCenter Land, LLC, and Ace A Propco LLC:

a.  Aria Defendants owned, managed, maintained, inspected, secured, supervised, and/or controlled the brand and policies for booking, rates, and operations at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158, where A.H. was commercially sex trafficked on numerous occasions from March 2014 through June 2014. A.H. was transported to this location and forced to remain at this location while commercial sex acts with her were sold and purchased. Aria Defendants owned and operated Aria

Resort & Casino while buyers took A.H. to rooms that were rented out for the purpose of trafficking A.H.

b.  Aria Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

c.  Aria Defendants failed to implement and enforce any of their own policies or protect A.H. from being commercially sex trafficked and raped multiple times at Aria Resort & Casino.

d.  Aria Defendants had actual knowledge of sex trafficking occurring at Aria Resort & Casino because Aria Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

e.  Aria Defendants had constructive knowledge of sex trafficking occurring at Aria Resort & Casino because Aria Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

f.  Aria Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including

- 64 -

A.H., for sex at Aria Resort & Casino. Aria Defendants facilitated the trafficking through their practices, policies, and procedures. Aria Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that Aria Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g. Aria Defendants knew or should have known that Aria Resort & Casino where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when A.H. was trafficked.

h. Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, Aria Defendants have repeatedly failed to stop these actions.

i. Upon information and belief, Aria Defendants exercised control over Aria Resort & Casino by:

   i. Distributing information to assist employees in identifying human trafficking;

   ii. Providing a process for escalating human trafficking concerns within the organization;

   iii. Requiring employees to attend training related to human trafficking;

iv. Providing new hire orientation on human rights and corporate responsibility;

v. Providing training and education to Aria Resort & Casino employees through webinars, seminars, conferences, trainings, and online portals;

vi. Developing and holding ongoing training sessions on human trafficking; and/or

vii. Providing checklists, escalation protocols and information to Aria Resort & Casino staff or tracking performance indicators and key metrics on human trafficking prevention.

j. Defendants Aria Resort & Casino Holdings, LLC, MGM Resorts International, CityCenter Land, LLC, and Ace A Propco LLC were in an agency relationship with Defendant Aria Resort & Casino, LLC, and the Aria Resort & Casino property. Upon information and belief, this agency relationship was created through Aria Defendants' exercise of an ongoing and systemic right of control over Aria Resort & Casino, including the means and methods of how Aria Resort & Casino conducted daily business through one or more of the following:

i. Requiring Aria Resort & Casino to use Aria Defendants' customer rewards program;

ii. Sharing profits;

iii.  Hosting online bookings on Aria Defendants' developed, owned, and operated domain;

iv.  Requiring Aria Resort & Casino to use Aria Defendants' customer resource management program;

v.  Regulating internet access for guests;

vi.  Setting employee wages;

vii.  Making decisions about employment and budgets, including for security and management;

viii.  Advertising for management and local positions;

ix.  Standardized training methods for Aria Resort & Casino employees;

x.  Standardized or strict rules of operation;

xi.  Oversight in hiring and/or terminating employees and managers;

xii.  Building and maintaining the Aria Resort & Casino property;

xiii.  Regular inspection of the Aria Resort & Casino property;

xiv.  Fixing prices; and/or

xv.  Creating advertising campaigns and unrealistic expectations of safety for guests.

k.  Apparent agency also existed between Aria Resort & Casino Holdings, LLC, MGM Resorts International, CityCenter Land,

- 67 -

LLC, and Ace A Propco LLC and Defendant Aria Resort & Casino, LLC, and the Aria Resort & Casino property.

l.   Aria Defendants held out Defendant Aria Resort & Casino, LLC, and the Aria Resort & Casino property to the public as possessing authority to act on their behalf.

m.  MGM publicly announced an intention to monitor "operations for any situations that may indicate human trafficking" and provided assurances that they "captured anti-trafficking best practices." 2014 Corporate Social Responsibility Report, MGM RESORTS INTERNATIONAL, https://www.mgmresorts.com/content/dam/MGM/corporate/csr/annual-report/mgm-resorts-corporate-social-responsibility-annual-report-2014.pdf (last visited March 6, 2024).

n.   Given Aria Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the Aria Resort & Casino, Aria Defendants breached their duties in the following ways:

    i.   Inadequate distribution of information to assist employees in identifying human trafficking;

    ii.  Failure to provide a process for escalating human trafficking concerns within the organization;

- 68 -

iii. Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

iv. Failure to provide new hire orientation on human rights and corporate responsibility;

v. Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failure to develop and hold or require ongoing training sessions on human trafficking;

vii. Failure to provide checklists, escalation protocols, and information to Aria Resort & Casino employees and staff or track performance indicators and key metrics on human trafficking prevention; and/or

viii. Failure to hold Aria Resort & Casino employees accountable to stop and prevent human trafficking at the hotel.

o. For years, Aria Defendants have demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs at Aria Resort & Casino and at other MGM/Aria properties throughout the United States. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of A.H. at Aria Resort & Casino that forms the basis of this complaint.

- 69 -

150.    From March 2014 to June 2014, A.H. was consistently trafficked for sex by sex traffickers at Aria Resort & Casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

151.    As detailed above, on each occasion that A.H. was trafficked at Aria Resort & Casino:

   a. A.H. and the enforcer would enter through the front entrance in full view of security cameras;

   b. A.H. and the enforcer did not carry any luggage, bags, or room cards or anything else that would indicate that they were paying guests at the hotel;

   c. The enforcer would remain near A.H. at all times and not allow A.H. out of her sight;

   d. A.H. and the enforcer would loiter near common areas, such as bars or lounges, and talk to random hotel guests;

   e. A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

   f. A.H. and the enforcer would return to the Aria's common areas before departing together at the end of the night.

152.    Aria Resort & Casino staff, employees, and security routinely interacted with A.H. and saw A.H. and the enforcer arrive without luggage or bags, loiter in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

- 70 -

153.　Also, on or about May 28, 2014, A.H. and her enforcer were stopped by an Aria security officer as part of an undercover sting.

154.　At the time, A.H. was severely malnourished, displayed signs of physical abuse, and did not look anything like her ID photo.

155.　Also, while the Aria security officer questioned the two, the enforcer's phone repeatedly went off due to calls and texts from the trafficker.

156.　Despite clear signs of trafficking, Aria Resort & Casino's security officers did not call the police or offer any assistance to A.H.

157.　Instead, the Aria Resort & Casino security officers directed A.H. and the enforcer to an exit where the trafficker was waiting to pick them up.

158.　During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

159.　A.H. would be sexually abused and raped by multiple buyers per day while trafficked at Aria Resort & Casino.

160.　A.H.'s traffickers would routinely receive thousands of dollars each day and the Aria Defendants, through their hotel business venture, would share financial benefits from her abuse.

161.　On each occasion that A.H. was trafficked at Aria Resort & Casino, buyers were provided a harbor by Aria Resort & Casino to assault and sexually abuse A.H.

162.　The indicia of sex trafficking were open and apparent to the Aria Defendants. Specifically, Aria Defendants and their employees and/or agents should have recognized the following:

a. A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

b. A.H. displayed signs of physical abuse;

c. A.H. was forced to remain near the enforcer at all times;

d. A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

e. A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

f. A.H. and the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

g. A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

h. A.H. and the enforcer left together at the end of every night and were met by the trafficker.

163.    Aria Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

164.    Aria Defendants' hotel business venture benefited from what they knew or should have known to be sex trafficking.

(iii)    **Facts Specific to Venetian Defendants**

165.    Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

166.    Defendants Venetian Casino Resort, LLC, and Las Vegas Sands, LLC:

    a.   Venetian Defendants owned, managed, maintained, inspected, secured, supervised, and/or controlled the brand and policies for booking, rates, and operations at The Venetian Las Vegas resort hotel and casino located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, where A.H. was consistently commercially sex trafficked from March 2014 through June 2014. A.H. was transported to this location and forced to remain at this location while commercial sex acts with her were sold and purchased. Venetian Defendants owned and operated The Venetian Las Vegas while buyers took A.H. to rooms that were rented out for the purpose of trafficking A.H.

    b.   Venetian Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

    c.   Venetian Defendants failed to implement and enforce any of their own policies or protect A.H. from being commercially sex trafficked multiple times at The Venetian Las Vegas.

    d.   Venetian Defendants had actual knowledge of sex trafficking occurring at The Venetian Las Vegas because Venetian Defendants knew that sex trafficking and prostitution are

- 73 -

associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

e.  Venetian Defendants had constructive knowledge of sex trafficking occurring at The Venetian Las Vegas because Venetian Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

f.  Venetian Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including A.H., for sex at The Venetian Las Vegas. Venetian Defendants facilitated the trafficking through their practices, policies, and procedures. Venetian Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that Venetian Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g.  Venetian Defendants knew or should have known that The Venetian Las Vegas where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on

- 74 -

and around the hotel premises, including when A.H. was
trafficked.

h.  Despite having knowledge of the extensive prostitution and sex
trafficking that occurred at their hotels, Venetian Defendants
have repeatedly failed to stop these actions.

i.  Upon information and belief, Venetian Defendants exercised
control over The Venetian Las Vegas by:

    i.  Distributing information to assist employees in identifying
human trafficking;

    ii.  Providing a process for escalating human trafficking
concerns within the organization;

    iii.  Requiring employees to attend training related to human
trafficking;

    iv.  Providing new hire orientation on human rights and
corporate responsibility;

    v.  Providing training and education to The Venetian Las Vegas
employees through webinars, seminars, conferences,
trainings, and online portals;

    vi.  Developing and holding ongoing training sessions on human
trafficking; and/or

    vii.  Providing checklists, escalation protocols and information to
The Venetian Las Vegas staff or tracking performance
indicators and key metrics on human trafficking prevention.

j.   Defendants Las Vegas Sands, LLC was in an agency

relationship with Defendant Venetian Casino Resort, LLC, and

The Venetian Las Vegas property. Upon information and belief,

this agency relationship was created through Venetian

Defendants' exercise of an ongoing and systemic right of control

over The Venetian Las Vegas by Venetian Defendants'

operations, including the means and methods of how The

Venetian Las Vegas conducted daily business through one or

more of the following actions:

   i.   Requiring The Venetian Las Vegas to use Venetian

Defendants' customer rewards program;

   ii.  Sharing profits;

   iii. Hosting online bookings on Venetian Defendants' developed,

owned, and operated domain;

   iv.  Requiring The Venetian Las Vegas to use Venetian

Defendants' customer resource management program;

   v.   Regulating internet access for guests;

   vi.  Setting employee wages;

   vii. Making decisions about employment and budgets, including

for security and management;

   viii. Advertising for management and local positions;

   ix.  Standardized training methods for The Venetian Las Vegas

employees;

- 76 -

x.  Standardized or strict rules of operation;

xi.  Oversight in hiring and/or terminating employees and managers;

xii.  Building and maintaining The Venetian Las Vegas property;

xiii.  Regular inspection of The Venetian Las Vegas property;

xiv.  Fixing prices; and/or

xv.  Creating advertising campaigns and unrealistic expectations of safety for guests.

k.  Apparent agency also existed between Defendants Venetian Casino Resort, LLC, Las Vegas Sands, LLC, and the Wynn Las Vegas property.

l.  Venetian Defendants held out Defendant Venetian Casino Resort, LLC, and the Venetian Las Vegas property to the public as possessing authority to act on their behalf.

m. Given Venetian Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the Venetian Las Vegas, Venetian Defendants breached their duties in the following ways:

i.  Inadequate distribution of information to assist employees in identifying human trafficking;

ii.  Failure to provide a process for escalating human trafficking concerns within the organization;

- 77 -

     iii.  Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

     iv.  Failure to provide new hire orientation on human rights and corporate responsibility;

     v.  Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

     vi.  Failure to develop and hold or require ongoing training sessions on human trafficking;

     vii.  Failure to provide checklists, escalation protocols, and information to The Venetian Las Vegas employees and staff or track performance indicators and key metrics on human trafficking prevention; and/or

     viii.  Failure to hold The Venetian Las Vegas employees accountable to stop and prevent human trafficking at the hotel.

n.  For years, Venetian Defendants have demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs at The Venetian Las Vegas and at other Sands properties throughout the United States. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of

A.H. at The Venetian Las Vegas that forms the basis of this complaint.

167.    From March 2014 to June 2014, A.H. was consistently trafficked for sex by sex traffickers at The Venetian Las Vegas located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

168.    As detailed above, on each occasion that A.H. was trafficked at The Venetian Las Vegas:

    a.  A.H., accompanied by the enforcer, would enter through the front entrance in full view of security cameras;

    b.  A.H., and the accompanying enforcer, did not carry any luggage, bags, or room cards or anything else that would indicate that they were paying guests at the hotel;

    c.  The enforcer would remain near A.H. at all times and not allow A.H. out of her sight;

    d.  A.H. and the enforcer would loiter near common areas, such as reception, bars or lounges, and talk to random hotel guests;

    e.  A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

    f.  A.H. and the enforcer would return to The Venetian Las Vegas common areas before departing at the end of the night.

169.    The Venetian Las Vegas staff, employees, and security interacted with A.H. and saw A.H. and her enforcer arrive without luggage or bags, loiter

in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

170.    Also, sometime in late March 2014 – early April 2014, A.H. was trafficked at The Venetian Las Vegas. On that occasion, a "John" physically and sexually assaulted A.H. inside one of The Venetian Las Vegas hotel rooms. A.H. screamed during the assault and, afterwards, ran from the room and went downstairs where she waited inside a restroom hunched over in pain.

171.    However, rather than intervene or otherwise attempt to assist A.H., The Venetian Las Vegas' security officers and employees did nothing.

172.    During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

173.    A.H. would be sexually abused and raped by multiple buyers per day while trafficked at The Venetian Las Vegas.

174.    A.H.'s traffickers would routinely receive thousands of dollars each day and the Venetian Defendants, through their hotel business venture, would share financial benefits from her abuse.

175.    On each occasion that A.H. was trafficked at The Venetian Las Vegas, buyers were provided a harbor by Venetian Defendants to assault and sexually abuse A.H.

176.    The indicia of sex trafficking were open and apparent to the Venetian Defendants. Specifically, Venetian Defendants and their employees and/or agents should have recognized the following:

- 80 -

a. A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

b. A.H. displayed signs of physical abuse;

c. A.H. was forced to remain near the enforcer at all times;

d. A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

e. A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

f. A.H. the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

g. A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

h. A.H. and the enforcer left together at the end of every night and were met by the trafficker.

177.    Venetian Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

178.    Venetian Defendants thereby knowingly benefited from what they knew or should have known to be sex trafficking.

///

///

- 81 -

### (iv)    Facts Specific to New York-New York Defendants

179.    Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

180.    Defendants New York-New York Hotel & Casino, LLC, and MGM Resorts International:

a.    New York-New York Defendants owned, managed, maintained, inspected, secured, supervised, and/or controlled the brand and policies for booking, rates, and operations at New York-New York resort hotel and casino located at 3790 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, where A.H. was consistently commercially sex trafficked from March 2014 through June 2014. A.H. was transported to this location and forced to remain at this location while commercial sex acts with her were sold and purchased. New York-New York Defendants owned and operated New York-New York while buyers took A.H. to rooms that were rented out for the purpose of trafficking A.H.

b.    New York-New York Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

c.    New York-New York Defendants failed to implement and enforce any of their own policies or protect A.H. from being

- 82 -

commercially sex trafficked multiple times at New York-New York.

d.  New York-New York Defendants had actual knowledge of sex trafficking occurring at New York-New York because New York-New York Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

e.  New York-New York Defendants had constructive knowledge of sex trafficking occurring at New York-New York because New York-New York Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

f.  New York-New York Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including A.H., for sex at New York-New York. New York-New York Defendants facilitated the trafficking through their practices, policies, and procedures. New York-

New York Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that New York-New York Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g. New York-New York Defendants knew or should have known that New York-New York where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when A.H. was trafficked.

h. Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, New York-New York Defendants have repeatedly failed to stop these actions.

i. Upon information and belief, New York-New York Defendants exercised control over New York-New York by:

   i. Distributing information to assist employees in identifying human trafficking;

   ii. Providing a process for escalating human trafficking concerns within the organization;

   iii. Requiring employees to attend training related to human trafficking;

   iv. Providing new hire orientation on human rights and corporate responsibility;

v. Providing training and education to New York-New York employees through webinars, seminars, conferences, trainings, and online portals;

vi. Developing and holding ongoing training sessions on human trafficking; and/or

vii. Providing checklists, escalation protocols and information to New York-New York staff or tracking performance indicators and key metrics on human trafficking prevention.

j. Defendant MGM Resorts International, LLC was in an agency relationship with Defendant New York-New York Hotel & Casino, LLC, and the New York-New York property. Upon information and belief, this agency relationship was created through New York-New York Defendants' exercise of an ongoing and systemic right of control over New York-New York by New York-New York Defendants' operations, including the means and methods of how New York-New York conducted daily business through one or more of the following actions:

i. Requiring New York-New York to use New York-New York Defendants' customer rewards program;

ii. Sharing profits;

iii. Hosting online bookings on New York-New York Defendants' developed, owned, and operated domain;

- 85 -

iv.  Requiring New York-New York to use New York-New York

Defendants' customer resource management program;

v.  Regulating internet access for guests;

vi.  Setting employee wages;

vii.  Making decisions about employment and budgets, including

for security and management;

viii.  Advertising for management and local positions;

ix.  Standardized training methods for New York-New York

employees;

x.  Standardized or strict rules of operation;

xi.  Oversight in hiring and/or terminating employees and

managers;

xii.  Building and maintaining the New York-New York property;

xiii.  Regular inspection of the New York-New York property;

xiv.  Fixing prices; and/or

xv.  Creating advertising campaigns and unrealistic expectations

of safety for guests.

k.  Apparent agency also existed between Defendant MGM Resorts

International and Defendant New York-New York Hotel &

Casino, LLC, and the New York-New York property.

l.  New York-New York Defendants held out Defendant New York-

New York Hotel & Casino, LLC, and the New York-New York

- 86 -

property to the public as possessing authority to act on their behalf.

m. Given New York-New York Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the New York-New York, New York-New York Defendants breached their duties in the following ways:

i. Inadequate distribution of information to assist employees in identifying human trafficking;

ii. Failure to provide a process for escalating human trafficking concerns within the organization;

iii. Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

iv. Failure to provide new hire orientation on human rights and corporate responsibility;

v. Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failure to develop and hold or require ongoing training sessions on human trafficking;

vii. Failure to provide checklists, escalation protocols, and information to New York-New York employees and staff or

- 87 -

track performance indicators and key metrics on human

trafficking prevention; and/or

viii.  Failure to hold New York-New York employees accountable

to stop and prevent human trafficking at the hotel.

n. For years, New York-New York Defendants have demonstrated

actual and/or constructive knowledge of the rampant culture of

sex trafficking which tragically occurs at New York-New York

and at other MGM Resorts International properties throughout

the United States.

o.  This same entrenched, pervasive actual and/or constructive

knowledge of sex trafficking facilitated the sex trafficking of

A.H. at New York-New York that forms the basis of this

complaint.

