UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| A.H.,<br><br>　　　　　Plaintiff,<br>vs.<br><br>WYNN LAS VEGAS, LLC, *et al.*,<br><br>　　　　　Defendants. | Case No.: 2:24-cv-01041-GMN-NJK<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS** |

Pending before the Court are three Motions to Dismiss ("MTDs") filed by Defendants Aria Resort & Casino, LLC, Aria Resort & Casino Holdings, LLC, CityCenter Land, LLC, Ace A PropCo, LLC, (collectively "Aria"), MGM Resorts International, and New York New York Hotel & Casino, LLC, (ECF No. 41), Wynn Las Vegas, LLC and its corporate affiliates,[1] (ECF No. 42), and Venetian Gaming Las Vegas,[2] (ECF No. 43).  Plaintiff filed Responses, (ECF Nos. 46–47, 51), to which Defendants filed Replies, (ECF Nos. 52–53, 55).  For the reasons discussed below, the Court GRANTS, in part, and DENIES, in part, Defendants' MTDs.

---

[1] Wynn Las Vegas, LLC argues that "[e]ven assuming one or more claims survive against Wynn. . . all claims against the remaining Wynn affiliates—"Wynn Resorts, Limited," "Wynn Resorts Holdings, LLC," "Wynn Resorts Finance, LLC," "Wynn America Group, LLC," and "Wynn Las Vegas Holdings, LLC". . . must be dismissed." (Wynn MTD 19:15–18, ECF No. 42).  In Plaintiff's Response to Wynn's MTD she agreed to dismiss her claims against four of the Wynn Defendants: Wynn Las Vegas Holdings, LLC; Wynn American Group, LLC; Wynn Resorts Finance, LLC; and Wynn Resorts Holding, LLC, without prejudice.  Thus, those parties are DISMISSED without prejudice.  But Plaintiff argues that Wynn Resorts, Limited should remain a Defendant because "[i]t is plausible Wynn Resorts, Limited exercised sufficient day-to-day control over the adoption and implementation of corporate initiatives sufficient to establish its own liability for A.H.'s alleged damages, irrespective of any principal-agency relationship." (Resp. to Wynn MTD 25:11–14, ECF No. 47).  The Court agrees with Plaintiff that Wynn Resorts, Limited should remain a Defendant at this stage of the proceedings.

[2] Defendants Las Vegas Sands, LLC, Venetian Casino Resort, LLC, and Plaintiff stipulated to add Venetian Las Vegas Gaming as a Defendant in place of Las Vegas Sands, LLC and Venetian Casino Resort, LLC. (*See generally* Order Adding Venetian Las Vegas Gaming, ECF No. 70).  Defendant Venetian Las Vegas Gaming brought its Motion to Dismiss and addressed Plaintiff's causes of action on the assumption that changing these parties would occur before the Court decided the pending Motion. (Venetian MTD n.1, ECF No. 43).  Thus, the party substitutions do not impact the Court's analysis in the pending matter.

## I. BACKGROUND

This action arises from Defendants' alleged involvement with Plaintiff being sex trafficked in their establishments from March to June 2014. (*See generally* First Am. Compl., ("FAC"), Ex. A. to Removal Pet., ECF No. 1-1).[3] Plaintiff moved to Las Vegas in Fall 2013 to live with her father. (*Id.* ¶ 45). When she turned 18 years old, she decided to move to Ohio to live with a friend. (*Id.* ¶ 46). In March 2014, Plaintiff purchased a bus ticket to Ohio where she hoped to begin a new chapter of her life. (*Id.* ¶ 47). Plaintiff's hopes, however, were halted on March 9, 2014, as she waited at the bus stop. (*Id.* ¶ 49). On that day, two people, in a car, pulled up to the bus stop. (*Id.* ¶ 49). One of those people would become Plaintiff's trafficker and the other would become a "recruiter and enforcer" of Plaintiff's victimization. (*Id.* ¶ 49). The trafficker coerced and forced Plaintiff into prostitution, and on the night of March 10, 2014, Plaintiff was trafficked for the first time. (*Id.* ¶¶ 50–51).

