**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

A.H.,

Plaintiff,

vs.

WYNN LAS VEGAS, LLC, *et al.*,

Defendants.

Case No.: 2:24-cv-01041-GMN-NJK

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 116), filed by Defendants Wynn Las Vegas, LLC ("Wynn") and Wynn Resorts Limited.[1] Plaintiff filed a Response, (ECF No. 215),[2] to which Wynn replied, (ECF No. 136). Next pending before the Court is the Motion to Seal, (ECF No. 117), filed by Wynn and Wynn Resorts Limited.[3]

---

[1] Before summary judgment briefing concluded, the claims against Wynn Resorts Limited were dismissed without prejudice via stipulation by the parties. (*See* Order Granting Stipulation, ECF No. 123).

[2] Plaintiff originally filed a sealed Response at ECF No. 126 that attached no exhibits and a second, identical sealed Response at ECF No. 127 that did attach exhibits. Plaintiff also filed a redacted Response at ECF No. 128. On June 17, 2026, the parties stipulated to allowing Plaintiff to file a less redacted Response to replace ECF No. 128. The less redacted Response, (ECF No. 215), is the Response the Court will cite in this Order.

[3] Defendants move to seal Exhibits B and F to their Motion for Summary Judgment because they contain information that reveals (1) Plaintiff's "True Identity" under the Protective Order, (ECF No. 67) or (2) personal identifying information of non-party guests. Exhibit B is the declaration of Jessica Lozoya and its accompanying exhibit that contains search terms that reveal Plaintiff's true identity and personal information of non-party guests, including names and addresses of guests with the same or similar names as Plaintiff. The Court finds that redactions to Jessica Lozoya's declaration and its accompanying exhibit would be "impracticable" because it centers on the "personal identity information" described therein, *Dam v. Barr*, No. 2:19-CV-01701-GMN-NJK, 2020 WL 8674198, at *1 (D. Nev. July 14, 2020), or redactions would otherwise "render the documents meaningless," *United States v. Uvari*, No. 2:18-CR-00253-APG-NJK, 2022 WL 14004852, at *3 (D. Nev. Oct. 24, 2022), aff'd, No. 2:18-CR-00253-APG-NJK, 2022 WL 17093924 (D. Nev. Nov. 21, 2022). Additionally, a compelling reason exists to seal the records related to other guests because they contain identifying personal information and the individuals are not parties to this case. *See, e.g.*, *Villareal v. Cnty. of Fresno*, No. 1:15-CV-01410-DAD-EPG (PC), 2021 WL 877009, at *1 (E.D. Cal. Mar. 9, 2021). Exhibit F is a portion of the transcript of Plaintiff's deposition that is heavily redacted. Defendants contend that "[a]t least some of the redacted portions of the deposition transcript" contain identifying information that could reveal Plaintiff's true identity and "sealing is therefore appropriate for at least those portions." (Mot. Seal 3:1–2, ECF No. 117). Defendants explain that "[o]ut of an abundance of caution, [they are] filing heavily redacted transcript excerpts to enable Plaintiff to file a declaration supporting sealing or otherwise consent to unsealing any redacted portions of the

Plaintiff did not respond and the time to do so has passed. Further pending before the Court is Plaintiff's Alternative Motion Under Rule 56(d) to Stay Summary Judgment Until the Close of Expert Discovery, (ECF No. 130). Wynn filed a Response, (ECF No. 137), to which Plaintiff did not reply. Lastly pending before the Court are three Motions for Leave to File Supplemental Authority, (ECF Nos. 178, 183, 184), filed by Wynn. Plaintiff did not file Responses and the time to do so has passed.[4]

For the reasons discussed below, the Court GRANTS Wynn's Motion for Summary Judgment and DENIES Plaintiff's Alternative Motion Under Rule 56(d) to Stay Summary Judgment Until the Close of Expert Discovery.