181.   From March 2014 to June 2014, A.H. was consistently trafficked

for sex by sex traffickers at New York-New York located at 3790 S. Las Vegas

Boulevard, Las Vegas, Nevada 89109.

182.   As detailed above, on each occasion that A.H. was trafficked at

New York-New York:

a. A.H., accompanied by the enforcer, would enter through the front

entrance in full view of security cameras;

b. A.H., and the accompanying enforcer, did not carry any luggage,

bags, or room cards or anything else that would indicate that they

were paying guests at the hotel;

- 88 -

c. The enforcer would remain near A.H. at all times and not allow
   A.H. out of her sight;

d. A.H. and the enforcer would loiter near common areas, such as
   reception, bars or lounges, and talk to random hotel guests;

e. A.H. and the enforcer would go up to hotel guests' rooms for a short
   amount of time;

f. A.H. and the enforcer would return to the New York-New York
   common areas before departing at the end of the night.

183.   New York-New York staff, employees, and security interacted with A.H. and saw A.H. and her enforcer arrive without luggage or bags, loiter in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

184.   Also, sometime in late May 2014 – early June 2014, A.H. was trafficked at New York-New York. On that occasion, A.H. was suffering severely from her injuries and exhibited multiple signs of being trafficked.

185.   A New York-New York security guard approached A.H., asked if she was ok, and offered her water. A.H. was unable to ask for help because her enforcer was right beside her and on the phone with their trafficker, who was close by outside the casino.

186.   The New York-New York security guard did not intervene, assist, or take steps to protect A.H., and instead simply walked away.

187.   During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

- 89 -

188.    A.H. would be sexually abused and raped by multiple buyers per day while trafficked at New York-New York.

189.    A.H.'s traffickers would routinely receive thousands of dollars each day and the New York-New York Defendants, through their hotel business venture, would share financial benefits from her abuse.

190.    On each occasion that A.H. was trafficked at New York-New York, buyers were provided a harbor by New York-New York Defendants to assault and sexually abuse A.H.

191.    The indicia of sex trafficking were open and apparent to the New York-New York Defendants. Specifically, New York-New York Defendants and their employees and/or agents should have recognized the following:

a.    A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

b.    A.H. displayed signs of physical abuse;

c.    A.H. was forced to remain near the enforcer at all times;

d.    A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

e.    A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

f.    A.H. the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

g.  A.H. was only 18 years old and had no valid I.D. to be on the casino

floor; and

h.  A.H. and the enforcer left together at the end of every night and

were met by the trafficker.

192.   New York-New York Defendants and their employees and/or

agents knew or should have known that illegal sex trafficking was occurring,

yet they acquiesced in the trafficking activity because of the money and

financial benefits they received from renting the rooms.

193.   New York-New York Defendants thereby knowingly benefited from

what they knew or should have known to be sex trafficking.

**D.    The Defendants Facilitated the Trafficking of A.H.**

194.   Plaintiff repeats and realleges the allegations as contained in the

preceding paragraphs herein and incorporates the same herein by reference.

195.   Despite the obvious signs of human trafficking and indicators of

commercial sex activities, Defendants failed to recognize, prevent, or report

A.H.'s trafficking. Instead, Defendants harbored or otherwise facilitated the sex

trafficking of A.H. on their hotel properties and, accordingly, financially

benefited from the continued abuse that A.H. suffered. Furthermore,

Defendants failed to prevent A.H.'s continued victimization.

196.   Defendants' employees and staff had multiple interactions with

A.H. during the time period that she was trafficked at their properties.

Nevertheless, Defendants failed to take any actions to curtail these activities.

197.   Had Defendants paid attention to the activities being conducted on their properties, the apparent red flags outlined above would have made it impossible for them not to notice the repeated victimization of A.H.

198.   Defendants financially benefited from the sex trafficking of A.H. and knowingly or negligently aided her traffickers and buyers. Defendants rented rooms to A.H.'s buyers when they knew, or should have known, that the individuals were using their rooms to subject A.H. to repeated exploitation as they forced her into sexual servitude.

199.   Defendants knew, or should have known, that A.H. was being trafficked and that they were knowingly benefiting from said exploitation because A.H. was frequently transported to Defendants' properties.

200.   Defendants knew, or should have known, that A.H. was being trafficked because A.H. had several interactions with Defendants' employees, security, and staff, A.H. constantly entertained traffic to appease her trafficker's daily quotas, and A.H.'s traffickers and/or enforcer remained with her at all times to ensure her compliance. This behavior should have indicated to Defendants that they were using Defendants' hotels to facilitate the sex trafficking of A.H.

201.   Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging to A.H.'s buyers in which to harbor A.H. while they were trafficking and exploiting her.

202.   Defendants profited from the sex trafficking of A.H. and knowingly or negligently aided and facilitated A.H.'s trafficking in violation of state and

federal statutes. Defendants took no action as A.H. repeatedly: (1) visited the hotels; (2) traveled without any luggage or bags; (3) remained with her trafficker's enforcer; (4) loitered in common areas; (5) went up to several guest rooms per night; and (6) exhibited signs of malnourishment and physical abuse.

203.    Defendants had several opportunities to stop A.H.'s traffickers and offenders from victimizing A.H. and others like her. Instead, Defendants failed to take reasonable measures to stop sex trafficking from occurring in their hotels. Defendants' systematic willful blindness encouraged sex trafficking.

204.    Defendants enjoyed the steady stream of income that resulted from the trafficking of A.H.

205.    Defendants further financially benefited from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

206.    Defendants failed to take any steps to alert the authorities, properly intervene in the situation, hold accountable hotel managers and/or staff who were facilitating sex trafficking on the premises, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

207.    Upon information and belief, Defendants maintained their deficiencies to maximize profits by:

   a. Reducing the cost of training employees, staff, and managers on how to spot the signs of human trafficking and sexual exploitation and what steps to take;

b. Not refusing room rentals or reporting guests to law enforcement in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

c. Lowering security costs by not having property security measures, including not limited to, employing qualified security officers and/or maintaining proper video surveillance to actively combat human trafficking and sexual exploitations;

d. Failing to enforce proper policies and procedures to stop human trafficking and sexual exploitation on their properties, including but not limited to, holding hotel managers, security, and/or staff accountable who facilitated commercial sex trafficking on their properties.

208.    As a direct and proximate result of the foregoing misconduct, A.H. has suffered, and continues to suffer, general and special damages. These damages include, but are not limited to, severe emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy life, past and future medical expenses, attorney's fees and costs, and other general and special damages, all in an amount to be determined at trial.

///

///

///

- 94 -

## FIRST CLAIM FOR RELIEF

### (Violations of 18 U.S.C. § 1595 (TVPRA))

### Against All Defendants

209.   Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

210.   Plaintiff A.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

211.   Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595.

212.   Specifically, Defendants had a statutory obligation not to benefit in any way from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. § 1595.

213.   At all relevant times, Defendants breached this duty by participating in and facilitating the provision and harboring of A.H. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions throughout the duration that A.H. was trafficked at their respective resort hotel properties.

214.   Defendants have participated in a hotel business venture that knowingly benefited from the commercial sex trafficking of A.H., who was trafficked as a result of their acts, omissions, and/or commissions, in order to maintain the loyalty of the segment of their customer base that seeks to participate in the sex trade.

- 95 -

215. Moreover, Defendants knowingly directly benefitted from the commercial sex trafficking of A.H. on each occasion they received payment for rooms where A.H. was sexually exploited by guests of the hotels.

216. As a direct and proximate result of the aforementioned violations of 18 U.S.C. § 1595, Plaintiff was injured and thereby experienced great pain and anxiety to her body and mind, sustaining injuries and damages, all in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

217. As a further direct and proximate result of the violations of 18 U.S.C. § 1595, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of her injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries she has suffered.

218. As a further direct and proximate result of the violations of 18 U.S.C. § 1595, Plaintiff underwent medical treatment and incurred past medical and/or incidental expenses. Plaintiff may also require medical treatment in the future due to the violations of 18 U.S.C. § 1595 and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

219. Additionally, due to the injuries caused by Defendants' acts and omissions, Plaintiff has suffered loss of income and/or loss of earning capacity.

- 96 -

220. The acts, conduct, and omissions of the Defendants, as alleged throughout this Complaint, were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of Plaintiff and others, and for the primary purpose of increasing Defendants' profits.

221. Specifically, upon information and belief, prior to A.H.'s trafficking at Defendants' hotel properties, there were several other incidents involving individuals who were trafficked at Defendants' hotel properties.

222. Defendants knew or should have known about these prior incidents involving individuals who were trafficked at Defendants' hotel properties.

223. As such, Defendants knew of the probable harmful consequences of facilitating sex trafficking and of violating 18 U.S.C. § 1595.

224. Nevertheless, Defendants failed to act to avoid those foreseeable harmful consequences and instead allowed other individuals – including A.H. – to be trafficked on their hotel properties.

225. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, and others in the State of Nevada, entitling her to exemplary and punitive damages.

226. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

- 97 -

227.    Defendants' acts complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to exemplary and punitive damages pursuant to NRS Chapter 42, TVPRA, and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

228.    Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorneys fees and costs of suit.

### SECOND CLAIM FOR RELIEF

### (Violations of NRS 41.1399)

### Against All Defendants

229.    Plaintiff restates and realleges each and every allegation contained in the preceding paragraphs herein and incorporates the same herein by reference.

230.    Plaintiff A.H. is a victim of human trafficking within the meaning of NRS 41.1399(10) and is therefore entitled to bring a civil action under NRS 41.1399.

231.    Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of NRS 41.1399.

232.    Specifically, Defendants had a statutory obligation not to profit from the human trafficking of A.H. pursuant to NRS 41.1399(1).

233.    Moreover, Defendants knowingly directly benefitted and profited from the human trafficking of A.H. on each occasion they received payment for rooms where A.H. was sexually exploited by guests of the hotels.

234.    As a direct and proximate result of the aforementioned violations of NRS 41.1399, Plaintiff was injured and thereby experienced great pain and anxiety to her body and mind, sustaining injuries and damages, all in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

235.    As a further direct and proximate result of the violations of NRS 41.1399, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of her injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries she has suffered.

236.    As a further direct and proximate result of the violations of NRS 41.1399, Plaintiff underwent medical treatment and incurred past medical and/or incidental expenses. Plaintiff may also require medical treatment in the future due to the violations of NRS 41.1399 and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

237.    Additionally, due to the injuries caused by Defendants' acts and omissions, Plaintiff has suffered loss of income and/or loss of earning capacity.

238.   The acts, conduct, and omissions of the Defendants, as alleged throughout this Complaint, were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of Plaintiff and others, and for the primary purpose of increasing Defendants' profits.

239.   Specifically, upon information and belief, prior to A.H.'s trafficking at Defendants' hotel properties, there were several other incidents involving individuals who were trafficked at Defendants' hotel properties.

240.   Defendants knew or should have known about these prior incidents involving individuals who were trafficked at Defendants' hotel properties.

241.   As such, Defendants knew of the probable harmful consequences of facilitating sex trafficking and of violating NRS 41.1399.

242.   Nevertheless, Defendants failed to act to avoid those foreseeable harmful consequences and instead allowed other individuals – including A.H. – to be trafficked on their hotel properties.

243.   Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, and others in the State of Nevada, entitling her to exemplary and punitive damages.

244.   Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

- 100 -

245.    Defendants' acts complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

246.    Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorneys fees and costs of suit.

### THIRD CLAIM FOR RELIEF

### (Negligence – Premises Liability)

### Against All Defendants

247.    Plaintiff restates and realleges each and every allegation contained in the preceding paragraphs herein and incorporates the same herein by reference.

248.    Defendants owed a duty to the general public and invitees, including Plaintiff, to keep its premises free from, and/or otherwise guard against, hazards and dangerous conditions.

249.    Defendants further owed Plaintiff a duty of reasonable care under the circumstances.

250.    Defendants breached their duty of care when they created a hazard, failed to keep their property free from hazards, failed to guard against hazards, and/or failed to warn others of the hazards. Also, upon information and

belief, Defendants did not take reasonable precautions to prevent dangerous conditions at Defendant's premises.

251.   Defendants, through their employees, servants, or agents, breached their duty of care when they failed to adequately secure and inspect their premises or otherwise act to prevent the trafficking of A.H.

252.   Upon information and belief, Defendants had notice of the hazard or dangerous condition. Upon information and belief, Defendants created the hazardous or unsafe condition and/or had actual or constructive notice of these hazardous or unsafe conditions before A.H.'s trafficking occurred.

253.   Defendants' creation of a hazard, failure to keep their premises free from hazards, failure to warn and/or otherwise guard against hazards in their premises, and/or failure to take reasonable precautions to prevent foreseeable hazards or dangerous conditions actually and proximately or legally caused Plaintiff to be trafficked and sexually exploited at Defendants' hotel properties.

254.   As a direct and proximate result of Defendants' negligence, Plaintiff was injured and thereby experienced great pain and anxiety to her body and mind, sustaining injuries and damages, all in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

255.   As a further direct and proximate result of Defendants' negligence, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of her injuries, and will

CLAGGETT SYKES LAW FIRM

continue to incur damages for future medical treatment necessitated by incident-related injuries she has suffered.

256.   As a further direct and proximate result of Defendants' negligence, Plaintiff underwent medical treatment and incurred past medical and/or incidental expenses. Plaintiff may also require medical treatment in the future due to Defendants' negligence and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

257.   Additionally, due to the injuries caused by Defendants' acts and omissions, Plaintiff has suffered loss of income and/or loss of earning capacity.

258.   The acts, conduct, and omissions of the Defendants, as alleged throughout this Complaint, were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of Plaintiff and others, and for the primary purpose of increasing Defendants' profits.

259.   Specifically, upon information and belief, prior to A.H.'s trafficking at Defendants' hotel properties, there were several other incidents involving individuals who were trafficked at Defendants' hotel properties.

260.   Defendants knew or should have known about these prior incidents involving individuals who were trafficked at Defendants' hotel properties.

261.   As such, Defendants knew of the probable harmful consequences of violating 18 U.S.C. § 1595 and NRS 41.1399.

- 103 -

262. Nevertheless, Defendants failed to act to avoid those foreseeable harmful consequences and instead allowed other individuals – including A.H. – to be trafficked on their hotel properties.

263. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, and others in the State of Nevada, entitling her to exemplary and punitive damages.

264. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

265. Defendants' acts complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

266. Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorneys fees and costs of suit.

WHEREFORE, Plaintiff, A.H., expressly reserving her right to amend this Complaint at the time of trial, to include all items of damage not yet

ascertained, demands judgment against Defendants, WYNN LAS VEGAS, LLC, a Nevada Limited Liability Company; WYNN LAS VEGAS HOLDINGS, LLC, a Nevada Limited Liability Company; WYNN AMERICA GROUP, LLC, a Nevada Limited Liability Company; WYNN RESORTS FINANCE, LLC, a Nevada Limited Liability Company; WYNN RESORTS HOLDINGS, LLC, a Nevada Limited Liability Company; WYNN RESORTS, LIMITED, a Nevada Corporation; ARIA RESORT & CASINO, LLC, a Nevada Limited Liability Company; ARIA RESORT & CASINO HOLDINGS, LLC, a Nevada Limited Liability Company; MGM RESORTS INTERNATIONAL, a Delaware Corporation; VENETIAN CASINO RESORT, LLC d/b/a THE VENETIAN LAS VEGAS, a Nevada Limited Liability Company; LAS VEGAS SANDS, LLC d/b/a THE VENETIAN LAS VEGAS, a Nevada Limited Liability Company; NEW YORK-NEW YORK HOTEL & CASINO, LLC d/b/a NEW YORK NEW YORK HOTEL AND CASINO, a Nevada Limited Liability Company; CITYCENTER LAND, LLC, a Nevada Limited Liability Company; ACE A PROPCO LLC, a Delaware Limited Liability Company; DOES I-X; ROE BUSINESS ENTITIES XI-XX, inclusive, as follows:

1.     For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

2.     For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

3.     For exemplary and punitive damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

4.      For restitution in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

5.      For reasonable attorney's fees;

6.      For costs of suit incurred;

7.      For prejudgment interest;

8.      For a jury trial on all issues so triable; and

9.      For such other relief as to the Court seems just and proper.

Dated this 8th of May 2024.