Plaintiff alleges that she was first sex trafficked at the Aria Resort and Casino. (*Id.* ¶ 52). Inside the Aria, Plaintiff and her recruiter encountered two "Johns" who paid them for sex inside a hotel room. (*Id.*). Plaintiff was trafficked approximately two to three times per week in the beginning, but eventually was trafficked approximately every other day. (*Id.* ¶ 57). Plaintiff was trafficked most consistently at the Aria, Wynn, Venetian, and New York New York. (*Id.* ¶ 59). Each time Plaintiff visited these establishments, she and her recruiter entered through the front entrances, often in full view of security cameras, while her trafficker stalked her from nearby. (*Id.* ¶ 60). Plaintiff alleges that the Aria, Wynn, Venetian, and New York New York staff, employees, and security, routinely saw her and her recruiter arrive without luggage or bags, loiter in common areas such as bars, interact with guests, depart with guests for their room, and then leave together at the end of the night. (*Id.* ¶ 61).

---

[3] Plaintiff filed the Amended Complaint, (ECF No. 1-1), in the Eighth Judicial District Court, Clark County, Nevada before this case was removed to Federal Court. The Court refers to this operative Complaint as the FAC.

|   |   |
|---|---|
| 1 | In late March or early April 2014, Plaintiff's trafficker physically abused her. (*Id.* ¶ 63). |
| 2 | The abuse increased in frequency, and by June 2014, Plaintiff's trafficker beat her |
| 3 | approximately three to four times per day. (*Id.* ¶¶ 64–65). During this time, Plaintiff continued |
| 4 | to be trafficked, bruised, and beaten at Defendants' properties. (*Id.* ¶ 66). One specific instance |
| 5 | of abuse occurred at the Venetian when a John physically and sexually abused Plaintiff inside a |
| 6 | Venetian hotel room. (*Id.* ¶¶ 67–69). Plaintiff screamed, ran from the room, and went |
| 7 | downstairs. (*Id.* ¶ 68). Plaintiff alleges that the Venetian employees took no action despite her |
| 8 | fleeing from abuse in plain view. (*Id.* ¶ 69). |
| 9 | Plaintiff was also trafficked at the Wynn. (*Id.* ¶ 71). During her trafficking at the Wynn, |
| 10 | Plaintiff had a fractured jaw, showed signs of physical abuse, and was in a malnourished state. |
| 11 | (*Id.* ¶ 72). While on the premises, Plaintiff contacted a Wynn cocktail waitress, who notified |
| 12 | Wynn security officers. (*Id.* ¶ 75). The security officers followed Plaintiff and her recruiter |
| 13 | until they exited the Wynn, but otherwise did nothing else to intervene or assist Plaintiff. (*Id.*). |
| 14 | Plaintiff continued to be trafficked at the Wynn following this incident. (*Id.* ¶ 76). |
| 15 | In May 2014, Plaintiff was visibly "out of it" while her and her recruiter walked around |
| 16 | New York New York. (*Id.* ¶ 81). While there, a New York New York security guard |
| 17 | approached Plaintiff, asked if she was okay, and offered her water. (*Id.* ¶ 81). Plaintiff did not |
| 18 | ask for help because her recruiter was present and on the phone with her trafficker. (*Id.*). The |
| 19 | security guard did not intervene or take steps to protect Plaintiff despite there being multiple |
| 20 | signs that she was being trafficked. (*Id.* ¶ 82). |
| 21 | Later in May, after Plaintiff was continually violently beaten and abused by her |
| 22 | trafficker, she entered the Aria again. (*Id.* ¶¶ 83–94). Plaintiff was severely malnourished, |
| 23 | displayed sings of physical abuse, and did not resemble her ID photo. (*Id.* ¶ 94). Plaintiff and |
| 24 | her recruiter were stopped by an Aria security officer as part of an undercover investigation and |
| 25 | were questioned in a back room. (*Id.* ¶¶ 95–97). The Aria security officer did not call the |

police or otherwise assist Plaintiff. (*Id.* ¶ 98). Instead, the officer made Plaintiff and her recruiter exit the establishment. (*Id.* ¶ 99).