## I. BACKGROUND

This action arises from Wynn's alleged involvement with Plaintiff being sex trafficked in the Wynn from March to June 2014. (*See generally* First Am. Compl., ("FAC"), ECF No. 1-1); (A.H. Dep. 72:16–23, 81:11–22, Ex. F to Resp., ECF No. 128-2). Plaintiff engaged in commercial sex at the Wynn about 50 to 55 times while she was being trafficked. (*Id.* 240:25–241:5, 242:17–25, 250:4–10, Ex. F to Resp.). Plaintiff's trafficker never rented a room from Wynn. (*Id.* 253:4–9). Plaintiff testified that each time she was trafficked at the Wynn, she engaged in commercial sex in a room that had already been purchased by the buyer. (*Id.* 253:18–23). She testified that neither she nor her trafficker ever went to the front desk at the Wynn. (*Id.* 254:2–18). Wynn now moves for summary judgment.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

transcript." (*Id.* 3:5–7). Plaintiff did not file any response to the Motion to Seal. The Court finds that Defendants fail to meet their burden of establishing the need to redact all currently redacted portions of Exhibit F. Therefore, the Motion to Seal is GRANTED, in part, and DENIED, in part without prejudice with further instruction provided in the Conclusion of this Order.

[4] The Court GRANTS the Motions for Leave as unopposed. *See* LR 7-2(d).

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be

denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Wynn moves for summary judgment on the one remaining claim against it: Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claim based on a theory of beneficiary liability.

18 U.S.C. § 1595 sets forth the standard for civil liability under the TVPRA. That section currently provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, § 1595 provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking as defined in § 1591(a)[5] or those who knowingly financially benefit from trafficking ("beneficiary liability"). *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021), *adhered to on denial of reconsideration,* 574 F. Supp. 3d 760 (C.D. Cal. 2021).

Plaintiff maintains a TVRPA claim based on a theory of beneficiary liability under § 1595(a) only. (*See* First. Am. Compl. ¶ 212); (*see* Order re Mots. Dismiss 7:10, ECF No. 72). To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must establish that

---

[5] 18 U.S.C. § 1591(a) provides for criminal penalties for sex trafficking:

> (a) Whoever knowingly—
> (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

the defendant (1) knowingly benefited, or attempted or conspired to benefit, financially or by receiving anything of value from (2) participation in a venture (3) which that person knew or should have known has engaged in an act in violation of this chapter. 18 U.S.C. § 1595(a). If summary judgment is granted as to one element, the Court need not consider the others.

The Court begins by determining whether a genuine dispute of material fact exists as to whether Defendants "participated in a venture." 18 U.S.C. § 1595(a). Over the course of this case, Plaintiff has advanced three separate "participation in a venture" theories: (1) Wynn participated in a hotel business venture; (2) Wynn participated in a venture with her trafficker because the two shared a continuous business relationship; and (3) Wynn participated in a sex tourism venture with many traffickers by facilitating and supporting the system of commercial sex that traffickers relied on. Defendants move for summary judgment on all three theories. (*See* Mot. Summ. J. 16:1–18:26, ECF No. 116).

**A. Hotel Business Venture Theory**

The Court begins with the hotel business venture theory. At the Motion to Dismiss stage, the Court found that Plaintiff plausibly pled this element, explaining that "operating a casino is a commercial venture and it is reasonable to infer that operating a hotel and casino necessarily involves many persons and entities taking part 'in a common undertaking or enterprise involving risk and potential profit.'" (Order re Mots. Dismiss 8:24–9:7) (quoting *Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744, at *3 (D. Nev. Nov. 19, 2024) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021)))). However, based on this developing line of case law, and because this theory was briefed by both parties during summary judgment, the Court reexamines this determination for purposes of the summary judgment stage. The Court ultimately finds that a defendant cannot participate in a venture *with itself*, and thus Plaintiff's hotel business venture theory fails as a matter of law.