CLAGGETT & SYKES LAW FIRM

/s/ *Brian Blankenship*

Brian Blankenship, Esq.
Nevada Bar No. 11522
*Attorneys for Plaintiff*

Electronically Issued
5/8/2024 10:49 AM

1   **SUMM**
    Sean K. Claggett, Esq.
2   Nevada Bar No. 8407
    Brian Blankenship, Esq.
3   Nevada Bar No. 11522
    Scott E. Lundy, Esq.
4   Nevada Bar No. 14235
    CLAGGETT & SYKES LAW FIRM
5   4101 Meadows Lane, Ste. 100
    Las Vegas, Nevada 89107
6   (702) 655-2346 – Telephone
    (702) 655-3763 – Facsimile
7   sclaggett@claggettlaw.com
    brian@claggettlaw.com
8   scott@claggettlaw.com

9   Kimberly L. Adams, Esq., (*pro hac* forthcoming)
    Matthew D. Schultz, Esq. (*pro hac* forthcoming)
10  LEVIN PAPANTONIO RAFFERTY
    316 South Baylen Street
11  Pensacola, Florida 32502
    (850) 435-7000 – Telephone
12  kadams@levinlaw.com
    mschultz@levinlaw.com
13  *Attorneys for Plaintiff*

14                  **EIGHTH JUDICIAL DISTRICT COURT**

15                      **CLARK COUNTY, NEVADA**

16

17  A.H., an Individual,                    | Case No. A-24-888768-C

           Plaintiff,                       | Dept. No. V
18
    v.                                      | **SUMMONS - LAS VEGAS SANDS,**
19                                          | **LLC D/B/A THE VENETIAN LAS**
    WYNN LAS VEGAS, LLC, a Nevada           | **VEGAS**
20  Limited Liability Company; WYNN
    LAS VEGAS HOLDINGS, LLC, a
21  Nevada Limited Liability Company;
    WYNN AMERICA GROUP, LLC, a
22  Nevada Limited Liability Company;
    WYNN RESORTS FINANCE, LLC, a
23  Nevada Limited Liability Company;
    WYNN RESORTS HOLDINGS, LLC, a
24                                  - 1 -

1    Nevada Limited Liability Company;
  WYNN RESORTS, LIMITED, a Nevada
2    Corporation; ARIA RESORT &
  CASINO, LLC, a Nevada Limited
3    Liability Company; ARIA RESORT &
  CASINO HOLDINGS, LLC, a Nevada
4    Limited Liability Company; MGM
  RESORTS INTERNATIONAL, a
5    Delaware Corporation; VENETIAN
  CASINO RESORT, LLC, d/b/a THE
6    VENETIAN LAS VEGAS, a Nevada
  Limited Liability Company; LAS
7    VEGAS SANDS, LLC d/b/a THE
  VENETIAN LAS VEGAS, a Nevada
8    Limited Liability Company; NEW
  YORK-NEW YORK HOTEL &
9    CASINO, LLC d/b/a NEW YORK NEW
  YORK HOTEL AND CASINO, a
10   Nevada Limited Liability Company;
  CITYCENTER LAND, LLC, a Nevada
11   Limited Liability Company; ACE A
  PROPCO LLC, a Delaware Limited
12   Liability Company; DOES I-X; ROE
  BUSINESS ENTITIES XI-XX,
13   inclusive,

14           Defendants.

15 **NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU**
16 **RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

17 **TO THE DEFENDANT(S): -- LAS VEGAS SANDS, LLC D/B/A THE VENETIAN LAS VEGAS**

18     A civil Amended Complaint has been filed by the Plaintiff(s) against you

19 for the relief set forth in the Amended Complaint.

20     1.   If you intend to defend this lawsuit, within 20 days after this

21 Summons is served on you, exclusive of the day of service, you must do the

22 following:

23

24                     - 2 -

CLAGGETT�SYKES LAW FIRM

1        (a) File with the Clerk of this lawsuit, whose address is shown

2    below, a formal written response to the Amended Complaint in accordance with

3    the rules of the Court, with the appropriate filing fee.

4        (b) Serve a copy of your response upon the attorney whose name

5    address is shown below.

6       2.   Unless you respond, your default will be entered upon application

7    of the Plaintiff(s) and failure to so respond will result in a judgment of default

8    against you for the relief demanded in the Amended Complaint, which could

9    result in the taking of money or property or other relief requested in the

10   Amended Complaint.

11      3.   If you intend to seek the advise of an attorney in this matter, you

12   should do so promptly so that your response may be filed on time.

13      4.   The State of Nevada, its political subdivisions, agencies, officers,

14   employees, board members, commission members and legislators each have 45

15   days after service of this Summons within which to file an Answer or other

16   responsive pleading to the Amended Complaint.

17                      STEVEN D. GRIERSON,
                        CLERK OF THE COURT

18                                 5/14/2024

19               By:                   
              Deputy Clerk           Date

   Submitted by:               Clark County Courthouse

20                           200 Lewis Avenue
   CLAGGETT & SYKES LAW FIRM    Las Vegas, NV 89155

21   /s/ Brian Blankenship

22                              Demond Palmer
   Brian Blankenship, Esq.

23      Nevada Bar No. 11522
   Attorneys for Plaintiff

24                           - 3 -

CLAGGETT SYKES LAW FIRM

Electronically Filed
5/8/2024 10:47 AM
Steven D. Grierson
CLERK OF THE COURT

1 **ACOM**
Sean K. Claggett, Esq.
2 Nevada Bar No. 8407
Brian Blankenship, Esq.
3 Nevada Bar No. 11522
Scott E. Lundy, Esq.
4 Nevada Bar No. 14235
CLAGGETT & SYKES LAW FIRM
5 4101 Meadows Lane, Ste. 100
Las Vegas, Nevada 89107
6 (702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
7 sclaggett@claggettlaw.com
brian@claggettlaw.com
8 scott@claggettlaw.com

9 Kimberly L. Adams, Esq., (*pro hac* forthcoming)
Matthew D. Schultz, Esq. (*pro hac* forthcoming)
10 LEVIN PAPANTONIO RAFFERTY
316 South Baylen Street
11 Pensacola, Florida 32502
(850) 435-7000 – Telephone
12 kadams@levinlaw.com
mschultz@levinlaw.com
13 *Attorneys for Plaintiff*

14                  **EIGHTH JUDICIAL DISTRICT COURT**

15                       **CLARK COUNTY, NEVADA**

16 | A.H., an Individual, | Case No. A-24-888768-C |
|---|---|
17 | Plaintiff, | Dept. No. V |
18 | v. | **AMENDED COMPLAINT** |
19 | WYNN LAS VEGAS, LLC, a Nevada Limited Liability Company; WYNN | **Jury Demand** |
20 | LAS VEGAS HOLDINGS, LLC, a Nevada Limited Liability Company; | |
21 | WYNN AMERICA GROUP, LLC, a Nevada Limited Liability Company; | |
22 | WYNN RESORTS FINANCE, LLC, a Nevada Limited Liability Company; | |
23 | WYNN RESORTS HOLDINGS, LLC, a Nevada Limited Liability Company; | |
24

1  WYNN RESORTS, LIMITED, a Nevada
   Corporation; ARIA RESORT &
2  CASINO, LLC, a Nevada Limited
   Liability Company; ARIA RESORT &
3  CASINO HOLDINGS, LLC, a Nevada
   Limited Liability Company; MGM
4  RESORTS INTERNATIONAL, a
   Delaware Corporation; VENETIAN
5  CASINO RESORT, LLC, d/b/a THE
   VENETIAN LAS VEGAS, a Nevada
6  Limited Liability Company; LAS
   VEGAS SANDS, LLC d/b/a THE
7  VENETIAN LAS VEGAS, a Nevada
   Limited Liability Company; NEW
8  YORK-NEW YORK HOTEL &
   CASINO, LLC d/b/a NEW YORK-NEW
9  YORK HOTEL AND CASINO, a
   Nevada Limited Liability Company;
10 CITYCENTER LAND, LLC, a Nevada
   Limited Liability Company; ACE A
11 PROPCO LLC, a Delaware Limited
   Liability Company; DOES I-X; ROE
12 BUSINESS ENTITIES XI-XX,
   inclusive,
13
                    Defendants.
14

15     Plaintiff, A.H., by and though her counsel of record, CLAGGETT &

16 SYKES LAW FIRM, brings her causes of action against Defendants, WYNN

17 LAS VEGAS, LLC, a Nevada Limited Liability Company; WYNN LAS VEGAS

18 HOLDINGS, LLC, a Nevada Limited Liability Company; WYNN AMERICA

19 GROUP, LLC, a Nevada Limited Liability Company; WYNN RESORTS

20 FINANCE, LLC, a Nevada Limited Liability Company; WYNN RESORTS

21 HOLDINGS, LLC, a Nevada Limited Liability Company; WYNN RESORTS,

22 LIMITED, a Nevada Corporation; ARIA RESORT & CASINO, LLC, a Nevada

23 Limited Liability Company; ARIA RESORT & CASINO HOLDINGS, LLC, a

24                              - 2 -

CLAGGETT SYKES LAW FIRM

1  Nevada Limited Liability Company; MGM RESORTS INTERNATIONAL, a

2  Delaware Corporation; VENETIAN CASINO RESORT, LLC d/b/a THE

3  VENETIAN LAS VEGAS, a Nevada Limited Liability Company; LAS VEGAS

4  SANDS, LLC d/b/a THE VENETIAN LAS VEGAS, a Nevada Limited Liability

5  Company; NEW YORK-NEW YORK HOTEL & CASINO, LLC d/b/a NEW

6  YORK-NEW YORK HOTEL AND CASINO, a Nevada Limited Liability

7  Company; CITYCENTER LAND, LLC, a Nevada Limited Liability Company;

8  ACE A PROPCO LLC, a Delaware Limited Liability Company; DOES I-X; ROE

9  BUSINESS ENTITIES XI-XX, inclusive, and each of them, and alleges as

10  follows:

### INTRODUCTION

12       1.     For years, hotel business ventures have benefited from sex

13  trafficking. Sex traffickers exploit their victims and parade their misconduct

14  openly in hotel properties – including those found here in Las Vegas, Nevada –

15  as hotels benefit by facilitating the crime in violation of state and federal laws.

16       2.     While hotel business operations neglect taking reasonable steps to

17  prevent such criminal misconduct, they are also benefitting from it at the

18  expense of human life, human rights, and human dignity and in violation of the

19  law. Despite claims by major hotel brands that they are combatting human

20  trafficking known to be occurring on their properties, Defendants' business

21  venture benefitted from Plaintiff's harm because they actually failed to

22  implement any effective policies or trainings.

23

24

3.      All Defendants know and have known for more than a decade that sex trafficking repeatedly occurs on their watch. Rather than taking timely and effective measures to thwart this epidemic, the Defendants in this case have instead chosen to ignore the open and obvious presence of sex trafficking on their properties while enjoying the profit from rooms rented for this explicit and apparent purpose.

4.      During the times that Plaintiff was harmed, all Defendants were aware of or should have been aware of the financial benefits that they gained through the sex trafficking of Plaintiff.

5.      This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials A.H.

6.      A.H. was trafficked for commercial sex at the age of 18 from March 2014 to June 2014. During that time, A.H. was preyed upon by traffickers, buyers, and profiteers who benefited each time A.H. was bought, sold, and required to comply with sexually abusive strangers. A.H. endured brutal physical assaults, psychological torment, verbal abuse, kidnapping, false imprisonment, and torture at the hands of her traffickers.

7.      A.H. was regularly trafficked at Wynn Las Vegas, located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, which at all relevant times herein was owned, operated, managed, maintained, inspected, secured, supervised, and/or controlled by: (1) Defendant Wynn Las Vegas, LLC; (2) Wynn Las Vegas Holdings, LLC; (3) Wynn America Group, LLC; (4) Wynn Resorts

- 4 -

1  Finance, LLC; (5) Wynn Resorts Holdings, LLC; and (6) Wynn Resorts Limited

2  (hereinafter collectively referred to as "Wynn Defendants").

3      8.    A.H. was also regularly trafficked at Aria Resort & Casino, located

4  at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158, which at all

5  relevant times herein was owned, operated, managed, maintained, inspected,

6  secured, supervised, and/or controlled by: (1) Aria Resort & Casino, LLC; (2)

7  Aria Resort & Casino Holdings, LLC; (3) MGM Resorts International; (4)

8  CityCenter Land, LLC; and (5) Ace A Propco LLC (hereinafter collectively

9  referred to as "Aria Defendants").

10     9.    A.H. was also regularly trafficked at The Venetian Las Vegas,

11 located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, which at all

12 relevant times herein was owned, operated, managed, maintained, inspected,

13 secured, supervised, and/or controlled by: (1) Venetian Casino Resort, LLC; and

14 (2) Las Vegas Sands, LLC (hereinafter collectively referred to as "Venetian

15 Defendants").

16     10.   A.H. was also regularly trafficked at New York-New York Hotel

17 and Casino, located at 3790 S. Las Vegas Boulevard, Las Vegas, Nevada 89109,

18 which at all relevant times herein was owned, operated, managed, maintained,

19 inspected, secured, supervised, and/or controlled by: (1) New York-New York

20 Hotel & Casino, LLC and (2) MGM Resorts International (hereinafter

21 collectively referred to as "New York-New York Defendants").

22     11.   During the relevant time period, A.H. was repeatedly trafficked at

23 Wynn Las Vegas, Aria Resort & Casino, The Venetian Las Vegas, and New

24                                    - 5 -

1  York-New York with the actual and/or constructive knowledge of all

2  Defendants. Nevertheless, Defendants continued to participate in their

3  respective commercial ventures whereby they derived profits from A.H.'s

4  ongoing trafficking.

5      12.    A.H. now brings this action for damages pursuant to the

6  Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18

7  U.S.C. § 1595, against the Defendants who enabled, harbored, facilitated, and/or

8  otherwise financially benefited, or any combination of the foregoing, from a

9  venture in which A.H. was trafficked for sex, sexually exploited, and victimized

10  in violation of the TVPRA.

11          **JURISDICTION, VENUE, AND PARTIES**

12      13.    This Court has jurisdiction over this matter under NRS 14.065 and

13  NRS 4.370(1), as the facts alleged occurred in Clark County, Nevada, and

14  involve an amount in controversy in excess of $15,000.00. Venue is proper

15  pursuant to NRS 13.040, as Defendants, or any one of them, resided in Clark

16  County, Nevada, at the commencement of this action.

17      14.    At all times relevant herein, Plaintiff A.H. (hereinafter "Plaintiff"

18  or "A.H.") was and is a resident of Clark County, Nevada.

19      15.    Due to the sensitive and intimate nature of the issues in this case,

20  Plaintiff asks the Court to enter a protective order under Nevada Rule of Civil

21  Procedure 26(c): (1) permitting her to proceed under a pseudonym, A.H.; and (2)

22  forbidding the parties from disclosing her identity to third-parties without

23  either her consent or the prior approval of the Court.

24                          - 6 -

16.    Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b.  As a hotel operator, Defendant Wynn Las Vegas, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Las Vegas, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Wynn Las Vegas, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at

- 7 -

Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Las Vegas, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e. Upon information and belief, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h. Upon information and belief, Defendant Wynn Las Vegas, LLC, requires the hotels in its portfolio to comply with Wynn Las Vegas, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///

///

///

///

- 8 -

17.    Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas Holdings, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Wynn Las Vegas Holdings, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b.  As a hotel operator, Defendant Wynn Las Vegas Holdings, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Las Vegas Holdings, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Wynn Las Vegas Holdings, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants are single and joint

- 9 -

employers with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Las Vegas Holdings, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Las Vegas Holdings, LLC, requires the hotels in its portfolio to comply with Wynn Las Vegas Holdings, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

- 10 -

1    18.    Upon information and belief, at all times relevant herein,

2    Defendant Wynn America Group, LLC, was and is a Nevada limited liability

3    company doing business in Clark County, Nevada.

4        a.    Upon information and belief, at all times relevant herein,

5            Defendant Wynn America Group, LLC, owned, managed,

6            maintained, inspected, secured, supervised, and/or controlled the

7            premises at Wynn Las Vegas resort hotel and casino located at

8            3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

9        b.    As a hotel operator, Defendant Wynn America Group, LLC,

10            controlled the training and policies for Wynn Las Vegas. Through

11            its relationship with the staff at Wynn Las Vegas and the

12            individuals who trafficked A.H. at Wynn Las Vegas, Defendant

13            Wynn America Group, LLC, knowingly benefited or received

14            something of value from its facilitation of or participation in a

15            venture which it knew or should have known had engaged in sex

16            trafficking.