In June 2014, Plaintiff escaped sex trafficking when her trafficker dropped her off near a hospital so she could receive life-saving care. (*Id.* ¶ 107). On March 8, 2024, Plaintiff commenced this action by filing suit in state court. (*See* State Ct. Docket. at 4, Ex. C. to Removal Pet., ECF No. 1-3). Plaintiff asserts three claims against each Defendant: violation of 18 U.S.C. § 1595, the Trafficking Victims Protection Reauthorization Act ("TVPRA"); violation of Nevada's trafficking statute, Nevada Revised Statute ("NRS") § 41.1399; and a common law negligence claim for premises liability. (*See generally* FAC).

## II.  LEGAL STANDARD

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. **DISCUSSION**

Because Plaintiff withdrew her state law claims for negligence and violation of NRS 41.1399 as to each Defendant, the Court begins with Plaintiff's TVPRA claim.[4] The thrust of Defendants' motions is that Plaintiff's FAC fails to state a claim for civil liability under the TVPRA.[5] The TVPRA imposes both criminal and civil penalties for sex trafficking. Congress enacted the Trafficking Victims Protection Act of 2000 ("TVPA") to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106–386, 114 Stat. 1464 (Oct. 28, 2000) (codified as amended at 18 U.S.C. § 1589 *et seq*.)). "Congress has repeatedly reauthorized and amended the TVPRA to expand coverage—most significantly, by creating a civil remedy against traffickers and then extending liability to

---

[4] In her Responses, Plaintiff withdrew her state law claims for negligence and violation of NRS 41.1399 as to each Defendant. (Resp. to Aria/MGM/NYNY MTD 26:10–11, ECF No. 46); (Resp. to Wynn MTD 26:14–15, ECF No. 47); (Resp. to Venetian MTD 26:14–15, ECF No. 51). Thus, those claims are DISMISSED without prejudice.

[5] Defendant Wynn also argues that Plaintiff's claims against it are time-barred. (Wynn MTD 12:14–15). The Court finds, however, that Plaintiff's FAC establishes that her TVPRA claim is not time-barred by the 10-year statute of limitations. *See* 18 U.S.C. § 1595(c) (establishing a 10-year statute of limitations for TVPRA claims as alleged in this case). The running of a statute of limitations is an affirmative defense that the defendant bears the burden of proving. *Payan v. Aramark Mgmt. Servs. L.P.*, 495 F.3d 1119, 1122 (9th Cir. 2007). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint," meaning that "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks omitted). For these reasons, "[a] plaintiff is not required affirmatively to plead facts demonstrating that a claim is timely." *See Bickley v. Centurylink Communs., LLC*, No. CV 15-01014 MMM, 2015 WL 13309944, at *3 (C.D. Cal. Nov. 3, 2015). Plaintiff brought her action against Defendants on March 8, 2024, and filed her Amended Complaint on May 8, 2024. Plaintiff alleges that she was consistently commercially sex trafficked from March 2014 through June 2014 at Wynn Las Vegas resort hotel and casino. (FAC ¶ 134(a)). Another district court in the Ninth Circuit has held that when the "complaint plausibly suggests [a plaintiff] was trafficked at [a defendant's establishment] within the limitations period, the Court cannot conclude it is 'apparent on [its] face' that the statute of limitations has run." *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *13 (W.D. Wash. July 2, 2024) (denying a defendant's motion to dismiss on the basis that the statute of limitations ran after the plaintiff amended her complaint). Accordingly, this Court finds that Plaintiff's TVPRA claims against the Wynn Defendants are not clearly time-barred. Thus, this ground for Wynn's MTD is DENIED.

those that benefit from what they should have known was a trafficking venture." *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 763 (C.D. Cal. 2024).

18 U.S.C. § 1595 sets forth the standard for civil liability under the TVPRA. That section currently provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, § 1595 provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking as defined in § 1591(a)[6] or those who knowingly financially benefit from trafficking, ("beneficiary liability"). *Doe v. Mindgeek*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021).