Plaintiff correctly contends that beneficiary liability does not require proof that the defendant violated § 1591 as a perpetrator; rather, it attaches where the defendant knowingly benefited from participation in a venture that violated § 1591. (Resp. 10:8–10, ECF No 215). But if the Court adopts Plaintiff's hotel business venture theory, the applicable test would be this: Plaintiff must establish that the defendant (Wynn) (1) knowingly benefited, or attempted or conspired to benefit, financially or by receiving anything of value from (2) participation in a venture (the Wynn Hotel Business) (3) which that person knew or should have known has engaged in an act in violation of this chapter. If Wynn is the "venture," then Wynn would necessarily have to be the entity that violated the TVPRA, which would mean Wynn is a perpetrator of the TVPRA and not a beneficiary. Because Plaintiff does not allege a TVPRA claim based on a theory of perpetrator liability, Plaintiff's hotel business venture theory fails as a matter of law.

**B. Continuous Business Relationship Theory**

Plaintiff also advanced a theory that Wynn participated in a venture with her trafficker because the two shared a continuous business relationship. As this Court explained in *C.C. v. Rashid*, No. 2:23-CV-02056-GMN-BNW, 2026 WL 252548 (D. Nev. Jan. 29, 2026), the Court finds *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*'s discussion of the statutory language, legislative intent, and analysis of other courts' applications of this element instructive. 798 F. Supp. 3d 1082, 1092–1095 (N.D. Cal. 2025). *Doe (K.R.D.)* explained "multiple circuit courts and many district courts have recognized that a continuous business relationship like that alleged between [a defendant] and [a plaintiff's] trafficker is sufficient to allege participation in a venture under section 1595." *Id.* at 1095. Not only is it sufficient, but it is usually necessary to establish a successful TVPRA claim. Indeed, TVPRA claims often involve a defendant either directly supporting a sex trafficker or forming a tacit agreement with the trafficker through a continuous business relationship. *See, e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-

cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (hotel staff rented rooms to trafficker away from other guests and instructed johns to hurry up as they come and go); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *2 (N.D. Ga. Aug. 30, 2023) (hotel employees zip-tied the crash bar of a door to keep it from locking so that commercial sex purchasers could enter and exit); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel operator and trafficker exchanged high fives and spoke of "getting this thing going again" when there were overt signs of sex trafficking); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (hotels had a "continuous business relationship" of renting rooms to traffickers).

Wynn argues that Plaintiff's "continuous business relationship" theory fails. (*See* Mot. Summ. J. 18:12–24). Under this theory, "the trafficker and the hotel[]"must "establish[] a pattern of conduct" or "have a tacit agreement." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019). The "courts applying th[is] test . . . have focused on allegations or evidence of an ongoing pattern of activity between the civil defendant and the trafficker that is sufficient to infer the defendant knew or should have known they were facilitating the specific trafficker's venture." *Doe (S.A.S.) v. Hilton Domestic Op. Co., Inc.*, 2025 WL 2306579, at *12 (W.D. Wash. Aug. 11, 2025). Wynn contends, and the record demonstrates, that Plaintiff's trafficker did not rent rooms from Wynn, (Mot. Summ. J. 23:5); (A.H. Dep. 253:4–9, Ex. 2 to Resp., 128-2), or have a tacit agreement with Wynn. Plaintiff testified that each time she was trafficked at the Wynn, she engaged in commercial sex in a room that had already been purchased by the buyer. (A.H. Dep. 253:18–23, Ex. 2 to Resp.). She testified that she nor her trafficker even went to the front desk at the Wynn. (*Id.* 254:2–18). Wynn ultimately avers that there is no evidence that Plaintiff's trafficker engaged in any commercial transactions with Wynn or had any interaction or relationship with Defendant's

employees. (Mot. Summ. J. 23:6–7). Based on the record before it, the Court finds that Wynn meets its initial burden by presenting evidence to negate an essential element of Plaintiff's case.

The burden now shifts to Plaintiff. In response, Plaintiff argues that whether Wynn knew or interacted with Plaintiff's *individual* trafficker is irrelevant. (Resp. 33:5). Plaintiff offers no points or authorities on this argument. However, as the case law cited above demonstrates, Wynn's interactions with Plaintiff's trafficker are relevant to establish a continuous business relationship theory. Thus, Plaintiff fails to establish that a genuine issue of material fact exists with respect to this issue.