17        c.    Defendant Wynn America Group, LLC, received a percentage of

18            the gross room revenue from the money generated by the

19            operations of Wynn Las Vegas, including a percentage of the

20            revenue generated for the rate charged on the hotel guest rooms in

21            which A.H. was sex trafficked.

22        d.    Upon information and belief, Defendant Wynn America Group,

23            LLC, and the Wynn Defendants are single and joint employers

24

- 11 -

CLAGGETT SYKES LAW FIRM

with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn America Group, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn America Group, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn America Group, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn America Group, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn America Group, LLC, requires the hotels in its portfolio to comply with Wynn America Group, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

19.     Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Finance, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a. Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Finance, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b. As a hotel operator, Defendant Wynn Resorts Finance, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Resorts Finance, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c. Defendant Wynn Resorts Finance, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d. Upon information and belief, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants are single and joint employers

- 13 -

with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts Finance, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Resorts Finance, LLC, requires the hotels in its portfolio to comply with Wynn Resorts Finance, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

- 14 -

20.   Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Holdings, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

     a.   Upon information and belief, at all times relevant herein, Defendant Wynn Resorts Holdings, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Wynn Las Vegas resort hotel and casino located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

     b.   As a hotel operator, Defendant Wynn Resorts Holdings, LLC, controlled the training and policies for Wynn Las Vegas. Through its relationship with the staff at Wynn Las Vegas and the individuals who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Resorts Holdings, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

     c.   Defendant Wynn Resorts Holdings, LLC, received a percentage of the gross room revenue from the money generated by the operations of Wynn Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

     d.   Upon information and belief, Defendant Wynn Resorts Holdings, LLC, and the Wynn Defendants are single and joint employers

with a high degree of interrelated, intermingled, and unified operations at Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Resorts Holdings, LLC, and the Wynn Defendants each share the common policies and practices complained of herein.

e. Upon information and belief, Defendant Wynn Resorts Holdings, LLC, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts Holdings, LLC, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts Holdings, LLC, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h. Upon information and belief, Defendant Wynn Resorts Holdings, LLC, requires the hotels in its portfolio to comply with Wynn Resorts Holdings, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

- 16 -

1    21.    Upon information and belief, at all times relevant herein,

2  Defendant Wynn Resorts, Limited, was and is a Nevada corporation doing

3  business in Clark County, Nevada.

4        a.  Upon information and belief, at all times relevant herein,

5            Defendant Wynn Resorts, Limited, owned, managed, maintained,

6            inspected, secured, supervised, and/or controlled the premises at

7            Wynn Las Vegas resort hotel and casino located at 3131 S. Las

8            Vegas Boulevard, Las Vegas, Nevada 89109.

9        b.  As a hotel operator, Defendant Wynn Resorts, Limited, controlled

10           the training and policies for Wynn Las Vegas. Through its

11           relationship with the staff at Wynn Las Vegas and the individuals

12           who trafficked A.H. at Wynn Las Vegas, Defendant Wynn Resorts,

13           Limited, knowingly benefited or received something of value from

14           its facilitation of or participation in a venture which it knew or

15           should have known had engaged in sex trafficking.

16       c.  Defendant Wynn Resorts, Limited, received a percentage of the

17           gross room revenue from the money generated by the operations of

18           Wynn Las Vegas, including a percentage of the revenue generated

19           for the rate charged on the hotel guest rooms in which A.H. was

20           sex trafficked.

21       d.  Upon information and belief, Defendant Wynn Resorts, Limited,

22           and the Wynn Defendants are single and joint employers with a

23           high degree of interrelated, intermingled, and unified operations at

24                                      - 17 -

Wynn Las Vegas where A.H. was sex trafficked. Defendant Wynn Resorts, Limited, and the Wynn Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Wynn Resorts, Limited, and the Wynn Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts, Limited, and the Wynn Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Wynn Resorts, Limited, and the Wynn Defendants are jointly and severally liable for any damages caused by employees at Wynn Las Vegas.

h.  Upon information and belief, Defendant Wynn Resorts, Limited, requires the hotels in its portfolio to comply with Wynn Resorts, Limited, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///
///
///
///

- 18 -

22.    Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.    Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

    b.    As a hotel operator, Defendant Aria Resort & Casino, LLC, controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant Aria Resort & Casino, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.    Defendant Aria Resort & Casino, LLC, received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.    Upon information and belief, Defendant Aria Resort & Casino, LLC, and the Aria Defendants are single and joint employers with

- 19 -

a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant Aria Resort & Casino, LLC, and the Aria Defendants each share the common policies and practices complained of herein.

e.   Upon information and belief, Defendant Aria Resort & Casino, LLC, and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.   Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino, LLC, and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g.   Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino, LLC, and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h.   Upon information and belief, Defendant Aria Resort & Casino, LLC, requires the hotels in its portfolio to comply with Aria Resort & Casino, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///

///

///

- 20 -

23.    Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino Holdings, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein, Defendant Aria Resort & Casino Holdings, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

    b.  As a hotel operator, Defendant Aria Resort & Casino Holdings, LLC, controlled the training and policies for Aria Resort & Casino. Through its relationship with the staff at Aria Resort & Casino and the individuals who trafficked A.H. at Aria Resort & Casino, Defendant Aria Resort & Casino Holdings, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.  Defendant Aria Resort & Casino Holdings, LLC, received a percentage of the gross room revenue from the money generated by the operations of Aria Resort & Casino, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.  Upon information and belief, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants are single and joint

- 21 -

employers with a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants each share the common policies and practices complained of herein.

e. Upon information and belief, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Aria Resort & Casino Holdings, LLC, and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h. Upon information and belief, Defendant Aria Resort & Casino Holdings, LLC, requires the hotels in its portfolio to comply with Aria Resort & Casino, LLC Holdings, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

24.   Upon information and belief, at all times relevant herein,

Defendant MGM Resorts International was and is a Delaware corporation doing

business in Clark County, Nevada.

    a.   Upon information and belief, at all times relevant herein,

       Defendant MGM Resorts International owned, managed,

       maintained, inspected, secured, supervised, and/or controlled the

       premises at Aria Resort & Casino resort hotel and casino located at

       3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

    b.   As a hotel operator, Defendant MGM Resorts International

       controlled the training and policies for Aria Resort & Casino.

       Through its relationship with the staff at Aria Resort & Casino and

       the individuals who trafficked A.H. at Aria Resort & Casino,

       Defendant MGM Resorts International knowingly benefited or

       received something of value from its facilitation of or participation

       in a venture which it knew or should have known had engaged in

       sex trafficking.

    c.   Defendant MGM Resorts International received a percentage of the

       gross room revenue from the money generated by the operations of

       Aria Resort & Casino, including a percentage of the revenue

       generated for the rate charged on the hotel guest rooms in which

       A.H. was sex trafficked.

    d.   Upon information and belief, Defendant MGM Resorts

       International and the Aria Defendants are single and joint

- 23 -

employers with a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant MGM Resorts International and the Aria Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant MGM Resorts International and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant MGM Resorts International and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant MGM Resorts International and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h.  Upon information and belief, Defendant MGM Resorts International requires the hotels in its portfolio to comply with MGM Resorts International brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

25. Upon information and belief, at all times relevant herein, Defendant Venetian Casino Resort, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

   a. Upon information and belief, at all times relevant herein, Defendant Venetian Casino Resort, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at The Venetian Las Vegas resort hotel and casino located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

   b. As a hotel operator, Defendant Venetian Casino Resort, LLC, controlled the training and policies for The Venetian Las Vegas. Through its relationship with the staff at The Venetian Las Vegas and the individuals who trafficked A.H. at The Venetian Las Vegas, Defendant Venetian Casino Resort, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

   c. Defendant Venetian Casino Resort, LLC, received a percentage of the gross room revenue from the money generated by the operations of The Venetian Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

   d. Upon information and belief, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants are single and joint employers

- 25 -

with a high degree of interrelated, intermingled, and unified operations at The Venetian Las Vegas where A.H. was sex trafficked. Defendant Venetian Casino Resort, LLC, and the Venetian Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Venetian Casino Resort, LLC, and the Venetian Defendants are jointly and severally liable for any damages caused by employees at The Venetian Las Vegas.

h.  Upon information and belief, Defendant Venetian Casino Resort, LLC, requires the hotels in its portfolio to comply with Venetian Las Vegas, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

26.    Upon information and belief, at all times relevant herein, Defendant Las Vegas Sands, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

    a.    Upon information and belief, at all times relevant herein, Defendant Las Vegas Sands, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at The Venetian Las Vegas resort hotel and casino located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

    b.    As a hotel operator, Defendant Las Vegas Sands, LLC, controlled the training and policies for The Venetian Las Vegas. Through its relationship with the staff at The Venetian Las Vegas and the individuals who trafficked A.H. at The Venetian Las Vegas, Defendant Las Vegas Sands, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c.    Defendant Las Vegas Sands, LLC, received a percentage of the gross room revenue from the money generated by the operations of The Venetian Las Vegas, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

    d.    Upon information and belief, Defendant Las Vegas Sands, LLC, and the Venetian Defendants are single and joint employers with a

- 27 -

high degree of interrelated, intermingled, and unified operations at The Venetian Las Vegas where A.H. was sex trafficked. Defendant Las Vegas Sands, LLC, and the Venetian Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant Las Vegas Sands, LLC, and the Venetian Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Las Vegas Sands, LLC, and the Venetian Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Las Vegas Sands, LLC, and the Venetian Defendants are jointly and severally liable for any damages caused by employees at The Venetian Las Vegas.

h.  Upon information and belief, Defendant Las Vegas Sands, LLC, requires the hotels in its portfolio to comply with Venetian Las Vegas, LLC, brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

///
///
///

27.    Upon information and belief, at all times relevant herein, Defendant New York-New York Hotel & Casino, LLC, was and is a Nevada limited liability company doing business in Clark County, Nevada.

 a.  Upon information and belief, at all times relevant herein, Defendant New York-New York Hotel & Casino, LLC, owned, managed, maintained, inspected, secured, supervised, and/or controlled the premises at New York-New York Hotel and Casino ("New York-New York"), located at 3790 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

 b.  As a hotel operator, Defendant New York-New York Hotel & Casino, LLC, controlled the training and policies for New York-New York. Through its relationship with the staff at New York-New York and the individuals who trafficked A.H. at New York-New York, Defendant New York-New York Hotel & Casino, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

 c.  Defendant New York-New York Hotel & Casino, LLC, received a percentage of the gross room revenue from the money generated by the operations of New York-New York, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which A.H. was sex trafficked.

- 29 -

d.  Upon information and belief, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at New York-New York where A.H. was sex trafficked. Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants each share the common policies and practices complained of herein.

e.  Upon information and belief, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants are separately and jointly responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or joint employer, Defendant New York-New York Hotel & Casino, LLC, and the New York-New York Defendants are jointly and severally liable for any damages caused by employees at New York-New York.

h.  Upon information and belief, Defendant New York-New York Hotel & Casino, LLC, requires the hotels in its portfolio to comply with New York-New York Hotel & Casino, LLC, brand standards,

- 30 -

1    policies, practices, procedures, training protocols, and all local,

2    state, and federal laws.

3    28.    Upon information and belief, at all times relevant herein,

4  Defendant MGM Resorts International was and is a Delaware corporation doing

5  business in Clark County, Nevada.

6    a.  Upon information and belief, at all times relevant herein,

7    Defendant MGM Resorts International owned, managed,

8    maintained, inspected, secured, supervised, and/or controlled the

9    premises at New York New York Hotel and Casino ("New York-

10   New York"), located at 3790 S. Las Vegas Boulevard, Las Vegas,

11   Nevada 89109.

12   b.  As a hotel operator, Defendant MGM Resorts International

13   controlled the training and policies for New York-New York.

14   Through its relationship with the staff at New York-New York and

15   the individuals who trafficked A.H. at New York-New York,

16   Defendant MGM Resorts International knowingly benefited or

17   received something of value from its facilitation of or participation

18   in a venture which it knew or should have known had engaged in

19   sex trafficking.

20   c.  Defendant MGM Resorts International received a percentage of the

21   gross room revenue from the money generated by the operations of

22   New York-New York, including a percentage of the revenue

23

24

generated for the rate charged on the hotel guest rooms in which
A.H. was sex trafficked.

d.  Upon information and belief, Defendant MGM Resorts
International and the New York-New York Defendants are single
and joint employers with a high degree of interrelated,
intermingled, and unified operations at New York-New York where
A.H. was sex trafficked. Defendant MGM Resorts International
and the New York-New York Defendants each share the common
policies and practices complained of herein.

e.  Upon information and belief, Defendant MGM Resorts
International and the New York-New York Defendants jointly
employed or ratified the employment of individuals through
horizontal joint employment and/or vertical joint employment.

f.  Upon information and belief, as an integrated enterprise and/or
joint employer, Defendant MGM Resorts International and the
New York-New York Defendants are separately and jointly
responsible for compliance with all applicable laws.

g.  Upon information and belief, as an integrated enterprise and/or
joint employer, Defendant MGM Resorts International and the
New York-New York Defendants are jointly and severally liable for
any damages caused by employees at New York-New York.

h.  Upon information and belief, Defendant MGM Resorts
International requires the hotels in its portfolio to comply with

- 32 -

MGM Resorts International brand standards, policies, practices,
procedures, training protocols, and all local, state, and federal
laws.

29.    Upon information and belief, at all times relevant herein,
Defendant CityCenter Land, LLC, was and is a Nevada limited liability
company doing business in Clark County, Nevada.

    a.  Upon information and belief, at all times relevant herein,
Defendant CityCenter Land, LLC, owned, managed, maintained,
inspected, secured, supervised, and/or controlled the premises at
Aria Resort & Casino resort hotel and casino located at 3730 S. Las
Vegas Boulevard, Las Vegas, Nevada 89158.

    b.  As a hotel operator, Defendant CityCenter Land, LLC, controlled
the training and policies for Aria Resort & Casino. Through its
relationship with the staff at Aria Resort & Casino and the
individuals who trafficked A.H. at Aria Resort & Casino,
Defendant CityCenter Land, LLC, knowingly benefited or received
something of value from its facilitation of or participation in a
venture which it knew or should have known had engaged in sex
trafficking.

    c.  Defendant CityCenter Land, LLC, received a percentage of the
gross room revenue from the money generated by the operations of
Aria Resort & Casino, including a percentage of the revenue

- 33 -

1          generated for the rate charged on the hotel guest rooms in which

2          A.H. was sex trafficked.

3     d.  Upon information and belief, Defendant CityCenter Land, LLC,

4          and the Aria Defendants are single and joint employers with a high

5          degree of interrelated, intermingled, and unified operations at Aria

6          Resort & Casino where A.H. was sex trafficked. Defendant

7          CityCenter Land, LLC, and the Aria Defendants each share the

8          common policies and practices complained of herein.

9     e.  Upon information and belief, Defendant CityCenter Land, LLC,

10         and the Aria Defendants jointly employed or ratified the

11         employment of individuals through horizontal joint employment

12         and/or vertical joint employment.

13     f.  Upon information and belief, as an integrated enterprise and/or

14         joint employer, Defendant CityCenter Land, LLC, and the Aria

15         Defendants are separately and jointly responsible for compliance

16         with all applicable laws.

17     g.  Upon information and belief, as an integrated enterprise and/or

18         joint employer, Defendant CityCenter Land, LLC, and the Aria

19         Defendants are jointly and severally liable for any damages caused

20         by employees at Aria Resort & Casino.

21     h.  Upon information and belief, Defendant CityCenter Land, LLC,

22         requires the hotels in its portfolio to comply with CityCenter Land,

23

24

1        LLC, brand standards, policies, practices, procedures, training

2        protocols, and all local, state, and federal laws.

3     30.   Upon information and belief, at all times relevant herein,

4  Defendant Ace A Propco LLC was and is a Delaware limited liability company

5  doing business in Clark County, Nevada.

6       a.  Upon information and belief, at all times relevant herein,

7          Defendant Ace A Propco LLC owned, managed, maintained,

8          inspected, secured, supervised, and/or controlled the premises at

9          Aria Resort & Casino resort hotel and casino located at 3730 S. Las

10         Vegas Boulevard, Las Vegas, Nevada 89158.

11      b.  As a hotel operator, Defendant Ace A Propco LLC controlled the

12         training and policies for Aria Resort & Casino. Through its

13         relationship with the staff at Aria Resort & Casino and the

14         individuals who trafficked A.H. at Aria Resort & Casino,

15         Defendant Ace A Propco LLC knowingly benefited or received

16         something of value from its facilitation of or participation in a

17         venture which it knew or should have known had engaged in sex

18         trafficking.

19      c.  Defendant Ace A Propco LLC received a percentage of the gross

20         room revenue from the money generated by the operations of Aria

21         Resort & Casino, including a percentage of the revenue generated

22         for the rate charged on the hotel guest rooms in which A.H. was

23         sex trafficked.