As a threshold matter, Plaintiff plausibly alleges that she is a victim of sex trafficking under 18 U.S.C. § 1591(a). A victim is sex trafficked if they engaged in commercial sex acts either while under 18 years of age or due to force, threat of force, fraud, or coercion. 18 U.S.C. § 1591(a). Plaintiff alleges that her traffickers used force, threats of force, and coercion to

---

[6] 18 U.S.C. § 1591(a) provides:
   (a) Whoever knowingly—
   (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
   (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
   knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

make her engage in commercial sex acts. Thus, she is a "victim" with standing to sue under the TVPRA.

The TVPRA's civil provision, § 1595, creates two routes to liability, one for "perpetrator[s]" as defined in the criminal provision and another for those who "knowingly benefit . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595. But because the term "perpetrator" includes anyone who is criminally liable under either § 1591(a)(1) or § 1591(a)(2), there are effectively three routes to civil liability: perpetrator liability under § 1591(a)(1), perpetrator liability under § 1591(a)(2), and beneficiary liability under § 1595. Plaintiff seeks only to allege beneficiary liability against Defendants.

"To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must allege that the defendant '(1) knowingly benefitted, (2) from participation in a venture [], (3) which they knew or should have known was engaged in conduct that violated the TVPRA.'" *A.B. v. Extended Stay America, Inc.*, 2023 WL 5951390, *5 (W.D. Wash. Sept. 13, 2023) (citing *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022)); *see also* 18 U.S.C. § 1595(a).

### A. Knowingly Benefit

The first question is whether Plaintiff has plausibly alleged that Defendants knowingly benefited pursuant to § 1595(a). Plaintiff argues that Defendants knowingly received a benefit via revenues produced from hotel room rentals at the Aria, New York-New York, Wynn, and Venetian where she was trafficked. (Resp. to Aria/MGM/NYNY MTD 14:22–23); (*see* FAC ¶¶ 149(a)–(b), 160, 189, 202); (Resp. to Wynn MTD 16:20–21); (*see* FAC ¶¶ 16(b)–(c), 134(a)–(b), 143, 202); (Resp. to Venetian MTD 16:13–15); (*see* FAC ¶¶ 25(b)–(c), 166(a)–(b) 177, 202). Plaintiff also alleges Defendants profited from the business trafficking brought their establishments. (Resp. to Aria/MGM/NYNY MTD 15:1–2); (*see* FAC ¶¶ 149(f), 180(f)); (Resp. to Wynn MTD 16:22–23); (*see* FAC ¶ 134(f)); (Resp. to Venetian MTD 16:16–17); (*see*

FAC ¶ 166(f)).  Drawing every inference in Plaintiff's favor, as the Court must at the motion to dismiss stage, it is plausible that the casinos knowingly experienced increased revenues and knew that Plaintiff was engaged in prostitution.  If tied to participation in a venture, "the benefit need not take the form of profits that are the specific result of a sex-trafficking venture." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 564 (7th Cir. 2023) (simplified).  Thus, this prong is sufficiently pled.

### B.  Participation in a Venture

The next question is whether Plaintiff has plausibly alleged that Defendants participated in a venture.  Defendants argue that Plaintiff has not shown any venture between them and those involved in her trafficking.

Participation in a venture is "an undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).  The Eleventh Circuit has held that a "participation in a venture" should be interpreted more broadly for § 1595(a) purposes than it is in the criminal part of the statute. *Id.* (explaining that the Court cannot read the more demanding definition of "participation of a venture" found in § 1591(e)(4) into § 1595).  The Seventh Circuit and another court in the District of Nevada have explained that for § 1595(a) purposes, the defendant's participation in the venture need not directly relate to the venture's trafficking activities. *Salesforce.com, Inc.*, 76 F.4th at 554 (cleaned up); *Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744 *3 (D. Nev. Nov. 19, 2024).  A venture under § 1595 can be an isolated act of sex trafficking, but "it can also be a business whose primary focus is not on sex trafficking." *Salesforce.com, Inc.*, 76 F.4th at 554.  It can even be commercial participation in a "commercial venture like running or expanding a business." *Id.* (cleaned up).