**C. Sex Tourism Venture**

Lastly, in response to Defendant's Motion for Summary Judgment, Plaintiff advances, for the very first time, a theory that Wynn participated in a venture with countless anonymous sex traffickers throughout Las Vegas—and she need only show that those traffickers violated § 1591(a). (Resp. 9:26–28, 31:9–13, 32:15–25). But Plaintiff "cannot raise a new theory for the first time in opposition to summary judgment." *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014); *see Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292–93 (9th Cir. 2000) (explaining a plaintiff could not proceed with a new theory not pled in the complaint). As the Ninth Circuit has stated, "[a]llowing a plaintiff to proceed on a new theory would prejudice defendants because '[a] complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.'" *Patel*, 564 F. App'x at 882 (citing *Coleman,* 232 F.3d at 1292).

Here, the Court finds that Wynn was never on notice of any "sex tourism venture with many traffickers" theory. On the contrary, Plaintiff pleaded and then argued for either a hotel business venture theory or a venture with her trafficker theory. This is the sort of "new theory of liability" that cannot be raised at this stage for the first time. *See Coleman*, 232 F.3d at 1292. For this reason alone, the Court disregards this theory.

In sum, Defendant is entitled to summary judgment on this element of Plaintiff's TVPRA claim. Because summary judgment is appropriate with respect to this element, the Court need not consider the others and GRANTS Wynn's Motion for Summary Judgment.[6]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment, (ECF No. 116), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Seal, (ECF No. 117), is **GRANTED**, in part, and **DENIED**, in part, without prejudice as follows:

- Defendants' request to seal Exhibit B is **GRANTED**. The Clerk of Court is kindly instructed to keep the unredacted version of Exhibit B, (ECF Nos. 118, 118-1) sealed.
- Defendants' request to seal Exhibit F is **DENIED**. However, because of the likelihood that the exhibits contain some "True Identity" information, the Clerk of Court is kindly directed to keep ECF No. 119 sealed.

**IT IS FURTHER ORDERED** that Defendant Wynn Las Vegas, LLC shall have 14 days from the date of this Order to refile its Motion to Seal Exhibit F. Wynn is instructed to limit redactions to only those that are necessary and supported by applicable case law.

**IT IS FURTHER ORDERED** that Plaintiff's Alternative Motion Under Rule 56(d) to Stay Summary Judgment Until the Close of Expert Discovery, (ECF No. 130), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motions for Leave to File Supplemental Authority, (ECF Nos. 178, 183, 184), are **GRANTED**.

---

[6] Plaintiff moves under FRCP 56(d) to stay summary judgment until the close of expert discovery. Plaintiff argues that more discovery is needed, specifically to show that Wynn should have known it was participating in a venture that violated the TVPRA. However, the Court did not reach this element, so it finds that allowing for more discovery is unnecessary. Thus, the Court DENIES Plaintiff's Alternative Motion Under Rule 56(d) to Stay Summary Judgment Until the Close of Expert Discovery, (ECF No. 130).

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly instructed to enter judgment in favor of Wynn Las Vegas, LLC and close the case.

The Clerk of Court is also kindly directed to terminate Venetian Gaming Las Vegas LLC as a party.[7]

**DATED** this __7__ day of August, 2026.

Gloria M. Navarro, District Judge
United States District Court

[7] Although Venetian Gaming Las Vegas LLC still appears on the docket as a Defendant, the Court finds that Venetian Gaming Las Vegas LLC was improperly introduced on the docket by counsel Michael J. Gayan when he filed the Motion to Dismiss, (ECF No. 43), on behalf of "Venetian Gaming Las Vegas LLC" rather than "Venetian Las Vegas Gaming LLC." Due to this typo, the Court concludes that Venetian Gaming Las Vegas LLC is not a real party to this lawsuit and should be terminated. Because true party Venetian Las Vegas Gaming LLC was dismissed as a Defendant via stipulation by the parties, the Court finds that no Venetian parties remain in this lawsuit. (*See* Order, ECF No. 182).