24

d. Upon information and belief, Defendant Ace A Propco LLC and the Aria Defendants are single and joint employers with a high degree of interrelated, intermingled, and unified operations at Aria Resort & Casino where A.H. was sex trafficked. Defendant Ace A Propco LLC and the Aria Defendants each share the common policies and practices complained of herein.

e. Upon information and belief, Defendant Ace A Propco LLC and the Aria Defendants jointly employed or ratified the employment of individuals through horizontal joint employment and/or vertical joint employment.

f. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Ace A Propco LLC and the Aria Defendants are separately and jointly responsible for compliance with all applicable laws.

g. Upon information and belief, as an integrated enterprise and/or joint employer, Defendant Ace A Propco LLC and the Aria Defendants are jointly and severally liable for any damages caused by employees at Aria Resort & Casino.

h. Upon information and belief, Defendant Ace A Propco LLC requires the hotels in its portfolio to comply with Ace A Propco LLC brand standards, policies, practices, procedures, training protocols, and all local, state, and federal laws.

31.     Plaintiff does not know the true names of Defendants Does I through X and sues said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe is legally responsible in some manner for the events alleged in this Complaint and actually, proximately, and/or legally caused injury and damages to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

32.     Plaintiff does not know the true names of Defendants Roe Business Entities XI through XX and sues said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiff. Plaintiff will seek leave of the Court

- 37 -

1   to amend this Complaint to substitute the true and correct names for these

2   fictitious names upon learning that information.

3       33.    Upon information and belief, at all times relevant herein,

4   Defendants, and each of them, were the apparent ostensible principals,

5   principals, apparent ostensible agents, agents, apparent ostensible servants,

6   servants, apparent ostensible employees, employees, apparent ostensible

7   assistants, assistants, apparent ostensible consultants, and consultants of their

8   Co-Defendants and were acting as such within the course, scope, and authority

9   of said agency and employment, and that each of the Defendants, as aforesaid,

10  when acting as a principal, was negligent, including, but not limited to, in the

11  hiring, training, retention, and supervision of each and every other Defendant

12  as an agent, servant, employee, assistant, and consultant.

13      34.    Upon information and belief, every act or omission of the

14  Defendants and their apparent ostensible principals, principals, apparent

15  ostensible agents, agents, apparent ostensible servants, servants, apparent

16  ostensible employees, employees, apparent ostensible assistants, assistants,

17  apparent ostensible consultants, and consultants of their Co-Defendants,

18  whether or not within the scope of their agency, was ratified by the other

19  remaining Defendants.

20                  **SEX TRAFFICKING UNDER FEDERAL LAW**

21      35.    Plaintiff repeats and realleges the allegations as contained in the

22  preceding paragraphs herein and incorporates the same herein by reference.

23

24

36.     The requirement for liability under TVPRA § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value"; (2) from participating in a venture"; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

37.     'Sex trafficking' is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

38.     The term 'severe forms of trafficking in persons' includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

39.     Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion, or "cause [a] person to engage in a commercial sex act" are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

40.     18 U.S.C. § 1595 provides for a beneficiary liability claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person

- 39 -

1  knew or should have known has engaged in an act in violation" of the TVPRA.

2  *See* 18 U.S.C. § 1595(a).

3  ### SEX TRAFFICKING UNDER NEVADA STATE LAW

4  41.    Plaintiff repeats and realleges the allegations as contained in the

5  preceding paragraphs herein and incorporates the same herein by reference.

6  42.    Plaintiff also brings this action pursuant to Nevada's anti-human

7  trafficking law, found at NRS 41.1399, which provides that "[a]ny person who is

8  a victim of human trafficking may bring a civil action against any person who

9  caused, was responsible for or profited from the human trafficking." NRS

10  41.1399(1).

11  43.    For purposes of the statute, the term "victim of human trafficking"

12  means "a person against whom a violation of any provision of NRS 200.463 to

13  200.468, inclusive, 201.300 or 201.320 or 201.395, or 18 U.S.C. § 1589, 1590 or

14  1591 has been committed." NRS 41.1399(10)(a).

15  ### GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

16  A.    **A.H.'s Story**

17  44.    Plaintiff repeats and realleges the allegations as contained in the

18  preceding paragraphs herein and incorporates the same herein by reference.

19  45.    In the fall of 2013, A.H. moved to Las Vegas, Nevada, to live with

20  her father.

21  46.    On January 26, 2014, A.H. turned 18 years old and soon thereafter

22  decided she wanted to move to Ohio to live with a friend.

23

24

47.   In early March 2014, A.H. purchased a bus ticket to Ohio and was set to leave on March 10, 2014, to begin the next chapter in her life.

48.   Unfortunately, A.H. never made it on that bus.

49.   Instead, on March 9, 2014, A.H. was sitting at a bus stop near the intersection of Tropicana Avenue and Paradise Road in Las Vegas, Nevada, when a car pulled up next to her. Inside were two people, one who would become her trafficker and another who would be identified as a recruiter and enforcer.

50.   The trafficker thereafter coerced and forced A.H. into prostitution.

51.   On the night of March 10, 2024, A.H. was trafficked for the first time.

52.   On that occasion, A.H.'s trafficker drove A.H. and the recruiter to Aria Resort & Casino and dropped off.

53.   Inside Aria Resort & Casino, A.H. and her recruiter encountered two "Johns" who paid them for sex inside a hotel room rented at the Aria Resort & Casino.

54.   Afterwards, A.H.'s trafficker picked them up outside Aria Resort & Casino and demanded that they give him all of the money they had been paid.

55.   A.H.'s trafficker demanded strict compliance on how to dress, what to charge, what to wear, and when and how all money should be turned over to him.

56.   In order to ensure compliance, A.H. was required to text her trafficker once she got to a "John's" room with the room number and agreed upon price. Then, A.H. was told to text again as soon as the "John" had paid.

- 41 -

57.     Initially, A.H. was trafficked approximately 2-3 times per week. Eventually, this increased to approximately every other day.

58.     On each occasion, the recruiter acted as an enforcer and remained near A.H. at all times.

59.     A.H. was trafficked most consistently at the Aria Resort & Casino, Wynn Las Vegas, The Venetian Las Vegas, and New York-New York.

60.     Each time A.H. visited Aria Resort & Casino, Wynn Las Vegas, The Venetian Las Vegas, and New York-New York, A.H. and the enforcer entered through the front entrances, often in full view of security cameras, while her trafficker stalked her from nearby or remained in the car.

61.     Aria Resort & Casino, Wynn Las Vegas, The Venetian Las Vegas, and New York-New York staff, employees, and security routinely saw A.H. and her recruiter/enforcer arrive without luggage or bags, loiter in common areas such as bars, interact with guests, depart with guests for their room, and then leave together at the end of the night.

62.     As is typical of sex traffickers, A.H.'s trafficker became increasingly violent and controlling and coercive.

63.     Specifically, in late March or early April, after being trafficked at The Venetian Las Vegas, A.H.'s trafficker accused her of sending a text message to him at the incorrect time, i.e., prior to having the "John's" cash in hand. The trafficker took A.H. into the bathroom at his house, bent her over the bathtub, and savagely beat her with a leather belt.

64.     The violence against A.H. continued with increasing frequency.

65.    Throughout April 2014, A.H.'s trafficker beat her about once per week, mostly with his fists and belt. The violent attacks on A.H. continued to escalate to about once per day. By June 2014, A.H.'s trafficker was beating her approximately 3-4 times per day.

66.    During this time, A.H. continued to be trafficked, bruised, and beaten at Defendants' properties.

67.    In or around March 2014 – April 2014, A.H. was again trafficked at The Venetian Las Vegas. On that occasion, a "John" physically and sexually assaulted A.H. inside one of The Venetian Las Vegas hotel rooms.

68.    A.H. screamed during the assault and, afterwards, ran from the room and went downstairs where she waited inside a restroom hunched over in pain.

69.    Although A.H. fled from the assault in plain view of The Venetian Las Vegas' employees, no action was taken and A.H. continued to be trafficked at The Venetian Las Vegas.

70.    Over the course of several beatings in late April 2014 – early May 2014, A.H.'s trafficker fractured A.H.'s jaw, causing her face to bruise and puff up.

71.    Thereafter, during that same time period, A.H. was trafficked at Wynn Las Vegas.

72.    At Wynn Las Vegas, A.H. had a fractured jaw, showed clear signs of physical abuse, and was in a malnourished state.

73.    Also, A.H.'s enforcer remained near A.H. at all times.



74.    A.H. made contact with a Wynn Las Vegas cocktail waitress, who notified Wynn Las Vegas security officers.

75.    Rather than intervene or otherwise attempt to assist A.H., the Wynn Las Vegas security officers simply followed behind A.H. and her enforcer until they exited the Wynn Las Vegas property.

76.    Following this incident, A.H. continued to enter and be trafficked at Wynn Las Vegas.

77.    A.H.'s trafficker began beating A.H. with a sock full of oranges causing severe injury and bruising.

78.    A.H. was also forced to stand in stress positions for long periods of time and would be assaulted if she moved.

79.    On or about May 10, 2014, A.H. pleaded with her trafficker to let her go home to her family. Her trafficker continued to refuse to release her and instead verbally and physically abused A.H., punching her, kicking her, and striking her with a metal chair.

80.    A.H. was threatened by her trafficker and his enforcer that they would kill her family if she attempted to leave or went to the police.

81.    Sometime after May 15, 2014, A.H. was visibly "out of it" while her and her enforcer were walking around New York-New York. While there, a New York-New York security guard approached A.H., asked if she was ok, and offered her water. A.H. did not ask for help because her enforcer was right beside her and on the phone with their trafficker, who was close by.

- 44 -

82.     The New York-New York security guard did not intervene, assist, or take steps to protect A.H., even though A.H. exhibited multiple signs of being trafficked.

83.     In mid- to late-May 2014, the beatings escalated in frequency and intensity all while A.H. was still being trafficked openly at Defendants' properties.

84.     On several occasions, A.H.'s trafficker assaulted A.H. with a whip made out of multiple metal hangers. During these whippings, A.H. was not allowed to move or else the beating would last longer.

85.     On another occasion, A.H.'s trafficker beat A.H. with a metal pole. During the beating, A.H.'s trafficker struck A.H.'s left middle finger, breaking it.

86.     On another occasion, A.H.'s trafficker burned A.H.'s foot with a hot iron. A.H.'s burn went untreated, and her foot became infected. As a result, A.H. was forced to wear boots when she left the house to hide the smell of her infected skin.

87.     On another occasion, A.H.'s trafficker used a kitchen knife to slice A.H.'s tongue in multiple spots and then forced her to drink hot sauce.

88.     On another occasion, A.H.'s trafficker forced A.H. to play Russian Roulette with a loaded firearm.

89.     On another occasion, A.H.'s trafficker pistol whipped A.H. in the back of the head, fracturing her skull and causing her to bleed all over the house.

90.    On another occasion, A.H.'s trafficker tied A.H.'s wrists and feet together with duct tape, placed duct tape over her mouth, and then repeatedly put plastic bags over her head and suffocated her until she passed out. Then A.H.'s trafficker dragged A.H. to the bathroom where he covered her mouth with a shirt and poured water over her face to simulate drowning.

91.    On another occasion, A.H.'s trafficker filled the bathtub with ice and forced A.H. to lay in it for hours. Then, A.H.'s trafficker forced A.H. to take a hot shower, at one point turning the water all the way up as hot as it would go.

92.    During these assaults and many others, A.H.'s trafficker would turn on music and crank the volume to drown out A.H.'s screams.

93.    By late May 2014, A.H.'s trafficker was only feeding A.H. approximately twice per week. A.H. was severely malnourished, had lost a significant amount of weight, and was constantly feeling faint, tired, weak, and in pain.

94.    On or about May 28, 2014, A.H., having been continuously trafficked at the Aria Resort & Casino, was taken there again. At the time, A.H. was severely malnourished, displayed signs of physical abuse, and did not look anything like her ID photo.

95.    At Aria Resort & Casino, A.H. and the enforcer were stopped by an Aria security officer as part of an undercover sting.

96.    A.H. and the enforcer were taken into a back room together, photographed, and questioned.

- 46 -

97.    While the Aria Resort & Casino security officer questioned A.H. and the enforcer, the trafficker repeatedly called and texted the enforcer's phone asking for updates. The Aria Resort & Casino security officer made a joke about the ringing phone and told her she could answer it.

98.    Aria Resort & Casino's security officer did not call the police or offer any assistance to A.H. Instead, he told A.H. and her enforcer that they were being trespassed from the property.

99.    The Aria Resort & Casino security officer then directed them to an exit–delivering A.H. straight to her trafficker who was waiting to pick them up.

100.    Following the Aria incident, A.H. was again beaten by her trafficker with the metal whip, resulting in deep wounds to A.H.'s rear.

101.    Within days, A.H.'s physical condition deteriorated, and her wounds became infected.

102.    In early June 2014, A.H.'s trafficker began forcing A.H. to sleep in the garage because he said her infected wounds smelled. A.H. was not allowed to use the shower inside the house, and instead was taken out in the backyard and hosed down.

103.    In mid-June 2014, A.H.'s trafficker took a kitchen knife and used it to cut off A.H.'s hair. While he slashed at A.H.'s hair, he also cut off chunks of skin from her scalp.

104.    On or about June 26, 2014, A.H.'s trafficker told A.H. that due to her deteriorating condition, he was giving her to another pimp.

105.   A.H.'s trafficker drove A.H. to the other pimp's house where she remained for approximately 4 days.

106.   After 4 days, the other pimp called A.H.'s trafficker to come and pick up A.H. and take her to the hospital for emergency care.

107.   A.H.'s trafficker dropped her off near a Wendy's across the street from University Medical Center.

108.   A.H. struggled across the busy thoroughfare to UMC where she received lifesaving care.

109.   As a result of being sex trafficked, kidnapped, beaten, assaulted, and tortured, A.H. suffered severe injuries including, but not limited to: (1) bruising; (2) multiple acute and subacute rib fractures; (3) fractured sternum; (4) gangrene in her left middle finger; (5) grade 3 liver laceration; (6) grade 4 spleen laceration; (7) grade 1 kidney laceration; (8) lumbar vertebra transverse fractures; (9) occipital fracture; and (10) left mandible fracture.

110.   The gangrene was so bad in A.H.'s left middle finger that the finger had to be amputated.

111.   Additionally, the wounds on A.H.'s rear had turned necrotic.

112.   In all, A.H. was forced to undergo 12 different medical procedures as a result of the abuse she suffered.

**B.   The Hospitality Industry's Participation in the Sex Trafficking Industry**

113.   Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

114.    Human trafficking is the world's fastest growing crime. *See* Ewelina Ochab, *The World's Fastest Growing Crime*, FORBES, July 29, 2017, at https://www.forbes.com/sites/ewelinaochab/2017/07/29/the-worlds-fastest-growing-crime/?sh=1a0fe94b3aae (last visited March 3, 2024). While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone generates an estimated $99 billion each year, making it the second largest illicit crime industry behind only the illegal drug industry. *See* International Labor Organization, *Profits and Poverty: The Economics of Forced Labor* (2014), at https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf (last visited March 3, 2024).

115.    Sex traffickers, or 'pimps,' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

116.    The hospitality industry plays a crucial role in the sex trade. The trope of the "no-tell motel" is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

117.    According to National Human Trafficking Hotline statistics, hotels are one of the top-reported venues where sex trafficking acts occur. *See* National Human Trafficking Hotline, *National Human Trafficking Hotline Data Report* (2021), at https://humantraffickinghotline.org/sites/default/files/2023-

- 49 -

1    01/National%20Report%20For%202021.docx%20%283%29.pdf (last visited

2    March 3, 2024).

3        118.    The problem is industry wide. In the United States, as much as

4    63% of all trafficking incidents happen in hotels ranging from luxury to

5    economy. *See* Michele Sarkisian, *Adopting the Code: Human Trafficking and the*

6    *Hospitality Industry*, CORNELL HOSPITALITY REPORT, Vol. 15 (2015), at 6.

7        119.    Due to the overall complacency of the hospitality industry on

8    addressing the issue, hotels are the venue of choice for sex trafficking. *See*

9    Polaris Project, *On-Ramps, Intersections, and Exit Routes: A Roadmap for*

10    *Systems and Industries to Prevent and Disrupt Human Trafficking – Hotels &*

11    *Motels* (2018), at https://polarisproject.org/wp-content/uploads/2018/08/A-

12    Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-

13    Trafficking-Hotels-and-Motels.pdf (last visited March 3, 2024) (explaining that

14    75% of trafficking victims "reported coming into contact with hotels at some

15    point during their trafficking situation"). Traffickers and buyers capitalize on

16    the hotel industry's general refusal to adopt and enforce companywide anti-

17    trafficking policies from the corporate to the property level, train staff on what

18    to look for and how to respond, and/or establish safe and secure reporting

19    mechanisms for those at the point of contact.

20        120.    Every day, thousands of hotel employees witness manifestations of

21    sex trafficking and commercial exploitation. Thus, the hospitality industry has

22    the greatest reach to prevent, identify, and thwart sexual exploitation where it

23    is most likely to occur.

24

121. Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, it ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs of sex trafficking. *See Human Trafficking Response Guide for the Hospitality Industry,* BLUE CAMPAIGN, https://www.dhs.gov/sites/default/files/2022-10/Hospitality%20Toolkit%20508c%2009_29_2022.pdf (last visited March 4, 2024).

122. From check-in to check-out there are a number of indicators that traffickers and their victims exhibit while at a hotel. *See id.* With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking and extensive injuries to victims under their watch. Most victims of sex trafficking don't report it, so it is especially important to keep an eye out for signs of human trafficking.