Here, Defendants were operating casinos and hotels that were part of the casinos.  "Operating a casino is a commercial venture and it is reasonable to infer that operating a hotel

and casino necessarily involves many persons and entities taking part 'in a common undertaking or enterprise involving risk and potential profit.'" *Tyla D.*, 2024 WL 4839744, at *3 (quoting *Red Roof Inns*, 21 F.4th at 725). Given that the Court can interpret more broadly what satisfies "participation in a venture" under § 1595(a), the Court finds that Plaintiff has sufficiently pled that Defendants were participating in a venture because they were operating casinos and hotels which is an enterprise involving risk and potential profit. Thus, this prong of the analysis survives a motion to dismiss.

### C. Knew or Should Have Known

The last question is whether Plaintiff has plausibly alleged that Defendants knew or should have known that their venture engaged in acts in violation of § 1595(a). Whether a participant in a venture knew or should have known that the venture engaged in trafficking imposes a negligence standard. *Ratha*, 35 F.4th at 1177 ("The phrase 'knew or should have known' usually connotes negligence," which is "a less culpable mental state than actual knowledge or recklessness." (cleaned up)). Another court in this District found, and this Court agrees, that "[i]t is not enough to establish a defendant's knowledge of general commercial sex taking place at its property." *See Tyla D.*, 2024 WL 4839744, at *4. Instead, the complaint must plausibly allege that the defendant knew or should have known of a venture that involved sex trafficking by force, threat of force, fraud, or coercion. *See A.B. v. Interstate Mgmt. Co., LLC*, ⎯⎯ F. Supp. 3d ⎯⎯, 2024 WL 3905482, at *6 (D. Or. Aug. 22, 2024).

Here, Plaintiff has plausibly alleged that the Defendants knew or should have known that their venture engaged in acts in violation of § 1595(a). While at the Venetian, a John physically and sexually abused Plaintiff inside a hotel room which caused her to scream, run from the room, and go downstairs. (FAC ¶¶ 67–69). Plaintiff alleges that the Venetian employees took no action despite her fleeing from abuse in plain view. (*Id.* ¶ 69). At the Wynn, Plaintiff contacted a cocktail waitress, who notified Wynn security officers, but they

simply followed Plaintiff and her recruiter until they exited the establishment, and otherwise did nothing else to intervene or assist Plaintiff. (*Id.* ¶ 75). At New York New York, Plaintiff was visibly "out of it" while her and her recruiter walked around the premises and a security guard approached Plaintiff, asked if she was okay, and offered her water. (*Id.* ¶ 81). Plaintiff could not ask for help because she was with her recruiter and the security guard did not intervene or take steps to protect Plaintiff despite there being multiple signs that she was being trafficked. (*Id.* ¶ 82). At the Aria, Plaintiff and her recruiter were stopped by a security officer as part of an undercover investigation and were questioned in a back room, but the security officer did not call the police or otherwise assist Plaintiff. (*Id.* ¶¶ 95–98). Instead, the officer made Plaintiff and her recruiter exit the establishment. (*Id.* ¶ 99). Thus, Plaintiff has plausibly alleged that the Defendants knew or should have known that their venture engaged in acts in violation of § 1595(a).

In conclusion, Plaintiff has pled sufficient facts, that accepted as true, state a plausible beneficiary claim to relief under the TVPRA. For the sake of clarity in further proceedings, the remaining Defendants are: Aria Resort & Casino, LLC; Aria Resort & Casino Holdings, LLC; CityCenter Land, LLC; Ace A PropCo, LLC; MGM Resorts International; New York New York Hotel & Casino, LLC; Wynn Las Vegas, LLC; Wynn Resorts, Limited; and Venetian Gaming Las Vegas. The remaining claim is the TVPRA claim alleged against each remaining Defendant.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that per Plaintiff's stipulation, the following parties are **DISMISSED** without prejudice: Wynn Las Vegas Holdings, LLC; Wynn American Group, LLC; Wynn Resorts Finance, LLC; and Wynn Resorts Holding, LLC.

**IT IS FURTHER ORDERED** that Defendant's Motions to Dismiss, (ECF Nos. 41–43), are **GRANTED**, in part, and **DENIED**, in part. They are **GRANTED** as to Plaintiff's

state law claims for Negligence and violation of NRS 41.1399 which are **DISMISSED** without prejudice per Plaintiff's stipulation.  They are **DENIED** as to Plaintiff's TVPRA claim against Defendants.

**DATED** this 30 day of December, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court