123. Obvious signs of sex trafficking at a hotel may include: (1) appearing to be deprived of food, water, sleep, basic hygiene, or other necessities; (2) acting fearful, anxious, depressed, submissive, tense, nervous, or paranoid; (3) bruises or other signs of physical trauma; (4) deferring to another to speak for them; (5) appearing to be coached on what to say; (6) appearing to travel with few or no personal items, such as luggage; (7) appearing to have no

- 51 -

1    control over their money and/or ID;  (8) loitering or soliciting patrons or staff,

2    and (9) when inside a casino, avoiding the center of the casino and walking

3    around the edges. *Id.*; Las Vegas Metropolitan Police Department Vice & Sex

4    Trafficking Investigations Section & Arizona State University Office of Sex

5    Trafficking Intervention Research, *2014 Las Vegas Sex Trafficking Case Study,*

6    ASU SCHOOL OF SOCIAL WORK, https://www.amber-ic.org/wp-

7    content/uploads/2017/02/2014-Las-Vegas-Sex-Trafficking-Case-Study.pdf (last

8    visited on March 8, 2024).

9        124.    Hotel staff who are properly trained regarding the signs of sex

10   trafficking are more aware of sex trafficking when it occurs and are more

11   willing to report it than hotel staff who have not been trained. *See* Giavanna L.

12   C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and*

13   *Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL MANAGEMENT (2017), at

14   https://ecommons.cornell.edu/server/api/core/bitstreams/8aa2e886-f105-4927-

15   a6aa-899c35f39ab4/content. Thus, hospitality companies are obligated to adopt

16   policies and procedures related to sex trafficking and to enforce these policies

17   and procedures as brand standards through to the property level.

18       125.    Hospitality companies can and should mandate that all staff

19   working at all hotel properties across their brand complete sex trafficking

20   training. *See* Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal*

21   *and Civil Liability for Hotels and their Employees,* THE INSTITUTE TO ADDRESS

22   CRIMINAL SEXUAL EXPLOITATION, VILLANOVA UNIVERSITY SCHOOL OF LAW (2015),

23   at https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper.pdf.

24

- 52 -

126.   Yet, despite efforts by governmental and non-governmental organizations to combat human trafficking, the hospitality industry as a whole continues to lag behind in its efforts to prevent human trafficking.

127.   The complicity of the hospitality industry is essential to the perpetuation of human trafficking, encouraging traffickers to use untrained hotels as a place to exploit their victims. Sex traffickers want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with hotels where they know it is unlikely that they will be disturbed.

128.   Due to the hospitality industry's failure to embrace anti-trafficking policies and practices, vulnerable persons are trafficked for sex in hotels throughout the United States and here in Las Vegas, Nevada.

129.   Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly fail to execute their own policies, practices, and procedures. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

C.    The Defendants' Actual and/or Constructive Knowledge of the Sex Trafficking of A.H.

130.   Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

131.   Defendants own and operate nationally known resort hotels on the Las Vegas Strip and have been on notice of repeated incidents of sex trafficking

- 53 -

1    occurring at their hotels, yet the Defendants failed to take adequate steps to

2    train staff to prevent and report sex trafficking at their locations.

3        132.   Longstanding jurisprudence holds that failure to implement

4    policies sufficient to combat a known problem in one's operations can rise to the

5    level of willful blindness, conscious disregard, and/or negligence.

6                    **(i)    Facts Specific to Wynn Defendants**

7        133.   Plaintiff repeats and realleges the allegations as contained in the

8    preceding paragraphs herein and incorporates the same herein by reference.

9        134.   Defendants Wynn Las Vegas, LLC, Wynn Las Vegas Holdings,

10   LLC, Wynn America Group, LLC, Wynn Resorts Finance, LLC, Wynn Resorts

11   Holdings, LLC, and Wynn Resorts Limited:

12            a.  Wynn Defendants owned, managed, maintained, inspected,

13                secured, supervised, and/or controlled the brand and policies for

14                booking, rates, and operations at Wynn Las Vegas resort hotel

15                and casino located at 3131 S. Las Vegas Boulevard, Las Vegas,

16                Nevada 89109, where A.H. was consistently commercially sex

17                trafficked from March 2014 through June 2014. A.H. was

18                transported to this location and forced to remain at this location

19                while commercial sex acts with her were sold and purchased.

20                Wynn Defendants owned and operated Wynn Las Vegas while

21                buyers took A.H. to rooms that were rented out for the purpose

22                of trafficking A.H.

23

24

- 54 -

b. Wynn Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

c. Wynn Defendants failed to implement and enforce any of their own policies or protect A.H. from being commercially sex trafficked multiple times at Wynn Las Vegas.

d. Wynn Defendants had actual knowledge of sex trafficking occurring at Wynn Las Vegas because Wynn Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

e. Wynn Defendants had constructive knowledge of sex trafficking occurring at Wynn Las Vegas because Wynn Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

f. Wynn Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including A.H., for sex at Wynn Las Vegas. Wynn Defendants facilitated the trafficking through their practices, policies, and procedures.

Wynn Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that Wynn Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g. Wynn Defendants knew or should have known that Wynn Las Vegas where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when A.H. was trafficked.

h. Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, Wynn Defendants have repeatedly failed to stop these actions.

i. Upon information and belief, Wynn Defendants exercised control over Wynn Las Vegas by:

   i. Distributing information to assist employees in identifying human trafficking;

   ii. Providing a process for escalating human trafficking concerns within the organization;

   iii. Requiring employees to attend training related to human trafficking;

   iv. Providing new hire orientation on human rights and corporate responsibility;

- 56 -

v.  Providing training and education to Wynn Las Vegas employees through webinars, seminars, conferences, trainings, and online portals;

vi.  Developing and holding ongoing training sessions on human trafficking; and/or

vii.  Providing checklists, escalation protocols and information to Wynn Las Vegas staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  Defendants Wynn Las Vegas Holdings, LLC, Wynn America Group, LLC, Wynn Resorts Finance, LLC, Wynn Resorts Holdings, LLC, and Wynn Resorts Limited were in an agency relationship with Defendant Wynn Las Vegas, LLC, and the Wynn Las Vegas property. Upon information and belief, this agency relationship was created through Wynn Defendants' exercise of an ongoing and systemic right of control over Wynn Las Vegas by Wynn Defendants' operations, including the means and methods of how Wynn Las Vegas conducted daily business through one or more of the following actions:

i.  Requiring Wynn Las Vegas to use Wynn Defendants' customer rewards program;

ii.  Sharing profits;

iii.  Hosting online bookings on Wynn Defendants' developed, owned, and operated domain;

- 57 -

iv.  Requiring Wynn Las Vegas to use Wynn Defendants'
customer resource management program;

v.  Regulating internet access for guests;

vi.  Setting employee wages;

vii.  Making decisions about employment and budgets, including
for security and management;

viii.  Advertising for management and local positions;

ix.  Standardized training methods for Wynn Las Vegas
employees;

x.  Standardized or strict rules of operation;

xi.  Oversight in hiring and/or terminating employees and
managers;

xii.  Building and maintaining the Wynn Las Vegas property;

xiii.  Regular inspection of the Wynn Las Vegas property;

xiv.  Fixing prices; and/or

xv.  Creating advertising campaigns and unrealistic expectations
of safety for guests.

k.  Apparent agency also existed between Defendants Wynn Las
Vegas Holdings, LLC, Wynn America Group, LLC, Wynn
Resources Finance, LLC, Wynn Resorts Holdings, LLC, and Wynn
Resorts Limited and Defendant Wynn Las Vegas, LLC, and the
Wynn Las Vegas property.

l. Wynn Defendants held out Defendant Wynn Las Vegas, LLC, and the Wynn Las Vegas property to the public as possessing authority to act on their behalf.

m. Given Wynn Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the Wynn Las Vegas, Wynn Defendants breached their duties in the following ways:

   i. Inadequate distribution of information to assist employees in identifying human trafficking;

   ii. Failure to provide a process for escalating human trafficking concerns within the organization;

   iii. Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

   iv. Failure to provide new hire orientation on human rights and corporate responsibility;

   v. Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

   vi. Failure to develop and hold or require ongoing training sessions on human trafficking;

   vii. Failure to provide checklists, escalation protocols, and information to Wynn Las Vegas employees and staff or track

- 59 -

performance indicators and key metrics on human

trafficking prevention; and/or

    viii.  Failure to hold Wynn Las Vegas employees accountable to

stop and prevent human trafficking at the hotel.

    n.  For years, Wynn Defendants have demonstrated actual and/or

constructive knowledge of the rampant culture of sex trafficking

which tragically occurs at Wynn Las Vegas and at other Wynn

properties throughout the United States. This same entrenched,

pervasive actual and/or constructive knowledge of sex

trafficking facilitated the sex trafficking of A.H. at Wynn Las

Vegas that forms the basis of this complaint.

135.    From March 2014 to June 2014, A.H. was consistently trafficked for sex by sex traffickers at Wynn Las Vegas located at 3131 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

136.    As detailed above, on each occasion that A.H. was trafficked at Wynn Las Vegas:

    a. A.H., accompanied by the enforcer, would enter through the front

entrance in full view of security cameras;

    b. A.H., and the accompanying enforcer, did not carry any luggage,

bags, or room cards or anything else that would indicate that they

were paying guests at the hotel;

    c. The enforcer would remain near A.H. at all times and not allow

A.H. out of her sight;

- 60 -

d. A.H. and the enforcer would loiter near common areas, such as reception, bars or lounges, and talk to random hotel guests;

e. A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

f. A.H. and the enforcer would return to the Wynn Las Vegas common areas before departing at the end of the night.

137. Wynn Las Vegas staff, employees, and security routinely interacted with A.H. and saw A.H. and her enforcer arrive without luggage or bags, loiter in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

138. Also, sometime in late April 2014 – early May 2014, A.H. was trafficked at Wynn Las Vegas and, in a desperate plea for help, made eye contact with a cocktail waitress, who notified Wynn Las Vegas security officers.

139. At the time, A.H. had a fractured jaw, showed clear signs of physical abuse, and was in a malnourished state.

140. However, rather than intervene or otherwise attempt to assist A.H., the Wynn Las Vegas security officers simply followed behind A.H. and the enforcer until they exited the Wynn Las Vegas property.

141. During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

142. A.H. would be sexually abused and raped by multiple buyers per day while trafficked at Wynn Las Vegas.

- 61 -

143.   A.H.'s traffickers would routinely receive thousands of dollars each day and the Wynn Defendants, through their hotel business venture, would share financial benefits from her abuse.

144.   On each occasion that A.H. was trafficked at Wynn Las Vegas, buyers were provided a harbor by Wynn Defendants to assault and sexually abuse A.H.

145.   The indicia of sex trafficking were open and apparent to the Wynn Defendants. Specifically, Wynn Defendants and their employees and/or agents should have recognized the following:

  a.  A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

  b.  A.H. displayed signs of physical abuse;

  c.  A.H. was forced to remain near the enforcer at all times;

  d.  A.H. and the enforcer  appeared to be traveling with few or no personal items, such as bags or luggage;

  e.  A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

  f.  A.H. the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

  g.  A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

h. A.H. and the enforcer left together at the end of every night and were met by the trafficker.

146. Wynn Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

147. Wynn Defendants thereby knowingly benefited from what they knew or should have known to be sex trafficking.

### (ii) Facts Specific to Aria Defendants

148. Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

149. Aria Resort & Casino, LLC, Aria Resort & Casino Holdings, LLC, MGM Resorts International, CityCenter Land, LLC, and Ace A Propco LLC:

a. Aria Defendants owned, managed, maintained, inspected, secured, supervised, and/or controlled the brand and policies for booking, rates, and operations at Aria Resort & Casino resort hotel and casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158, where A.H. was commercially sex trafficked on numerous occasions from March 2014 through June 2014. A.H. was transported to this location and forced to remain at this location while commercial sex acts with her were sold and purchased. Aria Defendants owned and operated Aria

Resort & Casino while buyers took A.H. to rooms that were

rented out for the purpose of trafficking A.H.

b. Aria Defendants shared financial benefits and profits gained

from renting out rooms where A.H. was trafficked.

c. Aria Defendants failed to implement and enforce any of their

own policies or protect A.H. from being commercially sex

trafficked and raped multiple times at Aria Resort & Casino.

d. Aria Defendants had actual knowledge of sex trafficking

occurring at Aria Resort & Casino because Aria Defendants

knew that sex trafficking and prostitution are associated with a

high risk of physical and sexual violence, substance abuse, and

other illegal dangerous conduct, and that pimps and buyers of

commercial sex acts often use force, fraud, and coercion to

induce commercial sex acts from victims.

e. Aria Defendants had constructive knowledge of sex trafficking

occurring at Aria Resort & Casino because Aria Defendants

knew that sex trafficking and prostitution are associated with a

high risk of physical and sexual violence, substance abuse, and

other illegal dangerous conduct, and that pimps and buyers of

commercial sex acts often use force, fraud, and coercion to

induce commercial sex acts from victims.

f. Aria Defendants allowed, authorized, permitted, induced, or

encouraged the trafficking of multiple individuals, including

- 64 -

A.H., for sex at Aria Resort & Casino. Aria Defendants facilitated the trafficking through their practices, policies, and procedures. Aria Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that Aria Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g. Aria Defendants knew or should have known that Aria Resort & Casino where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when A.H. was trafficked.

h. Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, Aria Defendants have repeatedly failed to stop these actions.

i. Upon information and belief, Aria Defendants exercised control over Aria Resort & Casino by:

   i. Distributing information to assist employees in identifying human trafficking;

   ii. Providing a process for escalating human trafficking concerns within the organization;

   iii. Requiring employees to attend training related to human trafficking;

- 65 -

iv.  Providing new hire orientation on human rights and
corporate responsibility;

v.  Providing training and education to Aria Resort & Casino
employees through webinars, seminars, conferences,
trainings, and online portals;

vi.  Developing and holding ongoing training sessions on human
trafficking; and/or

vii.  Providing checklists, escalation protocols and information to
Aria Resort & Casino staff or tracking performance
indicators and key metrics on human trafficking prevention.

j.  Defendants Aria Resort & Casino Holdings, LLC, MGM Resorts
International, CityCenter Land, LLC, and Ace A Propco LLC
were in an agency relationship with Defendant Aria Resort &
Casino, LLC, and the Aria Resort & Casino property. Upon
information and belief, this agency relationship was created
through Aria Defendants' exercise of an ongoing and systemic
right of control over Aria Resort & Casino, including the means
and methods of how Aria Resort & Casino conducted daily
business through one or more of the following:

i.  Requiring Aria Resort & Casino to use Aria Defendants'
customer rewards program;

ii.  Sharing profits;

iii. Hosting online bookings on Aria Defendants' developed, owned, and operated domain;

iv. Requiring Aria Resort & Casino to use Aria Defendants' customer resource management program;

v. Regulating internet access for guests;

vi. Setting employee wages;

vii. Making decisions about employment and budgets, including for security and management;

viii. Advertising for management and local positions;

ix. Standardized training methods for Aria Resort & Casino employees;

x. Standardized or strict rules of operation;

xi. Oversight in hiring and/or terminating employees and managers;

xii. Building and maintaining the Aria Resort & Casino property;

xiii. Regular inspection of the Aria Resort & Casino property;

xiv. Fixing prices; and/or

xv. Creating advertising campaigns and unrealistic expectations of safety for guests.

k. Apparent agency also existed between Aria Resort & Casino Holdings, LLC, MGM Resorts International, CityCenter Land,

LLC, and Ace A Propco LLC and Defendant Aria Resort & Casino, LLC, and the Aria Resort & Casino property.

l.  Aria Defendants held out Defendant Aria Resort & Casino, LLC, and the Aria Resort & Casino property to the public as possessing authority to act on their behalf.

m. MGM publicly announced an intention to monitor "operations for any situations that may indicate human trafficking" and provided assurances that they "captured anti-trafficking best practices." 2014 Corporate Social Responsibility Report, MGM RESORTS INTERNATIONAL, https://www.mgmresorts.com/content/dam/MGM/corporate/csr/annual-report/mgm-resorts-corporate-social-responsibility-annual-report-2014.pdf (last visited March 6, 2024).

n.  Given Aria Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the Aria Resort & Casino, Aria Defendants breached their duties in the following ways:

i.   Inadequate distribution of information to assist employees in identifying human trafficking;

ii.  Failure to provide a process for escalating human trafficking concerns within the organization;

- 68 -

iii.  Failure to adequately train and mandate managers,
employees, and staff to attend trainings related to human
trafficking;

iv.  Failure to provide new hire orientation on human rights and
corporate responsibility;

v.  Failure to provide training and education on human
trafficking through webinars, seminars, conferences, and
online portals;

vi.  Failure to develop and hold or require ongoing training
sessions on human trafficking;

vii.  Failure to provide checklists, escalation protocols, and
information to Aria Resort & Casino employees and staff or
track performance indicators and key metrics on human
trafficking prevention; and/or

viii.  Failure to hold Aria Resort & Casino employees accountable
to stop and prevent human trafficking at the hotel.

o.  For years, Aria Defendants have demonstrated actual and/or
constructive knowledge of the rampant culture of sex trafficking
which tragically occurs at Aria Resort & Casino and at other
MGM/Aria properties throughout the United States. This same
entrenched, pervasive actual and/or constructive knowledge of
sex trafficking facilitated the sex trafficking of A.H. at Aria
Resort & Casino that forms the basis of this complaint.

150.    From March 2014 to June 2014, A.H. was consistently trafficked for sex by sex traffickers at Aria Resort & Casino located at 3730 S. Las Vegas Boulevard, Las Vegas, Nevada 89158.

151.    As detailed above, on each occasion that A.H. was trafficked at Aria Resort & Casino:

      a.  A.H. and the enforcer would enter through the front entrance in full view of security cameras;

      b.  A.H. and the enforcer did not carry any luggage, bags, or room cards or anything else that would indicate that they were paying guests at the hotel;

      c.  The enforcer would remain near A.H. at all times and not allow A.H. out of her sight;

      d.  A.H. and the enforcer would loiter near common areas, such as bars or lounges, and talk to random hotel guests;

      e.  A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

      f.  A.H. and the enforcer would return to the Aria's common areas before departing together at the end of the night.

152.    Aria Resort & Casino staff, employees, and security routinely interacted with A.H. and saw A.H. and the enforcer arrive without luggage or bags, loiter in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

- 70 -

153.   Also, on or about May 28, 2014, A.H. and her enforcer were stopped by an Aria security officer as part of an undercover sting.

154.   At the time, A.H. was severely malnourished, displayed signs of physical abuse, and did not look anything like her ID photo.

155.   Also, while the Aria security officer questioned the two, the enforcer's phone repeatedly went off due to calls and texts from the trafficker.

156.   Despite clear signs of trafficking, Aria Resort & Casino's security officers did not call the police or offer any assistance to A.H.

157.   Instead, the Aria Resort & Casino security officers directed A.H. and the enforcer to an exit where the trafficker was waiting to pick them up.

158.   During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

159.   A.H. would be sexually abused and raped by multiple buyers per day while trafficked at Aria Resort & Casino.

160.   A.H.'s traffickers would routinely receive thousands of dollars each day and the Aria Defendants, through their hotel business venture, would share financial benefits from her abuse.

161.   On each occasion that A.H. was trafficked at Aria Resort & Casino, buyers were provided a harbor by Aria Resort & Casino to assault and sexually abuse A.H.

162.   The indicia of sex trafficking were open and apparent to the Aria Defendants. Specifically, Aria Defendants and their employees and/or agents should have recognized the following:

- 71 -

a. A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

b. A.H. displayed signs of physical abuse;

c. A.H. was forced to remain near the enforcer at all times;

d. A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

e. A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

f. A.H. and the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

g. A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

h. A.H. and the enforcer left together at the end of every night and were met by the trafficker.

163.    Aria Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

164.    Aria Defendants' hotel business venture benefited from what they knew or should have known to be sex trafficking.

**(iii)    Facts Specific to Venetian Defendants**

165.   Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

166.   Defendants Venetian Casino Resort, LLC, and Las Vegas Sands, LLC:

    a.   Venetian Defendants owned, managed, maintained, inspected, secured, supervised, and/or controlled the brand and policies for booking, rates, and operations at The Venetian Las Vegas resort hotel and casino located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, where A.H. was consistently commercially sex trafficked from March 2014 through June 2014. A.H. was transported to this location and forced to remain at this location while commercial sex acts with her were sold and purchased. Venetian Defendants owned and operated The Venetian Las Vegas while buyers took A.H. to rooms that were rented out for the purpose of trafficking A.H.

    b.   Venetian Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

    c.   Venetian Defendants failed to implement and enforce any of their own policies or protect A.H. from being commercially sex trafficked multiple times at The Venetian Las Vegas.

    d.   Venetian Defendants had actual knowledge of sex trafficking occurring at The Venetian Las Vegas because Venetian Defendants knew that sex trafficking and prostitution are

associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

e. Venetian Defendants had constructive knowledge of sex trafficking occurring at The Venetian Las Vegas because Venetian Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

f. Venetian Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including A.H., for sex at The Venetian Las Vegas. Venetian Defendants facilitated the trafficking through their practices, policies, and procedures. Venetian Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that Venetian Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g. Venetian Defendants knew or should have known that The Venetian Las Vegas where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on

- 74 -

and around the hotel premises, including when A.H. was trafficked.

h. Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, Venetian Defendants have repeatedly failed to stop these actions.

i. Upon information and belief, Venetian Defendants exercised control over The Venetian Las Vegas by:

   i. Distributing information to assist employees in identifying human trafficking;

   ii. Providing a process for escalating human trafficking concerns within the organization;

   iii. Requiring employees to attend training related to human trafficking;

   iv. Providing new hire orientation on human rights and corporate responsibility;

   v. Providing training and education to The Venetian Las Vegas employees through webinars, seminars, conferences, trainings, and online portals;

   vi. Developing and holding ongoing training sessions on human trafficking; and/or

   vii. Providing checklists, escalation protocols and information to The Venetian Las Vegas staff or tracking performance indicators and key metrics on human trafficking prevention.

- 75 -

j.  Defendants Las Vegas Sands, LLC was in an agency relationship with Defendant Venetian Casino Resort, LLC, and The Venetian Las Vegas property. Upon information and belief, this agency relationship was created through Venetian Defendants' exercise of an ongoing and systemic right of control over The Venetian Las Vegas by Venetian Defendants' operations, including the means and methods of how The Venetian Las Vegas conducted daily business through one or more of the following actions:

i.  Requiring The Venetian Las Vegas to use Venetian Defendants' customer rewards program;

ii.  Sharing profits;

iii.  Hosting online bookings on Venetian Defendants' developed, owned, and operated domain;

iv.  Requiring The Venetian Las Vegas to use Venetian Defendants' customer resource management program;

v.  Regulating internet access for guests;

vi.  Setting employee wages;

vii.  Making decisions about employment and budgets, including for security and management;

viii.  Advertising for management and local positions;

ix.  Standardized training methods for The Venetian Las Vegas employees;

- 76 -

x.   Standardized or strict rules of operation;

xi.  Oversight in hiring and/or terminating employees and managers;

xii. Building and maintaining The Venetian Las Vegas property;

xiii. Regular inspection of The Venetian Las Vegas property;

xiv. Fixing prices; and/or

xv.  Creating advertising campaigns and unrealistic expectations of safety for guests.

k.  Apparent agency also existed between Defendants Venetian Casino Resort, LLC, Las Vegas Sands, LLC, and the Wynn Las Vegas property.

l.  Venetian Defendants held out Defendant Venetian Casino Resort, LLC, and the Venetian Las Vegas property to the public as possessing authority to act on their behalf.

m.  Given Venetian Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the Venetian Las Vegas, Venetian Defendants breached their duties in the following ways:

i.   Inadequate distribution of information to assist employees in identifying human trafficking;

ii.  Failure to provide a process for escalating human trafficking concerns within the organization;

iii. Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

iv. Failure to provide new hire orientation on human rights and corporate responsibility;

v. Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failure to develop and hold or require ongoing training sessions on human trafficking;

vii. Failure to provide checklists, escalation protocols, and information to The Venetian Las Vegas employees and staff or track performance indicators and key metrics on human trafficking prevention; and/or

viii. Failure to hold The Venetian Las Vegas employees accountable to stop and prevent human trafficking at the hotel.

n. For years, Venetian Defendants have demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking which tragically occurs at The Venetian Las Vegas and at other Sands properties throughout the United States. This same entrenched, pervasive actual and/or constructive knowledge of sex trafficking facilitated the sex trafficking of

- 78 -

A.H. at The Venetian Las Vegas that forms the basis of this complaint.

167.  From March 2014 to June 2014, A.H. was consistently trafficked for sex by sex traffickers at The Venetian Las Vegas located at 3355 S. Las Vegas Boulevard, Las Vegas, Nevada 89109.

168.  As detailed above, on each occasion that A.H. was trafficked at The Venetian Las Vegas:

a.  A.H., accompanied by the enforcer, would enter through the front entrance in full view of security cameras;

b.  A.H., and the accompanying enforcer, did not carry any luggage, bags, or room cards or anything else that would indicate that they were paying guests at the hotel;

c.  The enforcer would remain near A.H. at all times and not allow A.H. out of her sight;

d.  A.H. and the enforcer would loiter near common areas, such as reception, bars or lounges, and talk to random hotel guests;

e.  A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

f.  A.H. and the enforcer would return to The Venetian Las Vegas common areas before departing at the end of the night.

169.  The Venetian Las Vegas staff, employees, and security interacted with A.H. and saw A.H. and her enforcer arrive without luggage or bags, loiter

1 in common areas, interact with guests, depart with guests for their rooms, and

2 then leave together at the end of the night.

3       170.   Also, sometime in late March 2014 – early April 2014, A.H. was

4 trafficked at The Venetian Las Vegas. On that occasion, a "John" physically and

5 sexually assaulted A.H. inside one of The Venetian Las Vegas hotel rooms. A.H.

6 screamed during the assault and, afterwards, ran from the room and went

7 downstairs where she waited inside a restroom hunched over in pain.

8       171.   However, rather than intervene or otherwise attempt to assist

9 A.H., The Venetian Las Vegas' security officers and employees did nothing.

10       172.   During this timeframe, A.H. was required by her traffickers to

11 earn as much money as she could.

12       173.   A.H. would be sexually abused and raped by multiple buyers per

13 day while trafficked at The Venetian Las Vegas.

14       174.   A.H.'s traffickers would routinely receive thousands of dollars each

15 day and the Venetian Defendants, through their hotel business venture, would

16 share financial benefits from her abuse.

17       175.   On each occasion that A.H. was trafficked at The Venetian Las

18 Vegas, buyers were provided a harbor by Venetian Defendants to assault and

19 sexually abuse A.H.

20       176.   The indicia of sex trafficking were open and apparent to the

21 Venetian Defendants. Specifically, Venetian Defendants and their employees

22 and/or agents should have recognized the following:

23

24

a. A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

b. A.H. displayed signs of physical abuse;

c. A.H. was forced to remain near the enforcer at all times;

d. A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

e. A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

f. A.H. the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

g. A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

h. A.H. and the enforcer left together at the end of every night and were met by the trafficker.

177.    Venetian Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

178.    Venetian Defendants thereby knowingly benefited from what they knew or should have known to be sex trafficking.

///

///

(iv)    **Facts Specific to New York-New York Defendants**

179.    Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

180.    Defendants New York-New York Hotel & Casino, LLC, and MGM Resorts International:

    a.    New York-New York Defendants owned, managed, maintained, inspected, secured, supervised, and/or controlled the brand and policies for booking, rates, and operations at New York-New York resort hotel and casino located at 3790 S. Las Vegas Boulevard, Las Vegas, Nevada 89109, where A.H. was consistently commercially sex trafficked from March 2014 through June 2014. A.H. was transported to this location and forced to remain at this location while commercial sex acts with her were sold and purchased. New York-New York Defendants owned and operated New York-New York while buyers took A.H. to rooms that were rented out for the purpose of trafficking A.H.

    b.    New York-New York Defendants shared financial benefits and profits gained from renting out rooms where A.H. was trafficked.

    c.    New York-New York Defendants failed to implement and enforce any of their own policies or protect A.H. from being

commercially sex trafficked multiple times at New York-New York.

    d.  New York-New York Defendants had actual knowledge of sex trafficking occurring at New York-New York because New York-New York Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

    e.  New York-New York Defendants had constructive knowledge of sex trafficking occurring at New York-New York because New York-New York Defendants knew that sex trafficking and prostitution are associated with a high risk of physical and sexual violence, substance abuse, and other illegal dangerous conduct, and that pimps and buyers of commercial sex acts often use force, fraud, and coercion to induce commercial sex acts from victims.

    f.  New York-New York Defendants allowed, authorized, permitted, induced, or encouraged the trafficking of multiple individuals, including A.H., for sex at New York-New York. New York-New York Defendants facilitated the trafficking through their practices, policies, and procedures. New York-

- 83 -

New York Defendants failed to take appropriate action to prevent the trafficking of individuals, including A.H., for sex so that New York-New York Defendants could continue to profit from the business that trafficking brings, including business from all over the state, country, and world.

g.  New York-New York Defendants knew or should have known that New York-New York where A.H. was trafficked was known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when A.H. was trafficked.

h.  Despite having knowledge of the extensive prostitution and sex trafficking that occurred at their hotels, New York-New York Defendants have repeatedly failed to stop these actions.

i.  Upon information and belief, New York-New York Defendants exercised control over New York-New York by:

   i.  Distributing information to assist employees in identifying human trafficking;

   ii.  Providing a process for escalating human trafficking concerns within the organization;

   iii.  Requiring employees to attend training related to human trafficking;

   iv.  Providing new hire orientation on human rights and corporate responsibility;

v. Providing training and education to New York-New York
employees through webinars, seminars, conferences,
trainings, and online portals;

vi. Developing and holding ongoing training sessions on human
trafficking; and/or

vii. Providing checklists, escalation protocols and information to
New York-New York staff or tracking performance
indicators and key metrics on human trafficking prevention.

j. Defendant MGM Resorts International, LLC was in an agency
relationship with Defendant New York-New York Hotel &
Casino, LLC, and the New York-New York property. Upon
information and belief, this agency relationship was created
through New York-New York Defendants' exercise of an
ongoing and systemic right of control over New York-New York
by New York-New York Defendants' operations, including the
means and methods of how New York-New York conducted
daily business through one or more of the following actions:

i. Requiring New York-New York to use New York-New York
Defendants' customer rewards program;

ii. Sharing profits;

iii. Hosting online bookings on New York-New York Defendants'
developed, owned, and operated domain;

- 85 -

iv.   Requiring New York-New York to use New York-New York

Defendants' customer resource management program;

v.   Regulating internet access for guests;

vi.   Setting employee wages;

vii.   Making decisions about employment and budgets, including

for security and management;

viii.   Advertising for management and local positions;

ix.   Standardized training methods for New York-New York

employees;

x.   Standardized or strict rules of operation;

xi.   Oversight in hiring and/or terminating employees and

managers;

xii.   Building and maintaining the New York-New York property;

xiii.   Regular inspection of the New York-New York property;

xiv.   Fixing prices; and/or

xv.   Creating advertising campaigns and unrealistic expectations

of safety for guests.

k.   Apparent agency also existed between Defendant MGM Resorts

International and Defendant New York-New York Hotel &

Casino, LLC, and the New York-New York property.

l.   New York-New York Defendants held out Defendant New York-

New York Hotel & Casino, LLC, and the New York-New York

property to the public as possessing authority to act on their behalf.

m. Given New York-New York Defendants' public statements on behalf of their brand and the control they assumed in educating, implementing, and directing the New York-New York, New York-New York Defendants breached their duties in the following ways:

   i. Inadequate distribution of information to assist employees in identifying human trafficking;

   ii. Failure to provide a process for escalating human trafficking concerns within the organization;

   iii. Failure to adequately train and mandate managers, employees, and staff to attend trainings related to human trafficking;

   iv. Failure to provide new hire orientation on human rights and corporate responsibility;

   v. Failure to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

   vi. Failure to develop and hold or require ongoing training sessions on human trafficking;

   vii. Failure to provide checklists, escalation protocols, and information to New York-New York employees and staff or

- 87 -

track performance indicators and key metrics on human

trafficking prevention; and/or

viii.  Failure to hold New York-New York employees accountable

to stop and prevent human trafficking at the hotel.

n.  For years, New York-New York Defendants have demonstrated

actual and/or constructive knowledge of the rampant culture of

sex trafficking which tragically occurs at New York-New York

and at other MGM Resorts International properties throughout

the United States.

o.   This same entrenched, pervasive actual and/or constructive

knowledge of sex trafficking facilitated the sex trafficking of

A.H. at New York-New York that forms the basis of this

complaint.

181.   From March 2014 to June 2014, A.H. was consistently trafficked

for sex by sex traffickers at New York-New York located at 3790 S. Las Vegas

Boulevard, Las Vegas, Nevada 89109.

182.   As detailed above, on each occasion that A.H. was trafficked at

New York-New York:

a.  A.H., accompanied by the enforcer, would enter through the front

entrance in full view of security cameras;

b.  A.H., and the accompanying enforcer, did not carry any luggage,

bags, or room cards or anything else that would indicate that they

were paying guests at the hotel;

- 88 -

c. The enforcer would remain near A.H. at all times and not allow A.H. out of her sight;

d. A.H. and the enforcer would loiter near common areas, such as reception, bars or lounges, and talk to random hotel guests;

e. A.H. and the enforcer would go up to hotel guests' rooms for a short amount of time;

f. A.H. and the enforcer would return to the New York-New York common areas before departing at the end of the night.

183.    New York-New York staff, employees, and security interacted with A.H. and saw A.H. and her enforcer arrive without luggage or bags, loiter in common areas, interact with guests, depart with guests for their rooms, and then leave together at the end of the night.

184.    Also, sometime in late May 2014 – early June 2014, A.H. was trafficked at New York-New York. On that occasion, A.H. was suffering severely from her injuries and exhibited multiple signs of being trafficked.

185.    A New York-New York security guard approached A.H., asked if she was ok, and offered her water. A.H. was unable to ask for help because her enforcer was right beside her and on the phone with their trafficker, who was close by outside the casino.

186.    The New York-New York security guard did not intervene, assist, or take steps to protect A.H., and instead simply walked away.

187.    During this timeframe, A.H. was required by her traffickers to earn as much money as she could.

- 89 -

188.   A.H. would be sexually abused and raped by multiple buyers per day while trafficked at New York-New York.

189.   A.H.'s traffickers would routinely receive thousands of dollars each day and the New York-New York Defendants, through their hotel business venture, would share financial benefits from her abuse.

190.   On each occasion that A.H. was trafficked at New York-New York, buyers were provided a harbor by New York-New York Defendants to assault and sexually abuse A.H.

191.   The indicia of sex trafficking were open and apparent to the New York-New York Defendants. Specifically, New York-New York Defendants and their employees and/or agents should have recognized the following:

  a.  A.H. appeared to be malnourished, deprived of food, water, and basic necessities;

  b.  A.H. displayed signs of physical abuse;

  c.  A.H. was forced to remain near the enforcer at all times;

  d.  A.H. and the enforcer appeared to be traveling with few or no personal items, such as bags or luggage;

  e.  A.H. and the enforcer loitered in common areas and spoke to several random guests over the course of a night;

  f.  A.H. the enforcer went up to guest rooms for short amounts of time, sometimes with several different guests over the course of the same night;

g.  A.H. was only 18 years old and had no valid I.D. to be on the casino floor; and

h.  A.H. and the enforcer left together at the end of every night and were met by the trafficker.

192.  New York-New York Defendants and their employees and/or agents knew or should have known that illegal sex trafficking was occurring, yet they acquiesced in the trafficking activity because of the money and financial benefits they received from renting the rooms.

193.  New York-New York Defendants thereby knowingly benefited from what they knew or should have known to be sex trafficking.

**D.    The Defendants Facilitated the Trafficking of A.H.**

194.  Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

195.  Despite the obvious signs of human trafficking and indicators of commercial sex activities, Defendants failed to recognize, prevent, or report A.H.'s trafficking. Instead, Defendants harbored or otherwise facilitated the sex trafficking of A.H. on their hotel properties and, accordingly, financially benefited from the continued abuse that A.H. suffered. Furthermore, Defendants failed to prevent A.H.'s continued victimization.

196.  Defendants' employees and staff had multiple interactions with A.H. during the time period that she was trafficked at their properties. Nevertheless, Defendants failed to take any actions to curtail these activities.

197.   Had Defendants paid attention to the activities being conducted on their properties, the apparent red flags outlined above would have made it impossible for them not to notice the repeated victimization of A.H.

198.   Defendants financially benefited from the sex trafficking of A.H. and knowingly or negligently aided her traffickers and buyers. Defendants rented rooms to A.H.'s buyers when they knew, or should have known, that the individuals were using their rooms to subject A.H. to repeated exploitation as they forced her into sexual servitude.

199.   Defendants knew, or should have known, that A.H. was being trafficked and that they were knowingly benefiting from said exploitation because A.H. was frequently transported to Defendants' properties.

200.   Defendants knew, or should have known, that A.H. was being trafficked because A.H. had several interactions with Defendants' employees, security, and staff, A.H. constantly entertained traffic to appease her trafficker's daily quotas, and A.H.'s traffickers and/or enforcer remained with her at all times to ensure her compliance. This behavior should have indicated to Defendants that they were using Defendants' hotels to facilitate the sex trafficking of A.H.

201.   Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging to A.H.'s buyers in which to harbor A.H. while they were trafficking and exploiting her.

202.   Defendants profited from the sex trafficking of A.H. and knowingly or negligently aided and facilitated A.H.'s trafficking in violation of state and

- 92 -

federal statutes. Defendants took no action as A.H. repeatedly: (1) visited the hotels; (2) traveled without any luggage or bags; (3) remained with her trafficker's enforcer; (4) loitered in common areas; (5) went up to several guest rooms per night; and (6) exhibited signs of malnourishment and physical abuse.

203.    Defendants had several opportunities to stop A.H.'s traffickers and offenders from victimizing A.H. and others like her. Instead, Defendants failed to take reasonable measures to stop sex trafficking from occurring in their hotels. Defendants' systematic willful blindness encouraged sex trafficking.

204.    Defendants enjoyed the steady stream of income that resulted from the trafficking of A.H.

205.    Defendants further financially benefited from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

206.    Defendants failed to take any steps to alert the authorities, properly intervene in the situation, hold accountable hotel managers and/or staff who were facilitating sex trafficking on the premises, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

207.    Upon information and belief, Defendants maintained their deficiencies to maximize profits by:

          a. Reducing the cost of training employees, staff, and managers on how to spot the signs of human trafficking and sexual exploitation and what steps to take;

b.  Not refusing room rentals or reporting guests to law
enforcement in order to maximize the number of rooms occupied
and the corresponding rates, even if the rooms rented were to
sex traffickers or buyers;

c.  Lowering security costs by not having property security
measures, including not limited to, employing qualified security
officers and/or maintaining proper video surveillance to actively
combat human trafficking and sexual exploitations;

d.  Failing to enforce proper policies and procedures to stop human
trafficking and sexual exploitation on their properties,
including but not limited to, holding hotel managers, security,
and/or staff accountable who facilitated commercial sex
trafficking on their properties.

208.   As a direct and proximate result of the foregoing misconduct, A.H.
has suffered, and continues to suffer, general and special damages. These
damages include, but are not limited to, severe emotional distress, humiliation,
mental anguish, physical and mental pain and suffering, a decrease in her
ability to enjoy life, past and future medical expenses, attorney's fees and costs,
and other general and special damages, all in an amount to be determined at
trial.

///

///

///

- 94 -

## FIRST CLAIM FOR RELIEF

### (Violations of 18 U.S.C. § 1595 (TVPRA))

### Against All Defendants

209.    Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

210.    Plaintiff A.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

211.    Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595.

212.    Specifically, Defendants had a statutory obligation not to benefit in any way from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. § 1595.

213.    At all relevant times, Defendants breached this duty by participating in and facilitating the provision and harboring of A.H. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions throughout the duration that A.H. was trafficked at their respective resort hotel properties.

214.    Defendants have participated in a hotel business venture that knowingly benefited from the commercial sex trafficking of A.H., who was trafficked as a result of their acts, omissions, and/or commissions, in order to maintain the loyalty of the segment of their customer base that seeks to participate in the sex trade.

215.    Moreover, Defendants knowingly directly benefitted from the commercial sex trafficking of A.H. on each occasion they received payment for rooms where A.H. was sexually exploited by guests of the hotels.

216.    As a direct and proximate result of the aforementioned violations of 18 U.S.C. § 1595, Plaintiff was injured and thereby experienced great pain and anxiety to her body and mind, sustaining injuries and damages, all in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

217.    As a further direct and proximate result of the violations of 18 U.S.C. § 1595, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of her injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries she has suffered.

218.    As a further direct and proximate result of the violations of 18 U.S.C. § 1595, Plaintiff underwent medical treatment and incurred past medical and/or incidental expenses. Plaintiff may also require medical treatment in the future due to the violations of 18 U.S.C. § 1595 and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

219.    Additionally, due to the injuries caused by Defendants' acts and omissions, Plaintiff has suffered loss of income and/or loss of earning capacity.

- 96 -

1    220.   The acts, conduct, and omissions of the Defendants, as alleged

2  throughout this Complaint, were fraudulent, willful, malicious, and oppressive,

3  and were done with a conscious disregard for the rights and safety of Plaintiff

4  and others, and for the primary purpose of increasing Defendants' profits.

5    221.   Specifically, upon information and belief, prior to A.H.'s trafficking

6  at Defendants' hotel properties, there were several other incidents involving

7  individuals who were trafficked at Defendants' hotel properties.

8    222.   Defendants knew or should have known about these prior incidents

9  involving individuals who were trafficked at Defendants' hotel properties.

10    223.   As such, Defendants knew of the probable harmful consequences of

11  facilitating sex trafficking and of violating 18 U.S.C. § 1595.

12    224.   Nevertheless, Defendants failed to act to avoid those foreseeable

13  harmful consequences and instead allowed other individuals – including A.H. –

14  to be trafficked on their hotel properties.

15    225.   Defendants' conduct was despicable and so contemptible that it

16  would be looked down upon and despised by ordinary, decent people, and was

17  carried on by Defendants with willful and conscious disregard for the safety of

18  Plaintiff, and others in the State of Nevada, entitling her to exemplary and

19  punitive damages.

20    226.   Defendants' outrageous and unconscionable conduct warrants an

21  award of exemplary and punitive damages in an amount appropriate to punish

22  the Defendants and make an example of them, and to deter similar conduct in

23  the future.

24

- 97 -

CLAGGETT SYKES LAW FIRM

227.   Defendants' acts complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to exemplary and punitive damages pursuant to NRS Chapter 42, TVPRA, and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

228.   Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorneys fees and costs of suit..

### SECOND CLAIM FOR RELIEF

### (Violations of NRS 41.1399)

### Against All Defendants

229.   Plaintiff restates and realleges each and every allegation contained in the preceding paragraphs herein and incorporates the same herein by reference.

230.   Plaintiff A.H. is a victim of human trafficking within the meaning of NRS 41.1399(10) and is therefore entitled to bring a civil action under NRS 41.1399.

231.   Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of NRS 41.1399.

232.   Specifically, Defendants had a statutory obligation not to profit from the human trafficking of A.H. pursuant to NRS 41.1399(1).

233.   Moreover, Defendants knowingly directly benefitted and profited from the human trafficking of A.H. on each occasion they received payment for rooms where A.H. was sexually exploited by guests of the hotels.

234.   As a direct and proximate result of the aforementioned violations of NRS 41.1399, Plaintiff was injured and thereby experienced great pain and anxiety to her body and mind, sustaining injuries and damages, all in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

235.   As a further direct and proximate result of the violations of NRS 41.1399, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of her injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries she has suffered.

236.   As a further direct and proximate result of the violations of NRS 41.1399, Plaintiff underwent medical treatment and incurred past medical and/or incidental expenses. Plaintiff may also require medical treatment in the future due to the violations of NRS 41.1399 and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

237.   Additionally, due to the injuries caused by Defendants' acts and omissions, Plaintiff has suffered loss of income and/or loss of earning capacity.

1    238.    The acts, conduct, and omissions of the Defendants, as alleged

2    throughout this Complaint, were fraudulent, willful, malicious, and oppressive,

3    and were done with a conscious disregard for the rights and safety of Plaintiff

4    and others, and for the primary purpose of increasing Defendants' profits.

5    239.    Specifically, upon information and belief, prior to A.H.'s trafficking

6    at Defendants' hotel properties, there were several other incidents involving

7    individuals who were trafficked at Defendants' hotel properties.

8    240.    Defendants knew or should have known about these prior incidents

9    involving individuals who were trafficked at Defendants' hotel properties.

10    241.    As such, Defendants knew of the probable harmful consequences of

11    facilitating sex trafficking and of violating NRS 41.1399.

12    242.    Nevertheless, Defendants failed to act to avoid those foreseeable

13    harmful consequences and instead allowed other individuals – including A.H. –

14    to be trafficked on their hotel properties.

15    243.    Defendants' conduct was despicable and so contemptible that it

16    would be looked down upon and despised by ordinary, decent people, and was

17    carried on by Defendants with willful and conscious disregard for the safety of

18    Plaintiff, and others in the State of Nevada, entitling her to exemplary and

19    punitive damages.

20    244.    Defendants' outrageous and unconscionable conduct warrants an

21    award of exemplary and punitive damages in an amount appropriate to punish

22    the Defendants and make an example of them, and to deter similar conduct in

23    the future.

24

CLAGGETT & SYKES LAW FIRM

245.    Defendants' acts complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

246.    Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorneys fees and costs of suit.

### THIRD CLAIM FOR RELIEF

### (Negligence – Premises Liability)

### Against All Defendants

247.    Plaintiff restates and realleges each and every allegation contained in the preceding paragraphs herein and incorporates the same herein by reference.

248.    Defendants owed a duty to the general public and invitees, including Plaintiff, to keep its premises free from, and/or otherwise guard against, hazards and dangerous conditions.

249.    Defendants further owed Plaintiff a duty of reasonable care under the circumstances.

250.    Defendants breached their duty of care when they created a hazard, failed to keep their property free from hazards, failed to guard against hazards, and/or failed to warn others of the hazards. Also, upon information and

- 101 -

belief, Defendants did not take reasonable precautions to prevent dangerous conditions at Defendant's premises.

251.    Defendants, through their employees, servants, or agents, breached their duty of care when they failed to adequately secure and inspect their premises or otherwise act to prevent the trafficking of A.H.

252.    Upon information and belief, Defendants had notice of the hazard or dangerous condition. Upon information and belief, Defendants created the hazardous or unsafe condition and/or had actual or constructive notice of these hazardous or unsafe conditions before A.H.'s trafficking occurred.

253.    Defendants' creation of a hazard, failure to keep their premises free from hazards, failure to warn and/or otherwise guard against hazards in their premises, and/or failure to take reasonable precautions to prevent foreseeable hazards or dangerous conditions actually and proximately or legally caused Plaintiff to be trafficked and sexually exploited at Defendants' hotel properties.

254.    As a direct and proximate result of Defendants' negligence, Plaintiff was injured and thereby experienced great pain and anxiety to her body and mind, sustaining injuries and damages, all in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

255.    As a further direct and proximate result of Defendants' negligence, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of her injuries, and will

1 | continue to incur damages for future medical treatment necessitated by

2 | incident-related injuries she has suffered.

3 |     256.   As a further direct and proximate result of Defendants' negligence,

4 | Plaintiff underwent medical treatment and incurred past medical and/or

5 | incidental expenses. Plaintiff may also require medical treatment in the future

6 | due to Defendants' negligence and may incur future medical and/or incidental

7 | expenses. The exact amount of such past and future damages is unknown at

8 | this present time, but Plaintiff alleges that she has suffered and/or will suffer

9 | special damages in excess of Fifteen Thousand Dollars ($15,000.00).

10 |     257.   Additionally, due to the injuries caused by Defendants' acts and

11 | omissions, Plaintiff has suffered loss of income and/or loss of earning capacity.

12 |     258.   The acts, conduct, and omissions of the Defendants, as alleged

13 | throughout this Complaint, were fraudulent, willful, malicious, and oppressive,

14 | and were done with a conscious disregard for the rights and safety of Plaintiff

15 | and others, and for the primary purpose of increasing Defendants' profits.

16 |     259.   Specifically, upon information and belief, prior to A.H.'s trafficking

17 | at Defendants' hotel properties, there were several other incidents involving

18 | individuals who were trafficked at Defendants' hotel properties.

19 |     260.   Defendants knew or should have known about these prior incidents

20 | involving individuals who were trafficked at Defendants' hotel properties.

21 |     261.   As such, Defendants knew of the probable harmful consequences of

22 | violating 18 U.S.C. § 1595 and NRS 41.1399.

23 |

24 | 

CLAGGETT SYKES LAW FIRM

262.    Nevertheless, Defendants failed to act to avoid those foreseeable harmful consequences and instead allowed other individuals – including A.H. – to be trafficked on their hotel properties.

263.    Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, and others in the State of Nevada, entitling her to exemplary and punitive damages.

264.    Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

265.    Defendants' acts complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

266.    Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorneys fees and costs of suit.

WHEREFORE, Plaintiff, A.H., expressly reserving her right to amend this Complaint at the time of trial, to include all items of damage not yet

ascertained, demands judgment against Defendants, WYNN LAS VEGAS, LLC,

a Nevada Limited Liability Company; WYNN LAS VEGAS HOLDINGS, LLC, a

Nevada Limited Liability Company; WYNN AMERICA GROUP, LLC, a Nevada

Limited Liability Company; WYNN RESORTS FINANCE, LLC, a Nevada

Limited Liability Company; WYNN RESORTS HOLDINGS, LLC, a Nevada

Limited Liability Company; WYNN RESORTS, LIMITED, a Nevada

Corporation; ARIA RESORT & CASINO, LLC, a Nevada Limited Liability

Company; ARIA RESORT & CASINO HOLDINGS, LLC, a Nevada Limited

Liability Company; MGM RESORTS INTERNATIONAL, a Delaware

Corporation; VENETIAN CASINO RESORT, LLC d/b/a THE VENETIAN LAS

VEGAS, a Nevada Limited Liability Company; LAS VEGAS SANDS, LLC d/b/a

THE VENETIAN LAS VEGAS, a Nevada Limited Liability Company; NEW

YORK-NEW YORK HOTEL & CASINO, LLC d/b/a NEW YORK NEW YORK

HOTEL AND CASINO, a Nevada Limited Liability Company; CITYCENTER

LAND, LLC, a Nevada Limited Liability Company; ACE A PROPCO LLC, a

Delaware Limited Liability Company; DOES I-X; ROE BUSINESS ENTITIES

XI-XX, inclusive, as follows:

1. For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

2. For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

3. For exemplary and punitive damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

4.     For restitution in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

5.     For reasonable attorney's fees;

6.     For costs of suit incurred;

7.     For prejudgment interest;

8.     For a jury trial on all issues so triable; and

9.     For such other relief as to the Court seems just and proper.

Dated this 8th of May 2024.

CLAGGETT & SYKES LAW FIRM

/s/ *Brian Blankenship*

Brian Blankenship, Esq.
Nevada Bar No. 11522
*Attorneys for Plaintiff*